UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH JERMANO , et al.,

             Plaintiffs,

Case No. 13-cv-10610

v.

Hon. Matthew F. Leitman

GRACO CHILDREN'S PRODUCTS

Magistrate Judge Mona K. Majzoub

             Defendant.

DOUTHIT, FRETS, ROUSE, GENTILE &
Raymond D. Gentile
5250 W. 116th Place
Suite 400
Leawood, KS 66211
913-387-1600 (Phone)
913-928-6739 (Fax)
dgentile@dfrglaw.com (E-mail)

SCHIFF HARDIN LLP
Joseph J. Krasovec
Heidi K. Oertle
233 S. Wacker Drive, Suite 6600
Chicago, IL 60606
312-258-5500 (Phone)
312-258-5600 (Fax)
jkrasovec@schiffhardin.com (E-mail)
hoertle@schiffhardin.com (E-mail)

THOMAS, GARVEY & GARVEY
Robert F. Garvey (P24897)
24825 Little Mack Avenue
St. Clair Shores, MI 48080
586-779-7810 (Phone)
586-779-4912 (Fax)
bobgarvey@me.com (E-mail)

SCHIFF HARDIN LLP
Gregory L. Curtner (P12414)
Jessica A. Sprovtsoff (P70218)
350 S. Main Street, Suite 210
Ann Arbor, MI 48104
(734) 222-1518 (Phone
(734) 222-1501 (Fax)
gcurtner@schiffhardin.com (E-mail)
jsprovtsoff@schiffhardin.com (E-mail)

*Attorneys for Plaintiffs*

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

FACTUAL BACKGROUND.................................................................2

ARGUMENT ........................................................................................4

I.     Michigan Law Applies ................................................................4

       A.     The Laws of Michigan and Pennsylvania Conflict Regarding Compensatory Damages........................................................5

       B.     No True Conflict Exists Because Pennsylvania Has No Policy Interest in Application of its Law...........................................6

       C.     Even if a True Conflict Existed, Pennsylvania's Choice-of-Law Analysis Would Choose Michigan Law ...............................7

II.    MCR 2.112(K) Applies Because it Is Functionally Substantive.................11

III.   The Court Should Apply MCL 600.2957 to Allow Allocation to the Non-Party at Fault........................................................................13

       A.     MCL 600.2957 Does Not Itself Require Notice ................................14

       B.     Under Federal Law, Graco's Answer Gave Sufficient Notice...........14

       C.     Under MCR 2.112(K), Graco's Proposed Notice of Non-Party at Fault Is Sufficient ...........................................................16

CONCLUSION ....................................................................................18

**DEFENDANT GRACO CHILDREN'S PRODUCTS INC.'S
SUPPLEMENTAL BRIEF IN SUPPORT OF ITS
MOTION FOR LEAVE TO FILE NOTICE OF NON-PARTY AT FAULT**

Defendant Graco Children's Products Inc. respectfully submits this supplemental brief, as directed by the Court at the October 23, 2014 hearing.

## INTRODUCTION

This case arose from a Michigan car accident in which a child was injured. Her parents, attributing her injuries to the "TurboBooster" booster seat she was using, sued Graco, the seat's manufacturer, in Pennsylvania state court.  The case was removed to federal court and then transferred here under 28 U.S.C. § 1404(a).

The plaintiffs did not name as a defendant the driver of another car involved in the collision.  After depositions of that driver and his passengers (more than 91 days after Graco's answer, but while discovery was still ongoing), Graco moved for leave to file a notice of non-party at fault, as provided by MCR 2.112(K)(3)(c). At the hearing on this motion, the Court requested supplemental briefs addressing three issues:

1. Does Michigan state law, or the law of another state, apply?

2. Does MCR 2.112(K)(3)(c) apply in federal court?  Specifically, is MCR 2.112(K)(3)(c) a substantive rule applicable to cases governed by Michigan law, or a procedural rule that applies in diversity?

3. How should the Court apply MCL 600.2957, which provides that liability shall be apportioned to non-parties at fault?  If MCR 2.112 is a procedural rule that does not apply, what triggers including the non-party at fault? (E.g., is it the plaintiffs' awareness of the non-party's role, or Graco's giving some kind of notice, governed by the federal test for amending answers?)

*See* 10-23-14 Tr. at 30-31.  The short answers to the Court's questions, discussed further below, are:

1.   Michigan law applies, under the choice-of-law rules of Pennsylvania, where the case was originally filed.

2.   MCR 2.112(K)(3)(c) applies because it has substantive force.

3.   Graco should be allowed to seek apportionment of liability to the non-party at fault under MCL 600.2957.  MCL 600.2957 does not itself require formal notice of non-party fault as a prerequisite to apportionment. But if notice is required, Graco satisfied it, whether under state law (MCR 2.112(K)(3)(c)), or under federal law (Fed. R. Civ. P. 8(c)).

## FACTUAL BACKGROUND

This case arises out of a three-vehicle collision in Michigan on October 26, 2010 (Complaint, attached as Ex. A), when a southbound vehicle crossed the centerline and hit two northbound vehicles.  (Traffic Crash Report, Oct. 26, 2010, attached as Ex. B.)  All the plaintiffs were (and are) Michigan residents.  (Complaint, Ex. A.)  The others involved in the accident were also Michigan residents. (Traffic Crash Report, Ex. B.)  The TurboBooster seat the injured child was using (which allegedly had defects enhancing her injuries) was purchased at a Michigan Target store in spring or summer 2010.  (Pls.' Interrogatory Response No. 6, attached as Ex. C.)  The child received significant medical care in Michigan, and admittedly received no medical care in Pennsylvania.  (*Id.* at No. 12.)

The plaintiffs filed their complaint in Pennsylvania state court on September 18, 2012, incorrectly alleging that Graco's principal place of business was Penn-

sylvania.  In June 2009 Graco had moved its corporate headquarters from Pennsylvania to Georgia.  (Graco's Answers to Pls.' Second Set of Interrogatories, No. 3, attached as Ex. D.)  The TurboBooster was largely designed before Graco moved to Georgia, though design revisions to the TurboBooster plaintiffs allege should have been implemented on their TurboBooster were made in Europe.  Graco distributes its products through retailers in all 50 states.  While it still maintains a downsized office in Pennsylvania to accommodate certain non-executive employees who did not move to Georgia, Graco has no other ties to Pennsylvania.  Graco has conducted dynamic testing to evaluate the Turbobooster's performance in simulated frontal crashes in Ohio, New York, Michigan, Wisconsin, the U.K., and Taiwan.  (S. Gerhart Dep. at 14:10-20; 47:11-15; 54:10-16, attached as Ex. E.)  The TurboBooster was manufactured and assembled in China by Wonderland NurseryGoods on November 21, 2009, after Graco's move to Georgia.

Graco removed the case to the Eastern District of Pennsylvania, and the case was then transferred to this Court under § 1404(a).  Because of scheduling and discovery delays, depositions of the plaintiffs did not occur until July 8, 2014, and depositions of those in the vehicle that hit the plaintiffs' vehicle occurred on August 21, 2014.  At the latter depositions Graco first learned that Andrew Thibodeau, the driver who crossed the centerline—who received no traffic citation after the accident—may have been speeding and under the influence of legal and illegal

drugs, and may have run a red light, none of which the police report disclosed.

**ARGUMENT**

## I.   Michigan Law Applies.

Pennsylvania's choice-of-law rules govern which state's law applies to this diversity case.  The Supreme Court held in *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990), that when a case is transferred under §1404(a), the transferee court applies the choice-of-law rules of the transferor court.  Here, the transferor court (the Eastern District of Pennsylvania) would have used Pennsylvania's choice-of-law rules.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

The Pennsylvania choice-of-law analysis involves three steps.  First, the court asks whether the potentially interested states' laws actually conflict.  *Henderson v. Merck & Co.*, No. 04-CV-05987-LDD, 2005 WL 2600220, at *2 (E.D. Pa. Oct. 11, 2005).  If so, the court asks whether this is a "true" conflict—i.e., whether each state has a policy interest in application of its law.  *Harsh v. Petroll*, 840 A.2d 404, 418 (Pa. Commw. Ct. 2003); *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996).  Finally, if there is a true conflict, the court determines which state's law should be applied based on the relationship between the contacts with each interested state and the states' policy interests.  *Id.*  The Pennsylvania choice-of-law rules, when applied here, dictate that Michigan law applies to the resolution

of this matter.

### A.   The Laws of Michigan and Pennsylvania Conflict Regarding Compensatory Damages.

The laws of Michigan and Pennsylvania (the only states whose law is proposed as applicable here) differ in their treatment of compensatory damages.  In 1995, the Michigan legislature passed a tort reform act, altering how damages are determined in Michigan tort cases.  1995 PA 249 (Mich. 1995).  Under the tort reform law, Michigan apportions comparative fault and caps noneconomic damages.  MICH. COMP. LAWS ANN. §§ 600.2957; 600.2946a.  Pennsylvania law would not apply comparative fault to the plaintiffs' strict liability claims, which accrued in 2010.  *Walton v. Avco Corp.*, 610 A.2d 454, 462 (Pa. 1992) (holding comparative fault inapplicable in strict liability actions); 42 PA. CONS. STAT. ANN. § 7102(a.1) (later comparative fault statute applies only to strict liability actions accruing after June 28, 2011).  Nor does Pennsylvania cap noneconomic damages.  *See* 75 PA. CONS. STAT. ANN. §1705 (even an insured who chooses a "limited tort" insurance option may recover noneconomic losses for serious injury).[1]

---

[1] The only other potentially interested state is Georgia, Graco's principal place of business at the time of the accident.  Georgia allows apportionment of damages to non-parties.  GA. CODE ANN. § 51-12-33.  Georgia does not cap noneconomic damages.  *See Atlanta Oculoplastic Surgery v. Nestlehutt,* 691 S.E.2d 218, 221-24 (Ga. 2010) (such a cap would violate Georgia's Constitution).

**B.    No True Conflict Exists Because Pennsylvania Has No Policy Interest in Application of its Law.**

If an actual conflict exists (i.e., the outcome of the case would differ depending on which state's law is applied), Pennsylvania choice-of-law rules next ask whether the conflict is true or false. *Harsh*, 840 A.2d at 418; *LeJeune*, 85 F.3d at 1071. A true conflict exists if each state has a policy interest in application of its own law. *Id.* A conflict is false if only one of the states has such a policy interest. *Id.* In that event, only the interested state's law applies. *Id.*

Here, there is no true conflict, because only Michigan has an interest in application of its law. States have an interest in prescribing rules for torts occurring within their borders. *See LeJeune*, 85 F.3d at 1071. Similarly, states have an interest in limiting liability to "encourag[e] economic activity in the state . . . and lower[] costs to consumers." *Id.* at 1072. Michigan's legislature adopted the 1995 tort reform statute for precisely these reasons. *Kenkel v. Stanley Works*, 665 N.W.2d 490, 500 (Mich. Ct. App. 2003) ("M.C.L. § 600.2946a is rationally related to the legitimate governmental interests of encouraging the manufacture and distribution of products in Michigan and protecting those who place products into the stream of commerce from large damage awards in jury trials."); *Smith v. Norfolk S. Co.*, No. 14-CV-10426, 2014 WL 2615278, at *3 (E.D. Mich. June 12, 2014) ("Given the change of the legislative focus on the tort reparations system in Michigan from making an injured plaintiff whole to protecting partially at-fault defend-

-6-

ants from excessive exposure to damages, the Court believes that Michigan courts would conclude that liability must be apportioned under section 600.2957(1).") (quotation omitted).

By contrast, Pennsylvania has no policy interest in applying its laws to a tort claim involving Michigan residents, a product purchased in Michigan, a Michigan accident, medical care in Michigan (and not Pennsylvania) and a defendant incorporated in Delaware whose principal place of business is in Georgia.  *See Harsh*, 840 A.2d at 418 (trial court found false conflict; only the state where the injury occurred had an interest in application of its law, for other states' contacts were less significant and did not implicate those states' policy interests).[2]

Since there is a false conflict (only Michigan, and not Pennsylvania or another state, has an interest in application of its law), Michigan's law applies.  *See id.*  The Court may stop here, and need not consider step three in Pennsylvania's choice-of-law analysis.

### C.   Even if a True Conflict Existed, Pennsylvania's Choice-of-Law Analysis Would Choose Michigan Law.

Even if the Court reached step three (analyzing the relationship between the contacts with each interested state and the states' policy interests), that step also points to Michigan law.  In personal injury actions, Pennsylvania courts strongly

---

[2] Similarly, Georgia has no interest in applying its laws to an accident occurring in Michigan among Michigan residents and involving a Michigan-purchased product.

presume that the law of the state where the injury occurred applies.  *Laconis v. Burlington Cnty. Bridge Comm'n*, 583 A.2d 1218, 1223 (Pa. Super. 1990) ("[I]n an action for personal injuries, the law of the state where the injury occurred normally determines the rights and liabilities of the parties, unless another state, applying the contacts test, has a more significant relationship to the occurrence and parties."); *Brown v. Kia Motors Corp.*, No. CIV.A 06-804, 2009 WL 866846, at *12 (W.D. Pa. Mar. 30, 2009) (same); *see also Harsh*, 840 A.2d at 418-19 (applying law where accident and injuries occurred even though no party was domiciled there and the product was manufactured in yet another state).[3]

More particularly, Pennsylvania law uses the "most significant relationship" test, considering the contacts with each state and how they implicate each state's interests.  *Harsh*, 840 A.2d at 418-19; *LeJeune*, 85 F.3d at 1071.  In tort cases, Pennsylvania courts consider the following: (1) the location of the injury; (2) the location of the injurious conduct; (3) the domicile of the parties; and (4) where the parties' relationship is centered.  *Laconis*, 583 A.2d at 1223; *Inman v. Technicolor*

---

[3] Courts applying Pennsylvania law employ this presumption unless the accident's location is fortuitous.  *LeJeune*, 85 F.3d at 1072 ("Where the site of an accident is not fortuitous, the place of injury assumes much greater importance, and in some instances may be determinative.) (citations omitted).  The accident's location is not fortuitous when a plaintiff purchased and used a product in the state where the injury occurred.  *Schmidt v. Duo-Fast, Inc.*, No. CIV. A. 94-6541, 1995 WL 422681, at *1 (E.D. Pa. July 11, 1995) (finding the place of the accident was not fortuitous when the product was purchased and used in the same state).

*USA, Inc.*, No. CIV.A. 11-666, 2011 WL 5829024, at *4 (W.D. Pa. Nov. 18, 2011).

Here, these considerations point toward Michigan. First, the accident and injury occurred in Michigan and involved medical care primarily rendered in Michigan. These factors strongly implicate Michigan's policy interests, calling for application of Michigan law. *See Wolfe v. McNeil-PPC, Inc.*, 703 F. Supp. 2d 487, 493 (E.D. Pa. 2010) (applying law of the place of injury despite product development in Pennsylvania, noting that "[p]laintiff ha[d] no direct ties to Pennsylvania.").

Second, the "location of the injurious conduct" consideration does not point to a single state. In crashworthiness cases, the places of the product's use, design, and manufacture are all potentially relevant. *Harsh*, 840 A.2d at 417. Here, the plaintiffs used their TurboBooster in Michigan. Graco largely designed the TurboBooster in Pennsylvania and Europe, with significant product testing in Ohio, Michigan, New York, Wisconsin, Europe, and Asia. Wonderland assembled the TurboBooster in China.

Third, the "domicile of the parties" consideration points toward Michigan. All the plaintiffs (as well as the others involved in the accident) reside in Michigan, and have since before the accident occurred. Graco, a Delaware corporation, had its principal place of business in Georgia when the TurboBooster was manufac-

tured and at the time of the accident, and in Pennsylvania when the TurboBooster was designed.

Fourth, the parties' relationship is centered in Michigan, where the plaintiffs purchased and used the TurboBooster. *See Inman*, 2011 WL 5829024, at *4 ("[The parties'] relationship . . . is centered in Pennsylvania. That is where [the plaintiff] purchased the allegedly defective products and where the products were shipped."); *Brown v. Kia Motors Corp.*, 2009 WL 866846, at *13 ("Plaintiff purchased his vehicle in Virginia. Therefore, the relationship between the parties was formed and centered in Virginia.").

Ultimately, and most importantly for this case, Pennsylvania courts routinely hold that the place where the injury occurs controls over the place where the defendant's business is located, including the place where the product was designed. *See, e.g., Wolfe v. McNeil-PPC, Inc.*, 703 F. Supp. 2d 487, 493 (E.D. Pa. 2010) (applying Maine law, when plaintiff resided in Maine and used product there, but design and manufacture occurred in Pennsylvania); *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 602, 615-16 (E.D. Pa. 2008) (applying New Jersey law, when plaintiffs used product in New Jersey, and were injured in New Jersey, though defendant's headquarters and principal place of business was in Pennsylvania); *Bearden v. Wyeth*, 482 F. Supp. 2d 614, 620 (E.D. Pa. 2006) (applying Arkansas law in product liability case, when plaintiff resided and was injured in Arkansas,

-10-

and received all medical care and any representations and warnings about the product there, though defendant's headquarters, principal place of business, and research and development was located in Pennsylvania); *Henderson*, 2005 WL 2600220 at *8 (applying Michigan law, when plaintiff resided in Michigan and suffered injuries in Michigan from products sold in Michigan, although defendants' principal places of business and states of incorporation were New York and New Jersey). Indeed, the location of a defendant's principal place of business or headquarters (presumably where design occurs) is of little significance in Pennsylvania's choice-of-law analysis regarding compensatory damages. *See Knipe*, 583 F. Supp. at 616 (refusing to apply Pennsylvania law when "[t]he sole contact Pennsylvania maintains with this litigation is as the situs of Defendant's headquarters and principal place of business").

## II.  MCR 2.112(K) Applies Because it Is Functionally Substantive.

At the October 23 hearing, the Court asked whether MCR 2.112(K), as a Michigan state court rule, has any applicability in federal court. The answer is yes, because MCR 2.112(K) operates substantively.

Federal courts sitting in diversity apply state laws that have a substantive function, regardless of whether the state labels the law as substantive or procedural. *Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*, 489 F.3d 303, 308 (6th Cir. 2007) ("[W]hen deciding what is procedural and what is substantive for diver-

-11-

sity purposes, we apply a functional test based on the 'twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.'") (quoting *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)).

MCR 2.112(K) applies here because it is substantive in function. Numerous federal courts have determined that MCR 2.112(K) applies to diversity cases arising under Michigan law, because it is "a necessary component of Michigan's statutory scheme of fair share liability" and thus required under the *Erie* doctrine. *Greenwich Ins. Co. v. Hogan*, 351 F. Supp. 2d 736, 739 (W.D. Mich. 2004) (citing *Hanna*, 380 U.S. at 467-68). *See also Stonemor Operating, LLC v. Bush*, No. 1:08-CV-631, 2014 WL 4388347, at *7 (W.D. Mich. Sept. 5, 2014); *Smith*, No. 14-CV-10426, 2014 WL 2615278, at *2; *Am. Ins. Co. v. Dornbracht Americas, Inc.*, No. 12-10129, 2013 WL 1788573, at *2 (E.D. Mich. Apr. 26, 2013); *Schriber v. Droste*, No. 1:05 CV 487, 2006 WL 2990271, at *1 n.3 (W.D. Mich. Oct. 18, 2006).[4]

A couple of Michigan state court decisions have referred to MCR 2.112(K) as "procedural." These references do not preclude its applicability in diversity cases, because even a "procedural" state court rule applies in diversity if its func-

---

[4] Only one federal court has declined to apply MCR 2.112(K) in a diversity case. *Dresser v. Cradle of Hope Adoption Ctr., Inc.*, 421 F. Supp. 2d 1024, 1028 (E.D. Mich. 2006). But *Dresser* did not consider the relation of MCR 2.112(K) to the statutory scheme. No other federal court has followed *Dresser*'s holding that MCR 2.112(K) does not apply in diversity cases.

-12-

tion is substantive, as here.  Indeed, these decisions recognized MCR 2.112(K)'s role in the Michigan statutory scheme, and likened it to the kind of rule that does apply in diversity.  *See Taylor v. Michigan Petroleum Techs. Inc.*, No. 314534, 2014 WL 5149930 (Mich. Ct. App. Oct. 14, 2014) (calling MCR 2.112(K) "procedural" but noting that the Michigan Supreme Court passed it to give effect to statutory scheme and to allow amended complaints under MCL 600.2957(2)); *Staff v. Johnson*, 242 Mich. App. 521, 531 (Mich. Ct. App. 2000) (referring to MCR 2.112(k) as "procedural" after referring to statutes of limitations—which are treated as substantive under federal law—as procedural).

## III.  The Court Should Apply MCL 600.2957 to Allow Allocation to the Non-Party at Fault.

The Court's final question was how it should apply MCL 600.2957.  MCL 600.2957 provides for allocation of responsibility by the trier of fact according to each person's (including non-parties') percentage of fault.  It specifies:

> In assessing percentages of fault . . . , the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party in the action. . . . Assessments of percentages of fault for nonparties are used only to accurately determine the fault of named parties.

The Court asked what notice, if any, Graco must give that a non-party may be at fault in order to invoke MCL 600.2957, and whether the timeliness of any such notice is governed by a federal or Michigan standard.  *See* 10-23-14 Tr. at 31.

-13-

### A.   MCL 600.2957 Does Not Itself Require Notice.

MCL 600.2957 does not specify any notice requirement.  It states that the factfinder *shall* consider the fault of non-parties in assessing percentage of fault, without specifying how non-parties are to be identified for inclusion on the verdict form.  Subsection (2) states that within 91 days after "identification" of a non-party, any party may amend its pleading to assert a *claim* against the non-party (making it a *party*), but it does not define "identification."  And neither this subsection nor any other part of MCL 600.2957 specifies a process or time limit for identifying those whose percentage of fault is to be assessed as *non-parties*.

If any notice is required to trigger the right to an assessment of a non-party's percentage of fault under MCL 600.2957, the notice requirement must arise outside of MCL 600.2957.  There are two possible sources of such a notice requirement in federal-court proceedings:  federal law or MCR 2.112(K) (if it applies in a diversity case).  Under either possibility, Graco gave sufficient notice that the factfinder should assess a non-party's percentage of fault.

### B.   Under Federal Law, Graco's Answer Gave Sufficient Notice.

Under federal procedural law, Graco's answer to the complaint was enough to trigger apportionment by the factfinder under MCL 600.2957 (regardless of whether MCR 2.112(K) otherwise applies in diversity cases).

Fed. R. Civ. P. 8(c) sets forth the pleading requirements for affirmative de-

-14-

fenses, including contributory negligence. Graco's answer included the affirmative

defense that others involved in the accident were contributorily negligent, and that

their proportion of fault should be considered under applicable law. (Graco's

Answer and Aff. Defenses, at 6, attached as Ex. F.) Under the Federal Rules,

courts liberally construe pleadings, including answers and affirmative defenses.

*Baker v. City of Detroit*, 483 F. Supp. 919, 921 (E.D. Mich. 1979)

("[H]ypertechnicality in pleading requirements should be avoided. Thus, liberal

pleading rules are equally applicable to the pleading of affirmative defenses.").

It was not necessary for Graco to specify MCL 600.2957 in its affirmative

defense, but only to place the plaintiffs on fair notice that Graco raised the contrib-

utory negligence of others involved in the accident. *See Int'l Outdoor, Inc. v. City

of Southgate,* No. 2:11–CV–14719, 2012 WL 2367160, at *7-9 (E.D. Mich. Apr.

26, 2012) (fair notice does not require pleading of specific facts), *report and rec-

ommendation adopted,* 2012 WL 2367170 (E.D. Mich. June 21, 2012); *Exclusively

Cats Veterinary Hosp., P.C. v. Pharm. Credit Corp*., No. 13-cv-14376, 2014 WL

4715532, *2 (E.D. Mich. Sept. 22, 2014) (in Sixth Circuit, pleading affirmative

defenses requires fair notice, not *Twombly* specificity; collecting authorities).

If there were any doubt whether Graco's answer and affirmative defense suf-

ficiently raised the issue of the other driver's comparative fault, the Court should

give Graco leave to amend its answer under Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2)

says that "[t]he court should freely give leave when justice so requires."  When there is no undue prejudice to the plaintiff (as here), an amendment even to add an affirmative defense is appropriate.  *See Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990).  The Court may treat Graco's Motion for Leave to File Notice of Non-Party at Fault as a motion for leave to amend (*see id.* at 1129-30 (treating motion in limine as motion for leave to amend)), or if necessary Graco can submit a formal motion for leave to amend.  In either case, leave should be granted:  as discussed in Graco's Motion for Leave, the plaintiffs are not prejudiced by Graco's having raised the non-party fault issue when it did. *See, e.g, Moore v. City of Paducah,* 790 F.2d 557, 559-62 (6th Cir. 1986) (district court abused its discretion when it denied leave to amend based on delay, when the opposing party was not prejudiced); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625-26 (6th Cir. 2002) (same).

### C.   Under MCR 2.112(K), Graco's Proposed Notice of Non-Party at Fault Is Sufficient.

In addition to satisfying federal procedural law, Graco gave sufficient notice under MCR 2.112(K) (if it applies in diversity).  MCR 2.112(K)(3)(c) provides:

> The notice [that a nonparty is wholly or partially at fault] must be filed within 91 days after the party files its first responsive pleading. On motion, the court shall allow a later filing of the notice on a showing that the facts on which the notice is based were not and could not with reasonable diligence have been known to the moving party earlier, provided that the late filing of the notice does not result in unfair prejudice to the opposing party.

Michigan courts allow such a notice to be filed after the 91-day period if (1) the defendant has a "reasonable explanation for not seeking permission to file a notice of nonparty fault" sooner and (2) the opposing party is "not unfairly prejudiced." *Bint v. Doe,* 732 N.W.2d 156, 159 (Mich. Ct. App. 2007). Here, there is a reasonable explanation, and the plaintiffs are not prejudiced.

As discussed in Graco's Motion for Leave, a "reasonable explanation" exists for filing a notice of non-party fault after the 91-day period when (1) the complaint indicates that all viable parties are before the court, or (2) procedural issues delayed identification of non-parties at fault. *Id.* (holding defendant's delayed notice proper).

Here, the complaint did not name Mr. Thibodeau as a defendant, allege he committed any wrongdoing, or even provide a factual account of the accident. When a complaint lacks such information, there is a reasonable basis for the defendant to file a MCR 2.112(K) notice after taking discovery. *See, e.g, Quintal v. Von Maur Inc.*, No. 12-11521, 2012 WL 6000404, at \*4 (E.D. Mich. Nov. 30, 2012); *Bint,* 732 N.W.2d at 159. Nor did the police report place fault on Mr. Thibodeau, for it only said that he crossed the centerline (not an infraction under MCL § 257.634 if one of the law's exceptions applies), and that he did not receive a citation (indicating he was not at fault). When Mr. Thibodeau and his passengers were deposed on August 21, 2014 (depositions that were delayed by the com-

-17-

mencement of this case in Pennsylvania state court, a change in the plaintiffs' counsel after transfer, settlement negotiations, and the plaintiffs' delays in answering discovery), Graco first learned that Mr. Thibodeau may have been speeding, may have run a traffic light, and may have been under the influence of legal and illegal narcotics.[5]

In addition, the plaintiffs will suffer no prejudice by designation of Mr. Thibodeau as a non-party at fault.  The plaintiffs' experts received a copy of Mr. Thibodeau's deposition before preparing their reports, and their reports refer to him.  (Rpt. Re: Jermano/Graco Accident, Robert J. Caldwell, p. 1, attached as Ex. G.)  And even if there were any prejudice, it would be curable by an extension of time to conduct discovery.  *See Salter v. Patton*, 682 N.W. 2d 537, 542 (Mich. Ct. App. 2004); *Quintal*, 2012 WL 6000404, at *4.

## CONCLUSION

Under the applicable choice-of-law rules, Michigan law applies to this case. MCR 2.112(K), the Michigan court rule regarding notice of non-party fault, applies in this diversity case because it is functionally substantive.  Under MCL 600.2957, the Court should require the factfinder to determine the percentage of

---

[5] This case is therefore unlike *Snyder v. Advantage Health Physicians*, 760 N.W.2d 834, 841 (Mich. Ct. App. 2008), where the plaintiff had disclosed the non-party doctor's fault (misreading an ultrasound), and the defendant did not investigate or conduct expert review.

fault of the driver of the car that crossed the centerline.  MCL 600.2957 provides that the factfinder "shall" so allocate fault, without specifying any notice prerequisite.  If notice is required, Graco's assertion of the affirmative defense of contributory negligence was sufficient notice under Fed. R. Civ. P. 8(c), and if not, Graco should be given leave to amend under Fed. R. Civ. P. 15.  In addition, Graco's notice of non-party fault was sufficient under MCR 2.112(K).

For all of these reasons, Graco respectfully requests that the Court grant its motion.

Dated: December 16, 2014               Respectfully submitted,

By:  /s/ Heidi K. Oertle

SCHIFF HARDIN LLP
Joseph J. Krasovec (6201456)
Heidi K. Oertle (6275632)
233 South Wacker Drive
Suite 6600
Chicago, IL 60606
312-258-5500 (Phone)
312-258-5600 (Fax)
jkrasovec@schiffhardin.com (E-mail)
hoertle@schiffhardin.com (E-mail)

SCHIFF HARDIN LLP
Gregory L. Curtner (P12414)
Jessica A. Sprovtsoff (P70218)
350 S. Main Street
Suite 210
Ann Arbor, MI 48104
734-222-1518 (Phone)
734-222-1501 (Fax)
gcurtner@schiffhardin.com (E-mail)

jsprovtsoff@schiffhardin.com (E-mail)

ATTORNEYS FOR DEFENDANT GRA-
CO CHILDREN'S PRODUCTS INC.

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on December 16, 2014, she caused the foregoing documents to be served on all counsel of record via the Court's ECF system.

/s/ Heidi Oertle
Heidi Oertle

10808-1496

CH2\15789703.7