# Exhibit A

**KLINE & SPECTER**
*A Professional Corporation*
By:   Shanin Specter, Esquire/40928
      Dominic C. Guerrini, Esquire/91311
1525 Locust Street
Nineteenth Floor
Philadelphia, PA 19102                          Attorneys for Plaintiffs

*Filed and Attested by
PROTHONOTARY
18 SEP 2012 04:20 pm
J. MURPHY*

| | |
|---|---|
| JOSEPH JERMANO and DORY ANN JERMANO, as Parents and Natural Guardians of _____, a minor, and in their own right, <br> 12201 Spenser Lane <br> Carleton, MI 48117 <br><br> DORY ANN JERMANO <br> 12201 Spenser Lane <br> Carleton, MI 48117 <br><br> DOROTHY BERGE <br> 11952 Sweitzer Road <br> Carleton, MI 48117 <br><br>                     Plaintiffs, <br> v. <br><br> GRACO CHILDREN'S PRODUCTS, INC. <br> 150 Oaklands Blvd. <br> Exton, PA 19341 <br>                     Defendant. | COURT OF COMMON PLEAS <br> PHILADELPHIA COUNTY <br><br><br> SEPTEMBER TERM, 2012 <br><br><br> NO. <br><br><br> JURY TRIAL DEMANDED |

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

**AVISO**

Le han demandado a used en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte pueda decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Lawyer Referral Service
Philadelphia Bar Association
1101 Market Street, 11th Floor
Philadelphia, PA 19107
(215) 238-6338

Case ID: 120902038

## CIVIL ACTION COMPLAINT
## 2P – Product Liability

1. Plaintiff, Joseph Jermano, is an adult resident of the State of Michigan, and is the natural father of          , a minor.

2. Plaintiff, Dory Ann Jermano, is an adult resident of the State of Michigan, and is the natural mother of          , a minor.

3.          is the minor daughter of plaintiffs, Joseph Jermano and Dory Ann Jermano, and was born on December 29, 2006.

4. Plaintiff, Dorothy Berge, is an adult resident of the State of Michigan, and is the grandmother of          , a minor.

5. Defendant, Graco Children's Products, Inc. ("Graco") was, at all relevant times hereto, a corporation organized and existing according to the laws of the State of Delaware, with a principal place of business in Exton, Pennsylvania. At all relevant times hereto, Graco regularly conducted business in Philadelphia County.

6. The TurboBooster child safety seat that is the subject of this case was designed, tested, manufactured, packaged, labeled and marketed by Graco.

7. On or about October 26, 2010,          was, according to the information provided by Graco, the proper size and weight to use the TurboBooster. On that date,          was a rear passenger in a 2010 Lincoln MKX ("MKX").          was using her TurboBooster in a reasonably anticipated, expected and foreseeable manner when the MKX was involved in a frontal collision.

8. The subject TurboBooster safety seat was in the same condition just prior to the collision as it was in when it was sold by the defendant.

9.      occupant space inside the MKX was preserved and intact throughout and after the collision; it was more than adequate to allow for an occupant of ] size to safely ride down the crash forces present in the collision without sustaining serious injury had been restrained in a properly designed child safety seat.

10.     The TurboBooster was defective and unreasonably dangerous in that it was not adequately designed, tested, manufactured, packaged, labeled or marketed to minimize the risk of injury or death or to provide safe and effective restraint to children. The safety seat was defective and unreasonably dangerous in one or more of the following ways:

    a. The safety seat failed to prevent shoulder rollout, belt slippage and slack, and/or submarining;

    b. The safety seat failed to hold the seat belt in a safe and proper position during and immediately following the collision;

    c. The safety seat failed to provide adequate upper torso and pelvic restraint and/or to adequately distribute crash loads;

    d. The safety seat utilized an improper design and improper materials, which allowed the seat to deform in this accident and also allowed the seat belt to slip and move into an unsafe position;

    e. The safety seat failed to comply with the minimum federal standard, FMVSS 213, in at least two ways; first, it failed in this collision (and in other accidents and tests), and second, it was labeled as being appropriate for children who were too small to safely use it;

    f. The testing performed by Graco on the safety seat was inadequate and insufficient to provide reasonable assurance that the seat complied with the applicable federal standard or would provide safety to young children in foreseeable collisions or crashes;

Case ID: 120902038

    g.    The testing Graco did perform or otherwise knew of made it clear that the design of the TurboBooster was flawed and that a loss of restraint was inevitable in foreseeable crashes; yet, Graco did nothing to investigate these test failures, determine their cause, or eliminate the cause of the failures;

    h.    The design of the safety seat failed to incorporate a requisite margin of safety to allow for factors, tolerances, variances, environmental effects and foreseeable loading conditions.

11.    Because of the safety seat's defective and unreasonably dangerous condition, the TurboBooster failed to properly restrain    .    was seriously injured as a proximate result of these failures and is now a C6-C7 quadriplegic.

12.    Safer alternative designs existed at the time of the safety seat's design, manufacture, at the time of its sale and at the time of the accident. These alternative designs were both economically and technologically feasible at all relevant times by the application of existing scientific knowledge.

13.    In addition to the defects outlined above, Graco also failed to provide adequate warnings and information regarding the unreasonably dangerous design of the TurboBooster safety seat.

14.    All of this information was actually known to Graco prior to the time the subject TurboBooster was sold. Nevertheless, when Graco sold the subject TurboBooster, they failed to provide any of this information to the public or to the users and consumers of the safety seat, and they failed to warn the public and the users and consumers of the safety seat about the inherent dangers in using the seat with children who would be better protected in seats with five point harnesses.

4

15. Graco's failures in this regard resulted in defects in the TurboBooster's labeling, marketing, instructions, warnings and other informational materials, including but not limited to the following:

    a. The TurboBooster failed to provide adequate warnings, instructions and information regarding the use of the seat with children in certain weight and height ranges, and on how to select a safety seat that would provide reasonable and adequate protection to children in foreseeable crashes, based on a child's height and weight;

    b. The advertising, marketing, sales, point of sale and other related and similar information that was on the box containing the TurboBooster, in the box, on the seat itself and at the point of sale, failed to provide adequate warnings, instructions and information regarding the use of the seat with children in certain weight and height ranges and on how to select a safety seat that would provide reasonable and adequate protection to children in foreseeable crashes based on a child's height and weight;

    c. The warnings and instructions that were provided with and on the TurboBooster were incomplete, inaccurate, concealed the limitations of the seat, failed to provide appropriate and accurate information regarding the minimum height and weight of children who could safely occupy the seat, failed to convey the risks associated with the use of the seat by children who did not weigh enough or were not tall enough to safely use the seat, and otherwise failed to convey information necessary to the safe use of the seat;

    d. The advertising, marketing, sales, point of sale, and other related and similar information that was on the box containing the TurboBoster - in the box, on the seat itself, and at the point of sale, were incomplete, inaccurate, concealed the limitations of the seat, failed to provide appropriate and accurate information regarding the minimum height and weight of children who could safely occupy the seat, failed to convey the risks associated with the use of the seat by children who did not weigh enough or were not tall enough to safely use the seat, and otherwise failed to convey information necessary to the safe use of the seat.

16. Prior to October 26, 2010, Graco had actual knowledge that its TurboBooster safety seats were failing in tests, that the failures would result in the degradation or absence of restraint and that children who experienced these kinds of failures would be at substantially increased risk of death or serious injury in the event of a collision.

17. Prior to October 26, 2010, Graco concealed and otherwise failed to disclose to plaintiffs numerous facts, including but not limited to the following:

    a. They *knew* that testing had shown structural deficiencies in the seat that had resulted in the loss of restraint and that the loss of restraint could cause serious injuries that would have been prevented by the use of non-defective safety seats;

    b. They *knew* that the TurboBooster performed poorly in testing, even when it did not deform or break and that shoulder rollout, belt slippage and slack, and/or submarining were likely results of certain foreseeable collisions;

    c. They *knew* since as early as 1989 that various governmental and non-governmental safety organizations in North America with significant expertise in child transportation safety issues recommended against using a booster seat for a child who had not yet outgrown safety seats that contained integrated harness systems;

    d. They *knew* the TurboBooster would not adequately protect a child who could not yet utilize an automobile's seatbelt system during a collision and that it could actually enhance injuries to such children in that its design permitted and encouraged (i) excessive upper torso movement and head excursion, (ii) head impact with the interior of the automobile, (iii) spinal cord injuries, and (iv) partial ejection of the child from the seat.

18. At all relevant times, the plaintiffs had no knowledge, actual or constructive, of any of the facts alleged above. At the same time, Graco knew or had reason to know that these and other similarly situated persons lacked such knowledge and that they would not realize the dangerous propensities of the TurboBooster, particularly in the face of attention-grabbing point of purchase information that conveyed the message that the TurboBooster provided safety and was unquestionably suitable for children such as      .

19.           injuries were a direct and proximate result of, and were produced by, the product's defective and unreasonably dangerous condition as more fully described herein.

Case ID: 120902038

20. As a direct and proximate result of Graco's designing, testing, manufacturing, labeling, packaging, marketing, selling, advertising, warning and otherwise distributing and placing in the stream of commerce the TurboBooster at issue in this lawsuit, suffered severe and disabling injuries.

21.         has suffered severe physical, emotional and financial injuries that will be permanent.      mental and physical conditions will continue to deteriorate and will cause her to suffer the consequences and ill effects of those injuries for the balance of her natural life.

22. More specifically, plaintiffs are entitled to the recovery of damages in this case, including but not limited to the following:

    a. The physical pain and mental anguish experienced by     in the past associated with her severe injuries;

    b. The physical pain and mental anguish experienced by     which will continue into the future;

    c. The loss of mental and intellectual function, which has occurred in the past, associated with     injuries;

    d. The loss of mental and intellectual function, which will continue into the future;

    e. The physical impairment and disfigurement experienced by     in the past;

    f. The physical impairment and disfigurement which will continue into the future;

    g. The loss or reduction in earning capacity which     will sustain in the future;

    h. The reasonable and necessary medical expenses that have and will be sustained in the future as a result of     injuries;

    i. The reasonable and necessary funds for special education associated with     injuries.

Case ID: 120902038

## COUNT I: STRICT LIABILITY
### Plaintiffs v. Graco

23. Plaintiffs incorporate and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

24. Graco was, at all relevant times, engaged in the business of labeling, packaging, marketing, selling, advertising, warning and otherwise distributing and placing in the stream of commerce the TurboBooster at issue in this lawsuit. In addition, Graco was in the business of researching, developing, designing, testing, producing, assembling and manufacturing TurboBooster safety seats.

25. The TurboBooster at issue herein reached plaintiffs, the ultimate users and consumers of the product, without any substantial change in its condition from the time it was sold by Graco.

26. The TurboBooster, when it reached plaintiffs, was in a condition that was unreasonably dangerous to the ultimate user or consumer, taking into consideration the utility of the seat and the risks involved in its use.

27. The TurboBooster was defective and unsafe for its intended purposes at the time of its design, testing, manufacture, marketing and sale by Graco. The product was defectively designed, defectively tested, defectively manufactured, defectively labeled, defectively marketed, and unreasonably dangerous to plaintiffs in that the design, testing, manufacture, labeling and marketing of the safety seat made it unsafe and dangerous for the reasons set forth above.

Case ID: 120902038

28. At the time the subject TurboBooster left the possession of Graco, there were safer alternative designs than that used in the subject TurboBooster, any one of which would have significantly improved the safety seat's crashworthiness. These alternative designs were both economically and technologically feasible.

WHEREFORE, plaintiffs, Joseph Jermano and Dory Ann Jermano, as the Parents and Natural Guardians of            , a minor, and in their own right, demand judgment against the defendant, jointly and severally, in an amount in excess of the local arbitration limits and in excess of $50,000.00, exclusive of pre-judgment interest, costs and post-judgment interest. The amount claimed exceeds the jurisdictional amount requiring arbitration.

## COUNT II – NEGLIGENCE
### Plaintiffs v. Graco

29. Plaintiffs incorporate and reallege the foregoing paragraphs of this Complaint as if fully set forth herein.

30. Graco failed to exercise reasonable care in designing, testing, developing, manufacturing, labeling, packaging, supplying, marketing, selling, advertising, warning and otherwise distributing and placing in the stream of commerce the TurboBooster at issue in this lawsuit as described above.

31. Graco failed once they learned of potential problems with the TurboBooster, to perform an adequate inquiry and to ensure that other TurboBoosters were not designed, tested, developed, manufactured, labeled, packaged, supplied, marketed, sold, advertised, contained warnings or otherwise distributed and placed in the stream of commerce in the same way.

32. Graco failed once they learned of potential problems with the TurboBooster, to adequately notify users and consumers of the hazards and risks associated with the TurboBooster.

Case ID: 120902038

33. Graco knew, or should have known, that the defects associated with the TurboBooster created an unreasonable risk of bodily harm to anyone using the product.

34. Despite the fact that Graco knew, or should have known, that the TurboBooster could cause serious and life-threatening injuries to anyone who used it, Graco took inadequate steps to notify consumers of this danger and to prevent the safety seat from being used by children like             .

35. Graco knew, or should have known, that it was foreseeable that children, such as             would suffer injuries as a result of Graco's failures to exercise ordinary care as set forth herein.

36. Graco's acts and omissions as described above constitute negligence, which proximately caused injuries to plaintiffs, as well as other injuries and damages set forth herein.

37. The conduct of Graco as set forth herein was outrageous and constituted willful, wanton and reckless disregard for the safety of             .

38. Graco showed a reckless disregard for the public safety due to their acts and omissions as set forth in this Complaint. Graco knew that there was a substantial and unnecessary risk of injury to those who used their product and they failed to either determine the seriousness of the danger or reduce the risk to an acceptable minimal level. Prior to building the subject TurboBooster, Graco was aware that: (i) the safety seat had structurally failed in tests and allowed excessive head excursion and shoulder rollout; (ii) it had failed to properly investigate the reasons for the structural failures and could not explain the failures; (iii) because it failed to understand the reasons for the failures, it made no design changes to eliminate the hazards to children that were created by structural failures; (iv) it had done nothing to eliminate shoulder belt slippage and rollout even when the safety seats did not structurally fail, despite knowing that

10

Case ID: 120902038

slippage and rollout resulted in excessive head excursion and the potential for catastrophic injuries; (v) it had marketed the TurboBooster for children who should have been in harnessed seats when it knew that parents and other caregivers trusted the Graco name and would purchase the seat in reliance on Graco's recommendations – recommendations which deliberately concealed what Graco knew about the risks and hazards associated with the premature graduation of children to belt-positioning boosters like the TurboBooster; (vi) it had ignored and would continue to ignore the strong urging from the Administrator of NHTSA that safety seats should be designed with the highest levels of safety in mind, that the minimum government standards should not be the most in safety design that manufacturers provide, and that it is up to the manufacturers to take on the responsibility of maximizing child safety in all respects; and (vii) it knew that the technologically and economically feasible alternative designs were available, which were far superior to the design Graco used with the TurboBooster.

WHEREFORE, plaintiffs, Joseph Jermano and Dory Ann Jermano, as the Parents and Natural Guardians of            , a minor, and in their own right, demand judgment against the defendant for compensatory and punitive damages in an amount in excess of the local arbitration limits and in excess of $50,000.00, exclusive of pre-judgment interest, costs and post-judgment interest. The amount claimed exceeds the jurisdictional amount requiring arbitration.

Case ID: 120902038

## COUNT III
**Dory Ann Jermano, as the Parent and Natural Guardian of          , a minor**
**v.**
**All Defendants**
**Negligent Infliction of Emotional Distress**

39. The allegations set forth above are incorporated herein by reference as if set forth in full.

40. As a result of the negligent conduct and fault of all defendants, jointly and severally, as well as their agents, servants and/or employees, Dory Ann Jermano suffered mental anguish and distress, including, but not limited to, emotional distress, anxiety, and depression.

41. Dory Ann Jermano directly and contemporaneously witnessed the above-described negligence and injury caused to          and/or witnessed the pain and suffering of          .

42. The witnessing of the negligence and injury described herein caused Dory Ann Jermano to suffer severe emotional shock and trauma and psychological injury.

43. As a result of the emotional shock and trauma suffered by Dory Ann Jermano as a result of defendants' negligence, Dory Ann Jermano continues to experience physical and/or emotional effects and/or manifestations of that emotional trauma and shock, including sleeplessness, anxiety, depression and other symptoms, and will continue to so suffer in the future, and therefore, is entitled to recover damages in her own right for her physical injuries and emotional pain and suffering under the law.

WHEREFORE, plaintiff Dory Ann Jermano demands damages against all defendants, jointly and severally, in an amount in excess of fifty thousand dollars ($50,000.00), and in excess of the prevailing arbitration limits, exclusive of delay damages and costs.

Case ID: 120902038

## COUNT III
## Dorothy Berge
## v.
## All Defendants
## Negligent Infliction of Emotional Distress

44. The allegations set forth above are incorporated herein by reference as if set forth in full.

45. As a result of the negligent conduct and fault of all defendants, jointly and severally, as well as their agents, servants and/or employees, Dorothy Berge suffered mental anguish and distress, including, but not limited to, emotional distress, anxiety, and depression.

46. Dorothy Berge directly and contemporaneously witnessed the above-described negligence and injury caused to           and/or witnessed the pain and suffering of          .

47. The witnessing of the negligence and injury described herein caused Dorothy Berge to suffer severe emotional shock and trauma and psychological injury.

48. As a result of the emotional shock and trauma suffered by Dorothy Berge as a result of defendants' negligence, Dorothy Berge continues to experience physical and/or emotional effects and/or manifestations of that emotional trauma and shock, including sleeplessness, anxiety, depression and other symptoms, and will continue to so suffer in the future, and therefore, is entitled to recover damages in her own right for her physical injuries and emotional pain and suffering under the law.

Case ID: 120902038

WHEREFORE, plaintiff Dorothy Berge demands damages against all defendants, jointly and severally, in an amount in excess of fifty thousand dollars ($50,000.00), and in excess of the prevailing arbitration limits, exclusive of delay damages and costs.

                                                   **KLINE & SPECTER**
                                                   *A Professional Corporation*

Dated: 9/17/12         BY: _____
                                               SHANIN SPECTER, ESQUIRE
                                               DOMINIC C. GUERRINI, ESQUIRE
                                               The Nineteenth Floor
                                               1525 Locust Street
                                               Philadelphia, Pennsylvania 19102
                                               (215) 772-1000 telephone
                                               (215) 735-0937 telefax

## VERIFICATION

We, Joseph Jermano and Dory Ann Jermano, hereby verify that we are the plaintiffs in the foregoing action; that the attached Complaint is based upon information which we have furnished to our counsel and upon information which has been gathered by our counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not of the affiants. We have read the Complaint and to the extent that the allegations therein are based upon information we have given counsel, they are true and correct to the best of our knowledge, information, and belief. To the extent that the contents of the Complaint are that of counsel, we have relied upon counsel in making this Verification. We understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

_____
JOSEPH JERMANO, as Parent and Natural Guardian of            , a minor, and In His Own Right

_____
DORY ANN JERMANO, as Parent and Natural Guardian of            , a minor, and In Her Own Right

15

Case ID: 120902038

## VERIFICATION

I, Dorothy Berge, hereby verify that I am a plaintiff in the foregoing action; that the attached Complaint is based upon information which I have furnished to my counsel and upon information which has been gathered by my counsel in the preparation of the lawsuit. The language of the Complaint is that of counsel and not of the affiant. I have read the Complaint and to the extent that the allegations therein are based upon information I have given counsel, they are true and correct to the best of my knowledge, information, and belief. To the extent that the contents of the Complaint are that of counsel, I have relied upon counsel in making this Verification. I understand that false statements made herein are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities.

_____
DOROTHY BERGE

Case ID: 120902038