UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH JERMANO, et al.,

       Plaintiffs,                           Case No. 13-cv-10610
                                              Hon. Matthew F. Leitman

v.

GRACO CHILDREN'S
PRODUCTS, INC.,

       Defendant.
_____/

## OPINION AND ORDER (1) DETERMINING GOVERNING LAW WITH RESPECT TO DAMAGES AND (2) DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE NOTICE OF NON-PARTY AT FAULT (ECF #27)

## INTRODUCTION

This action arises out of a tragic car accident in Monroe, Michigan. On October 26, 2010, Plaintiff Mia Jermano ("Mia"), then a toddler, was travelling in a car with her mother, Plaintiff Dory Jermano ("Dory"). Mia was seated in a "TurboBooster" car seat designed by Defendant Graco Children's Products, Inc. ("Graco"). Another vehicle crossed the center line and hit the Jermanos' car head-on, and Mia suffered catastrophic injuries. She is now a quadriplegic.

Plaintiffs filed this action against Graco on September 18, 2012. (*See* the "Complaint," ECF #1-3.) Plaintiffs allege that the TurboBooster was defectively designed and that the design defect played a role in Mia's injuries. (*See id.*)

1

Currently before the Court is Graco's motion for leave to file a Notice of Non-Party at Fault (the "Notice") pursuant to Michigan Court Rule 2.112(K)(3)(c). (*See* the "Non-Party Fault Motion," ECF #27.)   The Notice would designate Andrew Thibodeau ("Thibodeau"), the driver of the car that struck Dory and Mia, as a non-party at fault in this action.  (*See id.*)

After the parties briefed and argued the Non-Party Fault Motion, it became apparent that resolution of the motion could depend on whether the determination of damages in this action, if any, is to be governed by Michigan law or Pennsylvania law.  Michigan damages law allows for the apportionment of fault among defendants and properly-identified non-parties and does not recognize joint and several liability.  In contrast, Pennsylvania damages law does recognize joint and several liability and does not allocate fault to non-parties.   Thus, if Pennsylvania damages law applies, the Notice – seeking to have a percentage of fault allocated to Thibodeau – would have no place in this action.

Michigan law and Pennsylvania law also differ on the amount and type of damages that may be recovered in this action.  Pennsylvania law allows a jury to award punitive damages and does not impose any caps on non-economic damages; Michigan law precludes an award of punitive damages and imposes a cap on non-economic damages.

2

The Court deems it appropriate to resolve the choice-of-law issues with respect to damages at this point.  For the reasons explained below, the Court concludes that Pennsylvania damages law applies, and the Court **DENIES** the Non-Party Fault Motion.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    The Parties

Dory, Mia, and Joseph Jermano (Mia's father and Dory's husband) (collectively, the "Jermanos") live in Carleton, Michigan.  (*See* Dory Jermano Deposition, ECF #35-2 at 7, Pg. ID 455.)  Plaintiff Dorothy Berge ("Dorothy"), who also resides in Michigan, is Mia's grandmother.  In the spring or summer 2010, the Jermanos purchased a "TurboBooster" car seat from a Target store in Monroe, Michigan. (*See* Plaintiffs' interrogatory responses, ECF #33-4 at No. 6, Pg. ID 358.)

The TurboBooster was designed and manufactured by Graco.  Prior to June 2009, Graco's corporate headquarters were located in Exton, Pennsylvania.  (*See* Graco interrogatory responses, ECF #33-5 at No. 3, Pg. ID 367-368.) "[E]mployees across a variety of functions and job titles worked at Graco's Exton, Pennsylvania, facility, including marketing, finance, human resources, customer services, and research and design."  (*Id.*)  In June 2009, Graco moved its headquarters to Atlanta, Georgia.  (*See id.*)  However, certain Graco employees –

3

including some employees responsible for designing and engineering Graco's car seats – remained in Pennsylvania even after Graco's move to Atlanta.  (*See, e.g.,* Deposition of Graco car seat engineer Matt Morgenstern, ECF #36-27, at 6-12, Pg. ID 668-669.)

**B.    The Car Accident**

On October 26, 2010, Dory, Dorothy, and Mia were returning home after running some errands in Monroe, Michigan.  (*See* Dory Dep. at 35-37, Pg. ID 456.) Dory was driving; Dorothy was seated in the front passenger seat; and Mia was seated in a TurboBooster in the rear passenger seat.  (*See id.* at 37, Pg. ID 456.)  A car heading in the opposite direction hit the Jermanos' vehicle head-on.  The Police Report, drafted the day of the accident, identified the driver of the other vehicle as Thibodeau and stated that Thobodeau traveled "across the center line and struck" the Jermanos' vehicle.  (The "Police Report," ECF #33-3 at 5, Pg. ID 352-53.)

Dory and Dorothy suffered minor injuries, but Mia's injuries were catastrophic.  Mia's spinal cord was badly damaged, and doctors told Dory that Mia would "never move or feel below her chest."  (Dory Dep. at 72, Pg. ID 460.)

**C.    Plaintiffs File Suit Against Graco in Pennsylvania and Their Action Is Transferred to This Court**

On September 18, 2012, the Jermanos and Dorothy (collectively, the "Plaintiffs") filed a four-count complaint in Pennsylvania state court against Graco seeking compensatory and punitive damages.  (*See* the Compl., ECF #1-3.)  The

4

first two counts of the Complaint (titled "Strict Liability" and "Negligence") seek damages related to, among other things, the "defective[] design[]" and "defective[] test[ing]" of the TurboBooster. (*See id.* at ¶¶23-38.) Counts three and four of the Complaint allege the negligent infliction of emotional distress. (*See id.* at ¶¶39-48.)

On October 17, 2012, Graco removed Plaintiffs' action to the United States District Court for the Eastern District of Pennsylvania. (*See* ECF #1.) Graco then filed a motion with the Pennsylvania federal court to transfer the action to this Court. (*See* Pennsylvania Court Order, ECF #2.) Plaintiffs did not oppose transfer, and on February 12, 2013, Plaintiffs' action was transferred to this Court. (*See id.*)

**D.     Discovery Reveals Pennsylvania's Meaningful Contacts With Respect to the Design of the TurboBooster**

There is substantial evidence in the record that many of the critical steps in the development and production of the TurboBooster took place in Pennsylvania. For example, many of the engineers and designers who created the TurboBooster, oversaw the TurboBooster's testing, and created revised versions of the TurboBooster based on that testing, worked in Graco's Exton, Pennsylvania facility. (*See, e.g.,* ECF #35-3.) And even after Graco moved its headquarters to Atlanta, a team of "car seat" engineers and designers remained in Pennsylvania, and continued to work on the TurboBooster from that location. (*See, e.g.,*

5

Morgenstern Dep. at 6-12, ECF #36-27, Pg. ID 668-669; *see also* Deposition of Graco Senior Manager Jason Carpenter, ECF #36-26.)

Moreover, the specific TurboBooster the Jermanos purchased included labels in two separate places that said Graco was located in "Exton, Pennsylvania." (*See* photographs, ECF #36-28.)   In addition, the "owner's manual" that was included with the Jermanos' TurboBooster also listed "Exton, Pennsylvania" as Graco's primary address. (*See* ECF #36-29 at 2, Pg. ID 674.)  Finally, the product registration card the Jermanos were asked to return was to be mailed to a Graco address in "Elverson, Pennsylvania."  (*See* ECF #36-30.)

Pennsylvania is not the only location with a connection to the development and manufacturing of the TurboBooster.  The TurboBooster was manufactured in China (*see* ECF #36-28), engineers in Europe helped design the product (*see, e.g.,* ECF #36-9), and the product was tested in multiple places, including Ohio and the United Kingdom.  (*See* Deposition of Graco Engineer Steven Gerhart at 14, 47, 54, ECF #33-6 at 3-6, Pg. ID 374-377.)   Nonetheless, Graco acknowledges that it "largely designed the TurboBooster in Pennsylvania and Europe…."  (Graco Brief, ECF #33 at 9, Pg. ID 317.)[1]

---

[1]  Graco also acknowledges that the version of the TurboBooster the Jermanos purchased "was largely designed before Graco moved to Georgia" in June 2009. (Graco Br., ECF #33 at 3, Pg. ID 311.)

**E.     Graco Seeks Leave to File a Notice of Non-Party Fault Under Michigan Law Identifying Thibodeau as a Non-Party at Fault**

A Michigan statute, MCL § 600.2957, provides that "the liability of each person shall be allocated … by the trier of fact … in direct proportion to the person's percentage of fault.  In assessing percentages of fault … the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action."  MCL § 600.2957(1).   The Michigan Court Rules establish the procedure to be followed when a defendant in a state court action seeks an allocation of fault pursuant to this statute.  The rules provide that "a party against whom a claim is asserted may give notice of a claim that a nonparty is wholly or partially at fault," MCR 2.112(K)(3), and the rules specifically prohibit the trier of fact from allocating fault to a non-party unless such notice has been provided.  *See* MCR 2.112(K)(2).  A notice of non-party fault "must be filed within 91 days after the party files its first responsive pleading." MCR 2.112(K)(3).

Graco did not file a notice of non-party fault naming Thibodeau within 91 days of filing its Answer to the Complaint.  Instead, on October 2, 2014 – nearly two years after filing its Answer and more than eighteen months after the action was transferred to this Court and discovery began – Graco filed the instant Non-Party Fault Motion seeking leave to file the Notice outside of the 91-day period. (*See* the Non-Party Fault Motion, ECF #27.)   Graco asserts that it should be

7

permitted to file the delayed Notice pursuant to MCR 2.112(K)(3)(c), which provides that "the court shall allow a later filing of the notice on a showing that the facts on which the notice is based were not and could not with reasonable diligence have been known to the moving party earlier, provided that the late filing of the notice does not result in unfair prejudice to the opposing party." Graco argues that it did not have a basis to file the Notice naming Thibodeau until it took his deposition on August 21, 2014. Graco says that Thibodeau's deposition testimony revealed, for the first time, that he "may have caused the accident that forms the basis of this lawsuit because [he] (1) was potentially impaired by the use of both prescription and non-prescription narcotics; (2) sped; and (3) may have ignored a traffic light." (*Id.* at 4, ¶3, Pg. ID 202.) Thus, according to Graco, its failure to file the Notice earlier should be excused because "the facts on which the notice is based were not and could not with reasonable diligence have been known to [it] earlier." (*Id.* at 3, ¶1, Pg. ID 201 (quoting MCR 2.112(K)(3)(c)).)

## F.    The Court Orders Supplemental Briefing on the Choice-of-Law Issue

The Court held argument on the Non-Party Fault Motion on October 23, 2014. (*See* Dkt.) Following the hearing, the Court ordered supplemental briefing on several damages issues, including (1) whether Michigan damages law or Pennsylvania damages law applied and (2) whether, if Michigan damages law applied, the provisions of the Michigan Court Rules concerning the filing of

8

notices of non-party fault would control in this federal action. (*See* Supplemental Briefing Order, ECF #31.)   The parties have now filed their supplemental briefs. Graco argues that Michigan damages law applies (*see* Graco's Brief, ECF #33 at 4-11, Pg. ID 312-319) and that MCR 2.112(K) governs its request to file the Notice. (*Id.* at 11-13, Pg. ID 319-321.)   Plaintiffs insist Pennsylvania damages law controls (*see* Plaintiffs' Br., ECF #35 at 16-30, Pg. ID 429-443), but Plaintiffs agree with Graco that if Michigan damages law applies, then MCR 2.112(K) governs Graco's request to file the Notice.   (*See id.* at 30-35, Pg. ID 443-448.)   The Court heard additional argument on the choice of law issues on January 26, 2015.  (*See* Dkt.)

## ANALYSIS

### A.      This Court Must Apply Pennsylvania's Choice of Law Rules

The United States District Court for the Eastern District of Pennsylvania transferred Plaintiffs' action to this Court pursuant to 28 U.S.C. § 1404(a).   When an action is transferred under this statute, the transferee court must apply the choice-of-law rules from the transferor court.  *See, e.g., Van Dusen v. Barrack*, 376 U.S. 612, 637-642 (1964).   Had this action remained pending in the Eastern District of Pennsylvania, the federal court there would have applied Pennsylvania's choice-of-law rules because the basis of that court's subject-matter jurisdiction was complete diversity under 28 U.S.C. § 1332. *See Klaxon v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941) (In diversity cases, "[t]he conflict of laws rules to be applied

9

by the federal court in [a state] must conform to those prevailing in [that] state['s] courts").   Thus, this Court must apply Pennsylvania's choice-of-law rules in determining whether the action is governed by Michigan damages law (as Graco claims) or by Pennsylvania damages law (as Plaintiffs claim).

"Pennsylvania's choice-of-law analysis consists of two parts.  First, the court must look to see whether a false conflict exists." *LeJuene v. Bliss-Salem, Inc.,* 85 F.3d 1069, 1071 (3d Cir. 1996) (citations omitted).  A false conflict exists "where 'only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law.'" *Id.* (quoting *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991)).   "If a false conflict exists, then the court must apply the law of the state whose interests would be harmed." *Campbell v. Farber*, 975 F.Supp.2d 485, 506 (M.D. Pa. 2013).

If the Court determines that a true conflict exists – i.e., that "the interests of both jurisdictions would be impaired if [their laws were] not applied," *id*. – then the Court proceeds to the second step of the analysis and "determines which state has the greater interest in the application of its law." *LeJuene*, 85 F.3d at 1071 (citations omitted).  The Court applies the law of the state with the greater interest with respect to "the particular issue" in dispute.  *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 463 (3d Cir. 2006) (quoting *Griffith v. United Air Lines*, 203 A.2d 796 (Pa. 1964)). "Because [this] choice of law analysis is issue-specific,

10

different states' laws may apply to different issues in a single case." *Berg Chilling Systems*, 435 F.3d at 462.

## B.    Pennsylvania Law Applies to Plaintiffs' Claim for Punitive Damages

The Court first considers whether Plaintiffs' claim for punitive damages is governed by Michigan law or Pennsylvania law.   The Court concludes that Pennsylvania law governs.

### 1.    A True Conflict Exists Between Michigan and Pennsylvania Law With Respect to the Recovery of Punitive Damages

A clear conflict exists between Michigan and Pennsylvania law on the issue of whether Plaintiffs may seek punitive damages in this action.  Michigan does not allow the award of punitive damages to punish the defendant unless expressly authorized by statute.  *See, e.g., Casey v. Auto Owners Ins. Co.,* 729 N.W.2d 277, 286 (Mich. Ct. App. 2006).  Conversely, Pennsylvania allows for "the recovery of punitive damages when the conduct complained of is especially egregious."  *Kelly v. Ford Motor Company*, 933 F.Supp. 465, 468 (E.D. Pa. 1996).  This is a "true" conflict under Pennsylvania's choice-of-law rules because each state has an interest in having its punitive damages rule applied here.

Michigan bans punitive damages, in part, to protect "companies doing substantial business within its borders" from excessive liability and in order to induce "other businesses to enter the state with the assurance that, although responsible for its own torts, [these companies] shall be immune from excessive

11

financial liability." *In Re Air Disaster at Detroit Metropolitan Airport*, 750 F.Supp. 793, 806-07 (E.D. Mich. 1989). While Michigan's prohibition on punitive damages primarily protects businesses domiciled in Michigan, *id.*, it may also boost the state's economy by encouraging non-Michigan companies to sell their products in this state without fear of excessive tort liability. *See, e.g., LeJeune*, 85 F.3d at 1072 (noting that limitations on liability may encourage economic activity within a state and lower costs to consumers). Thus, Michigan has some interest in protecting non-Michigan manufacturers such as Graco from punitive damages that arise from their sales in Michigan.

On the other hand, Pennsylvania has a clear interest in subjecting Graco to an award of punitive damages. Pennsylvania allows juries to award these damages, in large part, in order to punish companies that commit outrageous conduct within its borders and to deter companies from committing such conduct within its borders. *See Kelly*, 933 F.Supp. at 469-72. As described in detail above, much (if not all) of the allegedly-outrageous conduct in this action – i.e., the allegedly-defective design work and oversight of testing – occurred in Pennsylvania. Pennsylvania certainly has an interest in applying its punitive damages law to that alleged conduct within its borders.

12

Notably, Pennsylvania federal courts have held that the conflict between Michigan and Pennsylvania law on punitive damages is a "true" conflict under Pennsylvania's choice-of-law rules. *See Kelly, supra* at 468.   In *Kelly*, a Pennsylvania decedent was killed in a fatal automobile accident in Pennsylvania while riding in a vehicle that Ford Motor Company ("Ford") designed in Michigan. The decedent's wife filed a design-defect claim against Ford in Pennsylvania, and a dispute arose as to whether Michigan law or Pennsylvania law governed her request for punitive damages.   The federal court in *Kelly* applied Pennsylvania's choice-of-law rules and concluded that the conflict between Michigan law and Pennsylvania law with respect to punitive damages is a "true" conflict.   The court held that each state's interests would be impaired if its law of punitive damages was not applied:

> Punitive damages serve the dual purpose of punishing the defendant for misconduct and deterring the defendant and others from engaging in similar misconduct. [....] [T]his Court [] concludes that those states such as Michigan which have refused to impose punitive damages on its defendants have done so in order to promote (1) the financial stability of the businesses that conduct their affairs within its borders, and (2) the overall economic well-being of its citizenry. If Pennsylvania's law allowing punitive damages were applied, Michigan's policy interests would certainly be impaired. Likewise, if Michigan's law prohibiting punitive damages were applied, then Pennsylvania's interest in punishing and deterring misconduct would not be served. Both jurisdiction's governmental interests would be impaired

13

> by the application of the other jurisdiction's laws, and
> thus, there is no false conflict.

*Id* (internal citations and punctuation omitted).  The federal court in *Campbell, supra*, another design-defect case, likewise concluded that there is a "true" conflict between Michigan law and Pennsylvania law with respect to punitive damages. *See Campbell*, 975 F.Supp.2d at 506.

The Court finds the analysis in *Kelly* and *Campbell* to be persuasive.  As those courts correctly concluded, the interests of both Michigan and Pennsylvania – Michigan's interest in encouraging commerce on one hand, and Pennsylvania's interest in discouraging tortious conduct within its borders on the other – would be impaired if their law of punitive damages was not applied in this action.  Thus, a "true" conflict exists.

> **2.    Pennsylvania Law Applies to Plaintiffs' Claim for Punitive Damages Because Pennsylvania Has More Relevant Contacts With, and a Greater Interest in, the Alleged Wrongdoing**

The analysis of which state's law applies in the face of a "true" conflict "requires more than a mere counting of contacts. Rather, [a court] must weigh [each state's] contacts on a qualitative scale according to their relation to the policies and interests underlying the [particular] issue." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 231 (3d Cir. 2007) (internal citation and quotation marks omitted).  The contacts a court may consider generally "include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury

14

occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." *Campbell*, 975 F.Supp.2d at 506 (internal quotation marks omitted). Importantly, when a court applying Pennsylvania's choice-of-law rules chooses between the conflicting punitive damages laws of two different states, "the most relevant contacts are the location where the allegedly outrageous conduct took place, and the state of incorporation and principal place of business of the corporation involved." *Id.* at 507-508; *see also Kelly*, 933 F.Supp. at 469. These contacts are the most significant "because the purpose of punitive damages is not to compensate the injured party for injury but to punish and deter outrageous conduct." *Campbell*, 975 F.Supp. at 508 (citing *Kelly*, 933 F.Supp. at 469).

As noted above, the majority of Graco's allegedly-tortious conduct took place in Pennsylvania, where Graco was headquartered when it designed the TurboBooster and where the bulk of the design work occurred. (*See* ECF #35-3 – outlining the activities that took place in Pennsylvania.) These Pennsylvania connections to the conduct in question – the allegedly-defective design and testing of the TurboBooster – weigh very heavily in favor of applying Pennsylvania's punitive damages law over Michigan's law. Pennsylvania has a strong interest in deterring tortious conduct within its borders through the availability of punitive damages. And while Graco points out that it conducted some design and testing

15

work on the TurboBooster outside of Pennsylvania, it has not pointed to any evidence that substantial work occurred in Michigan.[2]  The fact that some work may have occurred outside of Pennsylvania – but not in Michigan – does not weigh in favor of applying Michigan damages law.

Notably, in two design defect cases that are mirror-images of this action – arising out of vehicle accidents in Pennsylvania involving products designed in Michigan – Pennsylvania federal courts have held that the state in which the product was designed has the more relevant contacts and a stronger interest in having its punitive damages law applied.  For example, in *Kelly*, *supra*, the plaintiff argued that Pennsylvania law should apply to her request for punitive damages because "the injury took place in Pennsylvania, where the intentional sale of a known defective product was felt."  *Id.* at 470.  The court rejected that argument.  That court concluded that Michigan law governed the claim for punitive damages because the most important contact – the location of the alleged tortious conduct – occurred in Michigan, where the vehicle was designed:

---

[2] In its supplemental brief to the Court, Graco asserts that it "conducted dynamic testing to evaluate the Turbobooster's performance in simulated frontal crashes in Ohio, New York, *Michigan*, Wisconsin, the U.K., and Taiwan."  (*See* Graco Br., ECF #33 at 3, Pg. ID 311; emphasis added.)  As authority for this statement, Graco cited and attached a partial transcript of the deposition of Graco engineer Steven Gerhart.  (*See id.*; *see also* ECF #33-6.)  The attached pages, however, do not mention any testing performed in the State of Michigan.  And even if they did, this limited Michigan contact pales in comparison to the extensive work conducted in and from the State of Pennsylvania on the TurboBooster.  (*See, e.g.,* ECF #35-3.)

16

> In the instant case, the evidence is uncontradicted that all
> of the relevant conduct, including the development
> activity, design, testing, and decision-making relating to
> the allegedly defective Bronco II, took place at Ford's
> headquarters in Dearborn, Michigan.
>
> [….]
>
> Both Pennsylvania and Michigan demonstrate equally
> valid interests in the application of their own punitive
> damages law to the case at bar. *However, because an
> analysis of the relevant contacts, with regard to plaintiff's
> claim for punitive damages, reveals that Michigan has
> the most significant relationship to the events at issue,
> this Court predicts that the Pennsylvania Supreme Court,
> applying Pennsylvania choice of law rules, would hold
> that Michigan's law prohibiting the award of punitive
> damages applies to the instant case.*

*Id.* at 470-471 (internal citations omitted; emphasis added).

A second Pennsylvania federal court, reviewing the same conflict between

Michigan and Pennsylvania's punitive damage regimes in a design defect case,

reached the same conclusion. In *Campbell*, *supra*, a Pennsylvania plaintiff was

rendered a quadriplegic when the 1996 GMC Jimmy she was a passenger in was

involved in an car accident in Pennsylvania. *See Campbell*, 975 F.Supp.2d at 488-

489; *see also id.* at 504. The plaintiff thereafter brought a design defect claim

against General Motors, a Michigan corporation and designer of the subject

vehicle, and she sought punitive damages under Pennsylvania law. *See id.* But the

Pennsylvania federal court held that the plaintiff's claim for punitive damages was

governed by Michigan law, not Pennsylvania law. The court stressed that

17

Michigan had the more relevant and significant contacts because General Motors

had its principal place of business in that state and conducted the relevant design

work there:

> The relevant contacts weigh in favor of applying
> Michigan law on the issue of punitive damages. GM is
> incorporated in Delaware, but maintains its principal
> place of business in Detroit, Michigan.  GM designed,
> engineered, and made all of the significant decisions
> concerning the design and engineering of the [allegedly-
> defectively designed car] in Michigan. *Campbell brings a
> defective design claim, which means that the place of the
> allegedly outrageous conduct was the state in which the
> [car] was designed—Michigan*. Michigan therefore has
> the most relevant contacts under Pennsylvania choice of
> law rules.

*Campbell*, 975 F.Supp.2d at 508 (emphasis added; internal citations and quotation

marks omitted).

The relevant facts here are materially indistinguishable from those in

*Campbell* and *Kelly*.  Like the plaintiffs in those cases, Plaintiffs here have asserted

a design-defect claim in which they seek damages caused by a product that was

designed in one state, but was purchased, used, and involved in an accident in a

second state. The Court agrees with the holdings of *Kelly* and *Campbell* that under

these circumstances, the state with the most relevant contacts, and the strongest

relevant interests, with respect to a claim for punitive damages is the state in which

the product was designed.  Because the majority of the design and engineering

work for the TurboBooster took place in Pennsylvania (and none occurred in

18

Michigan), Pennsylvania has the most meaningful and relevant contacts under Pennsylvania's choice-of-law rules with respect to Plaintiffs' claims for punitive damages. Pennsylvania law shall therefore govern Plaintiffs' claim for such damages.

Graco resists this conclusion on several grounds. First, Graco argues that "Pennsylvania courts routinely hold that the place where the injury occurs controls over the place where the defendant's business is located, including the place where the product was designed." (Graco Br., ECF #33 at 10, Pg. ID 318.) But Pennsylvania courts have cautioned that "in an action for personal injuries, the law of the state where the injury occurred normally determines the rights and liabilities of the parties, *unless another state, applying the contacts test, has a more significant relationship to the occurrence and parties*." *Laconis v. Burlington County Bridge Comm.*, 583 A.2d 1218, 1223 (Pa. Super. 1990) (emphasis added). *Kelly* and *Campbell* make clear that under Pennsylvania law, in a design-defect action like this one, the state in which an allegedly-defective product is designed has a more significant relationship to the parties and the disputed issues than the state in which the injury occurred.

Moreover, the three Pennsylvania federal cases on which Graco primarily relies to support its state-of-injury-controls argument are distinguishable. These decisions – *Wolfe v. McNeil-PPC, Inc.*, 703 F.Supp.2d 487 (E.D. Pa. 2010), *Knipe*

19

*v. SmithKline Beecham*, 583 F.Supp.2d 602 (E.D. Pa. 2008), and *Bearden v. Wyeth*, 482 F.Supp.2d 614 (E.D. Pa. 2006) – involved product liability claims related to prescription medications.  In each of these cases, the courts were careful to note that doctors made representations to the plaintiffs about the subject drugs in the state in which in the injury occurred.  *See, Wolfe*, 703 F.Supp.2d at 493 ("Maine … is the place where defendants representations caused plaintiff's doctor to recommend Children's Motrin [and] the place where its representations caused plaintiff to follow her doctor's recommendation"); *Knipe*, 583 F.Supp.2d at 616 ("Any purported representations or warnings to Dr. Durham, Plaintiffs, and Jake by Defendant regarding Paxil were received in New Jersey").  The representations in the states of injury were deemed to be important contacts occurring in those states.

This case does not involve representations of a similar magnitude by Graco (or anyone else) in the state of injury nor are Plaintiffs pursuing any claim related to the warnings included with the TurboBooster.  The absence of such relevant representations here distinguishes this case from the drug cases in which Pennsylvania courts applied the punitive damages law of the states in which the injury occurred.  Indeed, the federal court in *Bearden*, one of the prescription drug cases highlighted by Graco, specifically distinguished *Kelly* (which, as described above, involved a design-defect claim that mirrors Plaintiffs' claim here) on the

20

ground that *Kelly* did not involve similarly significant representations in the state of injury:

> [I]n *Kelly* the plaintiff claimed defective design and manufacturing, and we agree with defendants here that this action's focus on warnings claims requires us to consider a factor that the Kelly court did not have to, namely whether the decedent or his doctor received or acted upon any warnings in his home state.

*Bearden*, 482 F.Supp.2d at 621, n.6. *Bearden* thus underscores that the drug cases cited by Graco are inapposite in cases such as this one which focus largely on design defects and in which Plaintiffs are not making any claim related to defective warnings.

Graco also contends that Michigan law should apply because the commercial transaction at the root of this case – the Jermanos' purchase of a Graco product – occurred in Michigan. The Court disagrees for two reasons. First, while Michigan's ban on punitive damages may be intended to encourage non-resident companies like Graco to sell products here, the *primary* purpose of the ban is to protect "domiciliary corporations" with a significant economic presence and impact here. *In re Air Disaster*, 750 F.Supp. at 806-07. That interest would not be undermined if Graco, with no demonstrated presence in this state, faced a claim for punitive damages in this action. Second, there is no indication that Graco would stop selling its products here without the protection of Michigan's ban on punitive damages. On the contrary, Graco is a large producer of child safety

21

products, and it appears to sell those products in a number of states that allow punitive damages awards – including in Pennsylvania.[3]  Given that Graco sells its products in Pennsylvania – despite facing the risk of a punitive damages award under Pennsylvania law – there is little reason to believe that Graco would scale back its sales in Michigan if this Court applied Pennsylvania's punitive damages rule in this action.  Thus, on the facts of this particular case, Michigan does not have a strong economic interest in having the Court apply its punitive damages ban.

For all of these reasons, the Court concludes that Plaintiffs' claim for punitive damages is governed by the law of Pennsylvania.

## C. Pennsylvania Law Governs Whether Damages Must be Apportioned According to Percentage of Fault and/or Capped at a Certain Amount

The next damages issue the Court must address is whether Michigan law or Pennsylvania law governs whether damages must be apportioned according to percentages of fault and/or capped at a certain amount.  The Court concludes that these issues are governed by Pennsylvania law.

---

[3] Graco's website lists multiple national retailers (including Walmart, Toys "R" Us, and Target) that sell its products. (*See http://www.gracobaby.com/wheretobuy/ pages/default.aspx.*)   In addition, the website also lists a number of "specialty" relators within Pennsylvania where customers can buy its products.   (*See http:/ /www.gracobaby.com/wheretobuy/pages/independentretailers.aspx?zip=19019.*)

1.    **A True Conflict Exists Between Michigan and Pennsylvania Law Concerning Apportionment of Damages and Damages Caps**

Michigan and Pennsylvania law diverge significantly on the issues of whether damages must be apportioned according to percentages of fault and/or capped at a set amount.  Michigan law requires the apportionment of damages.  A Michigan statute provides that "the liability of each defendant for damages is several only and is not joint," MCL § 600.2956, and a second Michigan statute requires "the trier of fact [to] consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action."  MCL § 600.2957(1).   A third Michigan statute sets caps on noneconomic damages in product-liability actions like the one here: "[i]n an action for product liability, the total amount of damages for noneconomic loss shall not exceed $280,000.00, unless the defect in the product caused either the person's death or permanent loss of a vital bodily function, in which case the total amount of damages for noneconomic loss shall not exceed $500,000.00." MCL § 600.2946a.

Pennsylvania law, in contrast, has long recognized joint and several liability and does not require an apportionment of damages according to percentage of fault.  *See, e.g., Menarde v. Philadelphia Transp. Co.*, 103 A.2d 681, 685 (Pa. 1954) ("If defendant's negligence was a substantial factor in producing the result, in contributing to the injury, defendant is liable for the full amount of damages sustained, without any apportionment or diminution for the other cause or

23

causes"); *see also Baker v. ACandS*, 755 A.2d  664, 669 (Pa. 2000) ("In Pennsylvania, joint tortfeasors, including those in strict liability actions, are jointly and severally liable. Thus, the plaintiff may recover the entire damages award from only one of the joint tortfeasors.") (internal citation omitted).   Likewise, Pennsylvania law does not contain a cap on available noneconomic damages. *See Menarde, supra*.   On the contrary, Pennsylvania has adopted a "liberal damage policy." *Blakesley v. Wolford*, 789 F.2d 236, 240 (3d Cir. 1986).   These are true conflicts under Pennsylvania's choice-of-law rules because each state has an interest in applying its damages rules that would be impaired by application of the other state's rules.

Like Michigan's ban on punitive damages, Michigan's rules capping non-economic damages and requiring an allocation of fault are intended, in part, to "protect[] those who place products into the stream of commerce from large damage awards in jury trials." *Kenkel v. The Stanley Works*, 665 N.W.2d 490, 500 (Mich. App. 2003) (describing intent of Michigan tort reform legislation).   This interest could be impaired, to some extent, by applying Pennsylvania's rules allowing joint and several liability and permitting an award of uncapped non-economic damages.   Indeed, exposing producers to large damage awards here could potentially dissuade them from entering the Michigan market.

24

Pennsylvania, in contrast, allows joint and several liability, in part, in order to "deter[] tortious conduct by its residents." *Farrell v. Davis Ent., Inc.*, 1996 WL 21128, at *3 (E.D. Pa. Jan. 19, 1996). Such liability is generally understood to "act as a deterrent by making a defendant liable for all of the consequences of its negligence, even if the defendant's negligence was not the only cause of the injury." *In the Matter of Colorado Springs Air Crash*, 867 F.Supp. 630, 634 (N.D. Ill. 1994) (citing Prosser, Law of Torts, Ch. 8, sec. 47, pp. 297-98 (1971)). Pennsylvania's refusal to cap damage awards likewise serves to deter tortious conduct. By allowing a jury to compensate an injured plaintiff for all of his injuries – without a pre-set cap for any category of damages – Pennsylvania prevents manufacturers from externalizing their true costs and incentivizes them to be safer. *See, e.g., Farrell*, 1996 WL 21128, at *3. Pennsylvania's interests in deterrence would be undermined if the Court applied Michigan's allocation of fault and damage cap rules.

For these reasons, a true conflict exists between Michigan and Pennsylvania law on the issues of whether fault should be allocated among potentially responsible parties and whether damages should be capped in any way.

## 2. Pennsylvania Law Applies to the Apportionment and Availability of Uncapped Damages

Weighing Michigan's and Pennsylvania's respective interests in having their allocation of fault and damages caps rules applied in this action is much like

weighing their respective interests in having their punitive damages rules applied here. *See In Re Colorado Springs Air Crash*, 867 F.Supp. at 635 (choosing between states' competing allocation of fault rules is "analogous" to choosing between competing punitive damages rules "because, like punitive damages, joint and several liability serves as a deterrent to corporate defendants"). And for many of the same reasons that Pennsylvania's rule allowing punitive damages applies here, its rules allowing joint and several liability and uncapped damages awards also apply in this action.

As described in detail above, Pennsylvania has a strong interest in deterring tortious conduct – such as that allegedly committed by Graco – within its borders. Just as that interest would be materially furthered through application of its punitive damages rule, it would also be substantially advanced by applying its deterrence-producing rules allowing joint and several liability and permitting a jury to award uncapped damages. Indeed, Pennsylvania product designers who know that they may face joint and several liability for uncapped damages awards no matter where their product injures a consumer will be more likely to design safer products.

Similarly, for the same reason that Michigan has a smaller interest in applying its punitive damages bar here, it lacks a strong interest in allocating fault and capping a damages award. Once again, Graco's own conduct makes clear that

26

Graco is willing to sell its products in states, like Pennsylvania, that do not require juries to allocate fault and that permit uncapped damages awards. Thus, Michigan's interest in securing and obtaining commercial activity by Graco within its borders does not depend on the application of Michigan's fault allocation and damages cap rules.

In sum, Pennsylvania's contacts with the parties and the claims asserted by Plaintiffs are more significant than Michigan's, and Pennsylvania has a stronger interest than Michigan in having the Court apply its damages rules.[4] Accordingly, the Court will apply Pennsylvania's rules allowing joint and several liability and uncapped damages awards.[5]

---

[4] Graco has not cited any case law that would compel the Court to apply Michigan law. The cases on which Graco relies for the proposition that Michigan law applies because the accident occurred here and because the Jermanos purchased the TurboBooster here are distinguishable. *See, e.g., Brown v. Kia Motors Corp.*, 2009 WL 866846 (W.D. Pa. 2009) (car accident occurs in Virginia; court applies Virginia law; but no evidence that any design work occurred in Pennsylvania); *Laconis, supra* (accident occurs in Pennsylvania; court applies Pennsylvania law; but all tortious conduct occurred in Pennsylvania); *LeJuene, supra* (accident occurs in Delaware; court applies Delaware law; but most of negligent conduct occurred in Delaware); *Harsh v. Petroll*, 840 A.2d 404 (Pa. Comm. 2004) (accident occurs in Pennsylvania; court applies Pennsylvania law; but no discussion of state in which product was designed and no request to apply law of state in which product was designed).

[5] The Court expects that its analysis above may inform its ruling as whether strict liability under Pennsylvania law applies to Plaintiffs' design-defect claim. But because the Court may benefit from additional briefing on this issue, the Court is not ruling on whether Pennsylvania's law of strict liability applies at this time.

27

**D.    The Court Will Not Permit Graco to File the Notice**

Given the Court's ruling that Pennsylvania's damages law applies, there will be no allocation of fault to non-parties. There is thus no role for Graco's proposed Notice in this action. The Court will therefore deny Graco's Non-Party Fault Motion.

Moreover, even if the Court had concluded that Michigan damages law applies, the Court still would have denied Graco's request to file the Notice. Graco did not satisfy the late filing requirements of the MCR 2.112(K)(3), the Michigan Court Rule it invoked in its Non-Party Fault Motion.[6]

_____

[6] Even if the Court were to apply Michigan damages law, there would still be a serious question as to whether MCR 2.112(K) applies in this diversity action. "Under the *Erie* doctrine, in diversity cases [the Court must] apply the substantive law of the forum state and federal procedural law." *Hoven v. Walgreen Co.*, 751 F.3d 778, 783 (6th Cir. 2014) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 (1938)). There is Michigan authority suggesting that MCR 2.112(K) is procedural. *See, e.g., Blint v. Doe*, 732 N.W.2d 156,157 ("MCR 2.112(K) is a rule of procedure and was promulgated in response to the adoption of MCL 600.2957 and MCL 600.6304"). In contrast, there appears to be a reasonably strong argument that the Michigan statute requiring allocation of fault, MCL § 600.2957, is a substantive rule that must be applied in every diversity action in which it is relevant. There is thus reason to explore in detail whether MCR 2.112(K), which imposes a procedural hurdle that must be cleared in state court before a defendant in such court may invoke the substantive protection of the statute, applies in diversity actions. This Court has admittedly applied MCR 2.112(K) in a diversity action; it did so without conducting a sufficiently detailed analysis of whether it properly applies. *See Smith v. Nofolk Southern Co.*, 14-cv-10426, 2014 WL 2615278 (E.D. Mich. June 12, 2014). Applying the Michigan Court Rule without sufficient analysis was an error. Here, however, both parties insist that the rule is procedural and that it *does* apply in this diversity action. (*See Graco* Br., ECF #33 at 11-13, Pg. ID 319-321; Pls.' Br., ECF #35 at 30-35, Pg. ID 443-448.) Indeed,

When determining whether a party should be allowed to file an untimely notice of non-party at fault under MCR 2.112(K)(3), a court must consider "(1) whether the facts on which the late notice was based could have been known to defense counsel earlier, through the exercise of reasonable diligence, and (2) if not, whether the late filing would result in unfair prejudice to plaintiff." *Snyder v. Advantage Health Physicians*, 760 N.W.2d 834, 839 (Mich. Ct. App. Nov. 18, 2008). If a party cannot show reasonable diligence, "then the issue whether unfair prejudice would result to plaintiffs, from allowing the late filing of the nonparty fault notice, is moot." *Id.* at 841.

Here, as the Court explained at the initial hearing (*see* October 23, 2014, Hearing Transcript, ECF #32 at 26-27, Pg. ID 298), Graco has failed to act with "reasonable diligence." The Police Report, drafted the day of the accident and made available to Graco well over one year ago, identified Thibodeau as the driver that struck the Jermanos' vehicle, and it stated that he had crossed over the center line just before the accident. (*See* the Police Report, ECF #33-3.) Crossing the center line is a violation of Michigan law. *See* MCL § 257.634. And such a

---

Graco, the party that has the greatest interest in avoiding application of the rule, expressly invoked it in the Non-Party Fault Motion. (When pressed by the Court at the second hearing, Graco suggested for the first time – in contrast to the position it took in its supplemental brief (*see* ECF #33 at 11-13, Pg. ID 319-321) – that MCR 2.112(K) could be procedural and thus inapplicable, but Graco has never offered any in-depth analysis to support that position.) It may be appropriate in a future action for the Court to consider whether MCR 2.112(K) applies in a diversity action.

violation creates a *prima facie* case of negligence against Thibodeau.  *See, e.g.,* *Young v. Flood*, 452 N.W.2d 869, 870 (Mich. Ct. App. 1990).  Thus, the facts in the Police Report, standing alone, were sufficient put Graco on notice that it had a good faith basis to identify Thibodeau as a non-party at fault; Graco plainly should have filed the Notice naming Thibodeau shortly after receiving the Police Report. Indeed, given that Graco had *actual* knowledge of facts sufficient to support the filing of the Notice well over one year ago, Graco cannot possibly establish that "the relevant facts could [not] have been known to defense counsel earlier, through the exercise of reasonable diligence." *Snyder*, 760 N.W.2d at 869.  Because Graco did not act with "reasonable diligence" in seeking to name Thibodeau as a non-party at fault, the Court would deny Graco's Non-Party Fault Motion even if Michigan law applied.

## CONCLUSION

For all of the reasons stated above, the Non-Party Fault Motion (ECF #27) is

**DENIED.  IT IS FURTHER ORDERED THAT** Pennsylvania law shall apply

with respect to the damages issues addressed herein.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 8, 2015

30

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 8, 2015, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113