UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH JERMANO, et al.,

        Plaintiffs,

v.

GRACO CHILDREN'S PRODUCTS
INCORPORATED

        Defendant.

Case No. 13-cv-10610

Hon. Matthew F. Leitman

Magistrate Judge Mona K. Majzoub

**DEFENDANT GRACO
CHILDREN'S PRODUCTS, INC.'S
MOTION TO RECONSIDER THE
APRIL 8, 2015 ORDER (ECF #48)
OR, IN THE ALTERNATIVE,
TO CERTIFY UNDER
28 U.S.C. § 1292(b)**

---

DOUTHIT, FRETS, ROUSE, GENTILE &
RHODES, LLC
Raymond D. Gentile
5250 W. 116th Place
Suite 400
Leawood, KS 66211
913-387-1600 (Phone)
913-928-6739 (Fax)
dgentile@dfrglaw.com (E-mail)

THOMAS, GARVEY & GARVEY
Robert F. Garvey (P24897)
24825 Little Mack Avenue
St. Clair Shores, MI 48080
586-779-7810 (Phone)
586-779-4912 (Fax)
bobgarvey@me.com (E-mail)

*Attorneys for Plaintiffs*

SCHIFF HARDIN LLP
Joseph J. Krasovec
Heidi K. Oertle
233 South Wacker Drive, Suite 6600
Chicago, IL 60606
312-258-5500 (Phone)
312-258-5600 (Fax)
jkrasovec@schiffhardin.com (E-mail)
hoertle@schiffhardin.com (E-mail)

SCHIFF HARDIN LLP
Gregory L. Curtner (P12414)
Jessica A. Sprovtsoff (P70218)
350 S. Main Street, Suite 210
Ann Arbor, MI 48104
734-222-1518 (Phone)
734-222-1501 (Fax)
gcurtner@schiffhardin.com (E-mail)
jsprovtsoff@schiffhardin.com (E-mail)

*Attorneys for Defendant*

**DEFENDANT GRACO CHILDREN'S PRODUCTS, INC.'S**
**MOTION TO RECONSIDER THE APRIL 8, 2015 ORDER (ECF #48)**
**OR, IN THE ALTERNATIVE, TO CERTIFY UNDER 28 U.S.C. § 1292(b)**

Defendant Graco Children's Products, Inc. respectfully requests the Court to reconsider its April 8, 2015 Order concerning choice of law with respect to determining Plaintiffs' damages (ECF #48). In the alternative, Graco requests the Court to certify under 28 U.S.C. § 1292(b) the question of which state's law applies to Plaintiffs' claims in this matter. In support of this motion, Graco submits the accompanying brief.

**STATEMENT OF CONFERENCE**

Graco's counsel contacted Plaintiffs' counsel per E.D. Mich. L.R. 7.1(a), explained the nature of this motion and its legal bases, and requested concurrence in the relief sought. Plaintiffs' counsel did not concur in the relief sought.

Dated: April 22, 2015                  Respectfully submitted,

By: /s/ Joseph J. Krasovec _____

SCHIFF HARDIN LLP                      SCHIFF HARDIN LLP
Gregory L. Curtner (P12414)            Joseph J. Krasovec (6201456)
Jessica A. Sprovtsoff (P70218)         Heidi Oertle (6275632)
350 S. Main Street                     233 South Wacker Drive
Suite 210                              Suite 6600
Ann Arbor, MI 48104                    Chicago, IL 60606
734-222-1518 (Phone)                   312-258-5500 (Phone)
734-222-1501 (Fax)                     312-258-5600 (Fax)
gcurtner@schiffhardin.com (E-mail)     jkrasovec@schiffhardin.com (E-mail)
jsprovtsoff@schiffhardin.com (E-mail)  hoertle@schiffhardin.com (E-mail)

*Attorneys for Defendant Graco Children's Products, Inc.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH JERMANO, et al.,

        Plaintiffs,

v.

GRACO CHILDREN'S PRODUCTS
INCORPORATED

        Defendant.

Case No. 13-cv-10610

Hon. Matthew F. Leitman

Magistrate Judge Mona K. Majzoub

**BRIEF IN SUPPORT OF
DEFENDANT GRACO
CHILDREN'S PRODUCTS, INC.'S
MOTION TO RECONSIDER THE
APRIL 8, 2015 ORDER (ECF #48)
OR, IN THE ALTERNATIVE,
TO CERTIFY UNDER
28 U.S.C. § 1292(b)**

---

DOUTHIT, FRETS, ROUSE, GENTILE &
RHODES, LLC
Raymond D. Gentile
5250 W. 116th Place
Suite 400
Leawood, KS 66211
913-387-1600 (Phone)
913-928-6739 (Fax)
dgentile@dfrglaw.com (E-mail)

THOMAS, GARVEY & GARVEY
Robert F. Garvey (P24897)
24825 Little Mack Avenue
St. Clair Shores, MI 48080
586-779-7810 (Phone)
586-779-4912 (Fax)
bobgarvey@me.com (E-mail)

SCHIFF HARDIN LLP
Joseph J. Krasovec
Heidi K. Oertle
233 South Wacker Drive, Suite 6600
Chicago, IL 60606
312-258-5500 (Phone)
312-258-5600 (Fax)
jkrasovec@schiffhardin.com (E-mail)
hoertle@schiffhardin.com (E-mail)

SCHIFF HARDIN LLP
Gregory L. Curtner (P12414)
Jessica A. Sprovtsoff (P70218)
350 S. Main Street, Suite 210
Ann Arbor, MI 48104
734-222-1518 (Phone)
734-222-1501 (Fax)
gcurtner@schiffhardin.com (E-mail)
jsprovtsoff@schiffhardin.com (E-mail)

*Attorneys for Plaintiffs*

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

STATEMENT OF CONFERENCE ........................................................................2

ISSUES PRESENTED.............................................................................................. iii

TABLE OF AUTHORITIES ....................................................................................iv

CONTROLLING AND MOST APPROPRIATE AUTHORITIES...................... vii

    A.    Reconsideration of Choice of Law.................................................. vii

    B.    Certification Under 28 U.S.C. 1292(b) ........................................... vii

INTRODUCTION ......................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ...............................................3

    A.    Plaintiffs' Claims...............................................................................3

    B.    Plaintiffs' Positions on Choice of Law .............................................4

    C.    Plaintiffs' Manufacturing Defect Claim...........................................6

            1.    Dr. Dunn's Opinions Regarding Manufacturing Defect...........6

            2.    Mr. Whitman's Opinions Regarding Manufacturing Defect ........................................................................7

            3.    Manufacture of the TurboBooster® Shoulder Belt Guide in China ...........................................................9

    D.    Plaintiffs' Use of the TurboBooster® ..................................................9

LEGAL STANDARDS ...........................................................................................12

    A.    Standard for Reconsideration ..........................................................12

    B.    Standard for § 1292(b) Certification ...............................................13

ARGUMENT ...........................................................................................................13

I.    The Court Should Reconsider its Choice-of-Law Ruling ...........................13

    A.    Michigan Law Presumptively Controls Because the Accident's Location Was Not Fortuitous ...........................................13

    B.    Michigan Has a Significant Interest in its Punitive Damages Law .................................................................................16

# TABLE OF CONTENTS
(continued)

**Page**

C.    The Conduct at Issue Occurred in Multiple Locations, Giving No Other Jurisdiction a More Significant Interest Than Michigan.............................................................................18

D.    The Court May Wait to Resolve All Choice-of-Laws at Once..........22

II.    Alternatively, the Court Should Certify the Choice-of-Law Issue for Interlocutory Appeal Under 28 U.S.C. § 1292(b) .......................................22

CONCLUSION ..................................................................................................25

INDEX OF EXHIBITS ..............................................................................................

## ISSUES PRESENTED

1.      Should this Court reconsider its order of April 8, 2015 (ECF #48), in which—based on Plaintiffs' singular and inaccurate focus on their design-defect theory—the Court held that Pennsylvania law governs the award of any damages in this case?

**Defendant's Answer:  Yes.**

2.      Should the Court, upon reconsideration, instead hold that Michigan law governs the award of any damages in this case?

**Defendant's Answer:  Yes.**

3.      Alternatively, should the Court certify for immediate appeal under 28 U.S.C. § 1292(b) the important and threshold choice-of-law question that will govern the award of damages in this case?

**Defendant's Answer:  Yes.**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Black v. Toys R US-Delaware, Inc.*,
    No. 4:08-CV-3315, 2010 WL 4702344 (S.D. Tex. Nov. 10, 2010) ............ 20, 22

*Blakesley v. Wolford*,
    789 F.2d 236 (3d Cir. 1986) ............................................................... 14

*Boatland, Inc. v. Brunswick Corp.*,
    558 F.2d 818 (6th Cir. 1977) ............................................................. 24

*Brendle v. Gen. Tire & Rubber Co.*,
    408 F.2d 116 (4th Cir. 1969) ............................................................. 24

*Calhoun v. Yamaha Motor Corp.*,
    216 F.3d 338 (3d Cir. 2000) .................................... 14, 16, 17, 18, 21, 25

*Campbell v. Farber*,
    975 F. Supp. 2d 485 (M.D. Pa. 2013) .............................................. 5, 21

*Chrysler Realty Co., LLC v. Design Forum Architects, Inc.*,
    544 F. Supp. 2d 609 (E.D. Mich. 2008) ............................................. 12

*Collins v. Promark Prods., Inc.*,
    956 F.2d 383 (2d Cir. 1992) ............................................................... 24

*Dodson v. Ford Motor Co.*,
    2006 WL 2642199 (R.I. Super. Ct. 2006) .......................................... 20

*Duchesneau v. Cornell Univ.*,
    No. CIV.A. 08-4856, 2012 WL 3104428 (E.D. Pa. July 31, 2012) .......... 20

*Edwardsville Nat'l Bank & Trust Co. v. Marion Labs., Inc.*,
    808 F.2d 648 (7th Cir. 1987) ............................................................. 24

*Eggleton v. Plasser & Theurer Exp. Von Bahnbaumaschinen Gesellschaft, MBH*,
    495 F.3d 582 (8th Cir. 2007) ............................................................. 24

*Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc.*,
    468 F.3d 1322 (11th Cir. 2006) ......................................................... 24

*Flickinger v. Toys R Us, Inc.*,
    No. 3:10-CV-305, 2011 WL 2160493 (M.D. Pa. May 31, 2011)
    *aff'd*, 492 F. App'x 217 (3d Cir. 2012) .............................................. 15

*Griffith v. United Air Lines, Inc.*,
    416 203 A.2d 796 (Pa. 1964) ............................................................. 14

*Hardy v. Johns-Manville Sales Corp.*,
    681 F.2d 334 (5th Cir. 1982) ............................................................. 24

*In re Air Disaster at Detroit Metro. Airport*,
    750 F. Supp. 793 (E.D. Mich. 1989) .................................................. 15

- iv-

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*In re Colorado Springs Air Crash*,
  867 F. Supp. 630 (N.D. Ill. 1994) ....................................................15
*Int'l Paper Co. v. Ouellette*,
  479 U.S. 481 (1987) ......................................................................24
*Jones v. Cooper Tire & Rubber Co.*,
  No. 02-CV-8364, 2004 WL 503588 (E.D. Pa. Mar. 9, 2004) ...........15
*Kelley v. Nat'l Pipe & Plastics, Inc.*,
  No. CIV.A. 3:10-153, 2012 WL 1145021 (M.D. Pa. Apr. 5, 2012)....15
*Kelly v. Ford Motor Co.*,
  933 F. Supp. 465 (E.D. Pa. 1996) .......................................... 5, 20, 21
*Lacey v. Cessna Aircraft Co.*,
  932 F.2d 170 (3d Cir. 1991)..............................................................15
*LeJeune v. Bliss-Salem, Inc.*,
  85 F.3d 1069 (3d Cir. 1996)....................................................... 14, 16
*McIlvaine v. Ford Motor Co.*,
  No. 2:12-CV-111-DBH, 2013 WL 588934 (D. Me. Feb. 13, 2013) ..................20
*Price v. Litton Sys., Inc.*,
  784 F.2d 600 (5th Cir. 1986) ............................................................20
*Royal Ins. Co. v. Orient Overseas Container Line Ltd.*,
  525 F.3d 409 (6th Cir. 2008) ............................................................24
*Shields v. Consol. Rail Corp.*,
  810 F.2d 397 (3d Cir. 1987)..............................................................14
*Shuder v. McDonald's Corp.*,
  859 F.2d 266 (3d Cir. 1988)..............................................................14
*Simon v. United States,*
  341 F.3d 193 (3d Cir. 2003)..............................................................24
*Thornton v. Cessna Aircraft Co.,*
  886 F.2d 85 (4th Cir. 1989) ..............................................................24
*Townsend v. Sears, Roebuck & Co.*,
  879 N.E.2d 893 (Ill. 2007) ......................................................... 20, 21
*Wahl v. Gen. Elec. Co.*,
  983 F. Supp. 2d 937 (M.D. Tenn. 2013)............................................20
*Yamaha Motor Corp. v. Calhoun*,
  516 U.S. 199 (1996)..........................................................................25

**Statutes**

28 U.S.C. § 1292(b) ................................................. 1, 3, 13, 23, 24, 25
28 U.S.C. § 1404(a) .............................................................................3

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

28 U.S.C. § 1441 ...................................................................................3

**Other Authorities**

16 Wright Miller & Cooper, *Federal Practice & Procedure*
   (3d ed. 2012) ........................................................... 13, 23, 24
Restatement (Second) of Conflict of Laws................................... 18, 19, 20
S.C. Symeonides, *Choice of Law for Products Liability:*
   *The 1990s and Beyond*, 78 Tul. L. Rev. 1247 (2004).........................20

**Rules**

E.D. Mich. L.R. 7.1(h)(3) ......................................................................12
MCR 2.112(K)(3)(c) ...............................................................................1

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

**A.    Reconsideration of Choice of Law**

*Blakesley v. Wolford*, 789 F.2d 236 (3d Cir. 1986)

*Calhoun v. Yamaha Motor Corp*., 216 F.3d 338 (3d Cir. 2000)

*Duchesneau v. Cornell Univ*., 2012 WL 3104428 (E.D. Pa. July 31, 2012)

*Flickinger v. Toys R Us, Inc.*, 2011 WL 2160493 (M.D. Pa. May 31, 2011), *aff'd*, 492 F. App'x 217 (3d Cir. 2012)

*Jones v. Cooper Tire & Rubber Co.*, 2004 WL 503588 (E.D. Pa. Mar. 9, 2004)

*Kelley v. Nat'l Pipe & Plastics, Inc.*, 2012 WL 1145021 (M.D. Pa. Apr. 5, 2012)

*LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069 (3d Cir. 1996)

*Shields v. Consol. Rail Corp.*, 810 F.2d 397 (3d Cir. 1987)

*Shuder v. McDonald's Corp.*, 859 F.2d 266 (3d Cir. 1988)

*Townsend v. Sears, Roebuck & Co*., 879 N.E.2d 893 (Ill. 2007)

Restatement (Second) of Conflict of Laws, § 145

**B.    Certification Under 28 U.S.C. 1292(b)**

*Boatland, Inc. v. Brunswick Corp*., 558 F.2d 818 (6th Cir. 1977)

*Calhoun v. Yamaha Motor Corp*., 216 F.3d 338 (3d Cir. 2000)

*Int'l Paper Co. v. Ouellette*, 479 U.S. 481 (1987)

*Royal Ins. Co. v. Orient Overseas Container Line Ltd*., 525 F.3d 409 (6th Cir. 2008)

*Simon v. United States,* 341 F.3d 193 (3d Cir. 2003)

*Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996)

## **INTRODUCTION**

The Court should reconsider its April 8, 2015 order concerning choice of law ("Order") (ECF #48), because it was based on misapprehensions of fact (e.g., this is not just "a design defect case") and law (e.g., the law of a non-fortuitous place of injury presumptively controls, and nothing in this case overrides that presumption). Alternatively, the Court should certify the choice-of-law issue under 28 U.S.C. § 1292(b), because the issue is at least substantially disputed and critical.

After Graco moved for leave to file a Notice of Non-Party Fault under MCR 2.112(K)(3)(c), the Court ordered supplemental briefs on whether Plaintiffs' claims are governed by Michigan law, Pennsylvania law, or the law of some other jurisdiction. Graco answered that Michigan law governs, while Plaintiffs took three positions: (1) that Pennsylvania law governs damages recoverable under their "design defect" theory because the TurboBooster® was designed predominantly in Pennsylvania; (2) that their "manufacturing defect" theory does not play a significant role in their claims; and (3) that their claims based on "failure to warn" are no longer before the Court. But since the briefing and hearing on this motion were completed, Plaintiffs have placed new emphasis on their "manufacturing defect" theory, and further expert work and opinions have been disclosed on whether the TurboBooster® was being used properly and in accordance with its instructions at the time of the accident.

- 1 -

The Court's conclusion (that it would apply Pennsylvania law regarding punitive and compensatory damages and joint and several liability) was based on Plaintiffs' prior and exclusive emphasis on their "design defect" theory and the place of design. That conclusion does not apply to the totality of Plaintiffs' theories of liability, including their new emphasis on a manufacturing defect. The standard for reconsideration is high, but Graco respectfully submits that reconsideration is proper because, by now embracing a manufacturing defect theory of liability, the Plaintiffs have changed the basis for the Court's analysis. The Court's decision focused on where the allegedly injurious conduct of Graco occurred, which is not the same for the design and the manufacture of the TurboBooster®. In addition, focusing on the TurboBooster®'s design having been formulated in Pennsylvania omits other jurisdictions' role in that design (including the design and fabrication in China of the allegedly-defective molds for manufacturing the TurboBooster®'s shoulder belt guide, and the decisions in Georgia to implement the allegedly-defective design of the shoulder belt guide at the time the subject TurboBooster® was actually made[1]), as well as other jurisdictions' interest in other issues besides

---

[1] The Jermanos purchased the subject TurboBooster® in 2010 in Michigan (*see* Deposition of Dory Jermano (Ex. A hereto) at 20:2-23)), after Graco moved its headquarters to Georgia in 2009. (*see* Deposition of M. Morgenstern ("Morgenstern Dep.") (Ex. B hereto) at 9:14–11:3). At that point, Graco's senior management and design engineers were located in Georgia. (*Id.* at 14:8-15; 73:9-18.) Thus, any decisions about which shoulder belt guide design to use or not use

design, including whether Plaintiffs properly followed the instructions for use of the TurboBooster® in Michigan.

At the least, there is substantial ground for difference of opinion about the correct choice of law, and resolution of this question by interlocutory appeal would materially advance the ultimate termination of this litigation. If the case is tried under Pennsylvania law and that choice of law is later determined to be incorrect, the parties and the Court will face the prospect of retrial, delaying the ultimate termination of this litigation. Accordingly, certification under 28 U.S.C. § 1292(b) is appropriate.

## **FACTUAL AND PROCEDURAL BACKGROUND**

### A.    **Plaintiffs' Claims**

Plaintiffs filed a four-count complaint against Graco, seeking compensatory and punitive damages. *See* Compl. (ECF #1-3).[2] Plaintiffs' complaint pled (1) a strict liability claim premised on the design, testing, manufacture, labeling, and marketing of the TurboBooster®; (2) a negligence claim premised on the design, testing, manufacture, labeling, and marketing conduct of Graco; (3) a negligent infliction of emotional distress claim by Dory Ann Jermano; and (4) a negligent

_____

on M.J.'s TurboBooster® was made when Graco's senior engineers and management were working in Georgia.

[2] The complaint was filed in Pennsylvania state court, removed to federal court under 28 U.S.C. § 1441, and transferred to this Court under 28 U.S.C. § 1404(a) in the interest of justice.

infliction of emotional distress by Dorothy Berge. *Id.* at 1-13.

Throughout the proceedings, Plaintiffs have actively pursued each of their four claims and underlying allegations against Graco, including by conducting wide-ranging fact and expert discovery on all of their allegations. In particular, Plaintiffs have sought discovery directed specifically at their manufacturing and warnings defect theories. *See, e.g.,* Graco's Response to Plaintiffs' Third Set of Interrogatories (Ex. C hereto) (seeking information regarding the origin of the subject belt guide and the mold that produced it); Deposition of M. LaPlante (Ex. D hereto) at 16:2–26:7.

None of Plaintiffs' four counts has been formally dismissed, nor have Plaintiffs withdrawn any theory of liability against Graco, except for their failure-to-warn theory in conjunction with the Court's consideration of this issue.[3] Yet they have taken varied positions with the Court and Graco about which claims they truly seek to pursue.

**B.    Plaintiffs' Positions on Choice of Law**

During a hearing on October 23, 2014, the Court asked the parties to brief

---

[3] During the January 29, 2015 hearing addressing the conflict-of-laws issue, Plaintiffs unexpectedly withdrew their failure-to-warn claim despite their complaint alleging that Graco was strictly liable and negligent for failing to warn (Compl. ¶¶13-15, 20, 24, 27, 30-34) and, as of October 17, 2014, proffering an expert witness to opine that Graco failed to issue adequate warnings with the TurboBooster®. *See* Whitman 10/17/14 Rpt. (Ex. E hereto) at 40, ¶ J.

several issues, formalized by an order entered the next day [ECF #31], including:

> Are Plaintiffs' claims governed by Michigan law,
> Pennsylvania law, or the law of some other state?

Plaintiffs' brief [ECF #35] emphasized their strict liability design defect claim, while preserving all of their theories of defect. Plaintiffs stated that "the TurboBooster was, *among other things*, 'defective' in its 'design' thereby making it 'unreasonably dangerous,'" and focused "their choice of law analysis herein on Count I as it is this Count, along with Count II alleging negligence, for which such an analysis is required." Pls.' Br. 8 & n.2 (emphasis added).

During the hearing on this issue on January 29, 2015, Plaintiffs emphasized that the basis for their claim against Graco was their allegation that TurboBooster® shoulder belt guides are *defectively designed*. Plaintiffs downplayed their contention that the shoulder belt guide of the particular TurboBooster® that M.J. was using at the time of the accident was *defectively manufactured*.

The Court issued its ruling on April 8, 2015 [ECF #48]. Accepting Plaintiffs' positions, the Court decided the choice-of-law issues on the basis that this case is a "design-defect action."[4] The Court's Order did not, however, reach

---

[4] *See* Order at 19 ("*Kelly* [*v. Ford Motor Co*., 933 F. Supp. 465 (E.D. Pa. 1996)] and *Campbell* [*v. Farber*, 975 F. Supp. 2d 485 (M.D. Pa. 2013)] make clear that under Pennsylvania law, in a design-defect action like this one, the state in which an allegedly-defective product is designed has a more significant relationship to the parties and the disputed issues than the state in which the injury occurred."); *id.* at 16 ("two design defect cases . . . are mirror-images of this action"); *id.* at 18

- 5 -

the complex choice-of-law issues that surround the entirety of Plaintiffs' theories

of liability, or their negligent infliction of emotional distress claims.

## C.     Plaintiffs' Manufacturing Defect Claim

After the briefing and hearing on the choice-of-law issue, Plaintiffs have

expended substantial efforts to advance their manufacturing defect theory.

Plaintiffs' manufacturing defect claim rests on the theory that a plastic component

(an "L-shaped hook") of the shoulder belt guide (the component within the

TurboBooster's headrest that pre-positions the vehicle's shoulder belt over the

child's shoulder at the onset of a crash) was made with less thickness than Graco

specified for that part. The deviation from the specified thickness allegedly

weakened the hook, allowing it to bend under the collision's force and let the

shoulder belt slip out of the guide. Plaintiffs have proffered two experts on this

theory of defect, Dr. Russell Dunn and Mr. Gary Whitman.

### 1.     Dr. Dunn's Opinions Regarding Manufacturing Defect

Dr. Dunn has a PhD in chemical engineering and is a professor in the

Department of Chemical and Biomolecular Engineering at Vanderbilt University.

In his first report for this matter, dated October 10, 2014, Dr. Dunn opined that the

L-shaped hook on the subject belt guide "[b]ent back during the subject accident

_____

("Plaintiffs here have asserted a design-defect claim"); *id.* at 20 ("a design-defect
claim . . . mirrors Plaintiffs' claim here"); *id.* at 26 (this case implicates
"Pennsylvania product designers"); *id.* at 27 n.5 ("Plaintiffs' design-defect claim").

and failed to hold the shoulder harness seat belt webbing." Dunn Rpt. (Ex. F hereto) at 10, § 5.2. In Dr. Dunn's opinion, based on measurements he took with calipers, the subject hook "[d]id not meet manufacturing specifications for thickness." *Id.* at 10, § 5.3. Then, at his deposition taken on January 9, 2015, Dr. Dunn produced a report from Jesse Garant & Associates, a lab that performs CT studies, describing the results of a CT scan of the subject shoulder belt guide performed after he issued his initial report. Dr. Dunn testified that, based on the Garant CT scan data, the L-shaped hook on the belt guide of the subject TurboBooster® is between six and eighteen one thousandths inch less thick than it was specified to be by Graco. Dunn Dep. (Ex. G hereto) at 106:13–109:19.

On March 17, 2015, Dr. Dunn authored a supplemental report focused solely on the manufacturing defect in the L-shaped hook. Dunn 3/17/15 Supp. Rpt. (Ex. H hereto). In this supplemental report, Dr. Dunn explained the Garant CT scan data in more detail, opining that the thickness of the L-shaped hook was as much as 27.2% below the thickness specified by Graco. *Id.* at 3, § 4.3. He then opined that "[f]ailure to meet the hook thickness specification contributed to the inability of the hook to retain the shoulder harness belt during the subject accident." *Id.* at 4, § 5.2.

### 2.    Mr. Whitman's Opinions Regarding Manufacturing Defect

Plaintiffs also plan to offer the opinions of Gary Whitman, a mechanical

engineer and their designated expert in child seat design and manufacture. Mr. Whitman's first report authored for this case stated the following opinion, similar to Dr. Dunn's:

> The shoulder belt on the subject TurboBooster did not fail solely because of its defective design. The manufacture of the guide was also defective. This manufacturing defect contributed to the release of the shoulder belt from the guide during the subject crash. Inspection of the shoulder belt guide on the subject Graco TurboBooster and Graco drawings indicates that its part number is P1850 Rev B. Measurements of the wall thickness of the belt retaining hook of the guide, compared to the thickness required by the Graco's drawing, which identifies no tolerance, indicates that the guide fails to comply. It is not as thick as required. The less thick the hook, the more it will be susceptible to deformation and failure, including bending. The retaining hook on [M.J.'s] seat was bent inboard during the crash. This failure of the part is the *principal* cause of her shoulder belt sliding past the hook and out of the shoulder belt guide.

Whitman 10/1/14 Rpt. (Ex. E hereto) at 31, § N (emphasis added).

Mr. Whitman then produced a Supplemental Report with Rebuttal Opinions at his deposition on February 19, 2015. Whitman 2/19/15 Supp. Rpt. (Ex. I hereto). This report's first section, entitled "Shoulder Belt Guide Hook," discussed the Garant CT scan of the subject belt guide hook and on that basis opined that "the back edge of the hook is .0088" (9.3%) below the minimum allowable thickness" specified by Graco. *Id.* at 1, ¶ 3. He further opined that this lack of thickness means "an 18% reduction in the bending strength of the hook," and that "[t]his significant reduction in strength substantially contributed to the failure of and the timing of the

- 8 -

failure of the shoulder belt guide hook in the subject crash." *Id*. at 2, ¶¶ 6-7.

On March 17, 2015 Mr. Whitman authored yet another supplemental report, which noted that a second CT scan done at the request of the defense experts confirmed his original opinion—that the L-shaped hook contains a manufacturing defect because it may be even less thick than his earlier measurements of that part. Whitman 3/17/15 Supp. Rpt. (Ex. J hereto) at 2.

### 3.     Manufacture of the TurboBooster® Shoulder Belt Guide in China

The TurboBooster® is, and has always been, manufactured in China. Morgenstern Dep. (Ex. B hereto) at 73:4-8. Like nearly all the component parts of the TurboBooster®, the subject shoulder belt guide was manufactured at Graco's direction in China by China Wonderland Nursery Goods, Ltd. *See* Ex. C at 3-4; Dep. of M. Langmaid (Ex. K hereto) at 17:2-4, 144:11-17. The shoulder belt guide is an injection-molded part produced from a steel mold. That mold is fabricated in China from Graco's specifications. Dep. of D. Brunick (Ex. L hereto) at 28:4–29:4. Plaintiffs' manufacturing defect theory is that this mold produced parts whose thickness was less than what Graco specified. Specifically, Mr. Whitman testified:

> I don't know if I would call that a manufacturing defect of the seat. It's a manufacturing defect of the mold which was produced long before the seat was produced.

Whitman Dep. vol. 2 (Ex. M hereto) at 14:25–15:3.

### D.     Plaintiffs' Use of the TurboBooster®

The shoulder belt guide is a component of the seat's headrest. The headrest

- 9 -

is adjustable up and down, and must be positioned at the correct height for the belt guide to properly route the vehicle's shoulder belt over the child's shoulder. If the headrest is incorrectly adjusted too low relative to the child's head and shoulder, the belt guide, if used, has a tendency to place the shoulder belt off the shoulder and down across the child's upper arm, crossing the child's upper torso lower than it should to effectively restrain the child's upper body in a crash.

The instruction manual that accompanied the Jermanos' TurboBooster® (Ex. N hereto) instructed the user to position the headrest with its bottom located at a height even with the child's shoulders, and also instructed that the headrest be adjusted to a position where the shoulder belt lies over the child's shoulder when placed in the belt guide. *Id*. at 28. The manual illustrated these instructions:



4. To ensure the correct head support height is obtained, the bottom of the headrest MUST be even with the top of child's shoulders as shown in ❹ and the shoulder belt must be positioned in the red zone as shown in ❺.

**CORRECT**

The lap belt portion **MUST** pass under the armrests and be positioned low on the hips.

When the TurboBooster® used by M.J. was recovered from the accident scene, the headrest was adjusted to its lowest position. There is no evidence that the headrest changed position in the collision. Both before and after the court's hearing on the choice-of-law issue, both sides' experts have performed multiple studies using surrogates chosen to approximate M.J.'s size at the time of the accident. The experts retained by Graco have opined that, because the headrest was in its lowest possible position, the vehicle's seat belt was improperly positioned on M.J.'s arm, not on her shoulder, at the time of the collision. *See, e.g.,* Report of Dr. William VanArsdell (Ex. O hereto), at 8-9. M.J.'s upper torso injuries are consistent with the shoulder belt being improperly positioned across her arm and lower chest, rather than up on her shoulder, where she sustained no injuries, as reflected in the extensive records of her treatment immediately after the accident. *See* Report of Dr. Catherine Corrigan (Ex. P hereto), at 16. Graco has asserted that this misuse of the TurboBooster® was a contributing cause of M.J.'s quadriplegia-producing neck injury.

Plaintiffs, of course, dispute that the shoulder belt was incorrectly positioned on M.J. at the onset of the crash. Plaintiffs' experts have authored several supplemental reports on this issue, the last of which was issued on April 9, 2015. *See* Report of Dr. Ronald J. Fijalkowski (Ex. Q hereto), at 1-5. While the Court and jury ultimately will hear evidence from both sides on this point, what is not in

dispute is the state in which this conduct happened: Michigan. After the Jermanos purchased their TurboBooster® in Michigan, they reviewed the manual to learn how to use it, including how to route the shoulder belt through the shoulder belt guide, in Michigan. Further, the manner in which they routed the shoulder belt through the belt guide (improperly or not) on the night of this tragic accident of course also occurred in Michigan. *See* Jermano Dep (Ex. A hereto) at 35:9-22; 36: 1-5; 36: 6-20.

## **LEGAL STANDARDS**

### A.    **Standard for Reconsideration**

Local Rule 7.1(h)(3) provides the legal standard for a motion to reconsider:

> [T]he court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. L.R. 7.1(h)(3). A "palpable defect" is "a defect that is obvious, clear, unmistakable, manifest, or plain." *Chrysler Realty Co., LLC v. Design Forum Architects, Inc.*, 544 F. Supp. 2d 609, 618 (E.D. Mich. 2008). Here, as discussed below, the Court decided the choice-of-law question based on the false premise that this is "a design-defect case" alone. Correcting this mistaken premise results in a different result in the choice-of-law analysis.

- 12 -

B.       Standard for § 1292(b) Certification

There is at least substantial ground for difference of opinion on the proper result of the choice-of-law analysis, which is an important and controlling question of law whose resolution will substantially affect the ultimate termination of the litigation. In such circumstances, the Court may enter an order permitting the parties to seek interlocutory appeal:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). Disputed choice-of-law questions are an appropriate subject for certification under § 1292(b). *See generally* 16 Wright Miller & Cooper, *Federal Practice & Procedure* § 3931, at 528 & n.43 (3d ed. 2012) ("choice of law" is the kind of issue "suitable for review" under § 1292(b)) (surveying law).

## ARGUMENT

I.   **The Court Should Reconsider its Choice-of-Law Ruling.**

A.       **Michigan Law Presumptively Controls Because the Accident's Location Was Not Fortuitous.**

When an injury arises from an accident whose location is non-fortuitous, under Pennsylvania choice-of-law rules the law of the place of injury (here, Michigan) presumptively controls. *See Calhoun v. Yamaha Motor Corp.,* 216 F.3d

- 13 -

338, 347 (3d Cir. 2000);[5] (*LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1072 (3d Cir. 1996) (affirming application of Delaware law to underlying liability when accident occurred in Delaware, plaintiff resided in Pennsylvania, and relevant conduct occurred in multiple states); *Shuder v. McDonald's Corp.*, 859 F.2d 266, 272 (3d Cir. 1988) (applying law of the place of the injury because "[t]he place of the accident was not fortuitous"); *Shields v. Consol. Rail Corp.*, 810 F.2d 397, 401 (3d Cir. 1987) (reversing trial court's choice of Pennsylvania law; applying Indiana law to contribution claim, when accident and plaintiff's residence were in Indiana, and defendants' headquarters were in Pennsylvania); *Blakesley v. Wolford*, 789 F.2d 236, 243 (3d Cir. 1986) (reversing trial court's choice of Pennsylvania law; applying Texas law to compensatory damages cap and informed consent, when plaintiff traveled to and was injured in Texas); *Flickinger v. Toys R Us, Inc.*, No.

---

[5] *Calhoun* involved a collision in which a Pennsylvania child was killed while using a jet ski in Puerto Rico. The starting point for the choice-of-law analysis was admiralty law because the accident took place on the water (*id.* at 345-46), but the Third Circuit quickly noted that the dispute "concerns entirely domestic interests" (*id.* at 346), analyzed the choice-of-law question by asking "which state had the most significant relationship to the incident and the dominant interest in having its law applied" (*id.*), and relied on decisions of "[c]ourts within this Circuit" in tort cases generally, not admiralty cases (*id.* at 347). Applying the "most significant relationship" test (which is the Pennsylvania choice-of-law rule, *see Griffith v. United Air Lines, Inc*., 416 203 A.2d 796 (Pa. 1964)), the Third Circuit concluded that the state of domicile has the strongest interest in application of its law on compensatory damages (216 F.3d at 347), and "the state in which the injury occurred has a dominant interest in the application of its law on punitive damages" (*id.* at 348 n.15).

- 14 -

3:10-CV-305, 2011 WL 2160493, at *3 (M.D. Pa. May 31, 2011) (applying New York law to liability and compensatory damages, when accident and conduct occurred in New York, though plaintiffs resided in Pennsylvania), *aff'd*, 492 F. App'x 217 (3d Cir. 2012); *Jones v. Cooper Tire & Rubber Co.*, No. 02-CV-8364, 2004 WL 503588, at *3 (E.D. Pa. Mar. 9, 2004) (applying Virginia law to issue of distributor liability; accident, plaintiff's residence, and place of purchase were in Virginia; defendant's headquarters and relevant conduct were in Ohio); *Kelley v. Nat'l Pipe & Plastics, Inc.*, No. CIV.A. 3:10-153, 2012 WL 1145021, at *2 (M.D. Pa. Apr. 5, 2012) (applying Georgia law to issue of comparative negligence; injury and purchase of product were in Georgia; relevant conduct and parties' domiciles were in multiple states). These cases all note, in virtually identical terms, that "where the place where the injury occurred was not fortuitous, as for example, in an airplane crash, the place of injury assumes much greater importance, and in some instances may be determinative." *Id.*

Unlike the location of an airplane crash,[6] the location of Plaintiffs' collision in Michigan was not fortuitous. The Third Circuit, applying Pennsylvania law, explained the difference between fortuity of the place of injury (as in the case of an

---

[6] In analyzing the choice-of-law issue, the Court relied on several cases involving airplane crashes. *See* Order at 10 (citing *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170 (3d Cir. 1991); Order at 11-12, 21 (citing *In re Air Disaster at Detroit Metro. Airport*, 750 F. Supp. 793 (E.D. Mich. 1989)); Order at 25-26 (citing *In re Colorado Springs Air Crash*, 867 F. Supp. 630 (N.D. Ill. 1994)).

- 15 -

aircrash) and non-fortuity:

> The airplane . . . could have crashed anywhere—Boston Harbor, the Hudson River, or Long Island Sound—it was merely chance that the plane went down in the territorial waters off the coast of Massachusetts, as opposed to, for instance, New York or New Jersey. Here, however, [the decedent] intentionally traveled to Puerto Rico and intentionally operated the [watercraft] in Puerto Rico's territorial waters. This being so, there was no possibility that [her] accident could have occurred anywhere other than in Puerto Rico.

*Calhoun v. Yamaha Motor Corp.*, 216 F.3d at 347.

When an accident's location is non-fortuitous, as here, the place of the accident holds great importance:

> Courts within [the Third] Circuit [applying Pennsylvania law] have held that the concept of "fortuitous injury" cannot be invoked in an effort to avoid application of the law of state in which the injury occurred when the injured (or deceased) intentionally traveled to the location of the accident. . . . We have held that once a court classifies an activity or accident as non-fortuitous in nature, "the place of the injury assumes much more importance, and in some instances may be determinative."

*Calhoun*, 216 F.3d at 347 (quoting *LeJeune*, 85 F.3d at 1072). The Court should reconsider its choice-of-law decision because the claims Plaintiffs assert do not overcome the strong presumption in favor of Michigan law, as the place of the injury. As further discussed below, Plaintiffs' positions fundamentally misstated the law, and have created palpable error in this case.

## B.    Michigan Has a Significant Interest in its Punitive Damages Law.

The Court accepted Plaintiffs' incorrect argument that "Michigan's interest

in avoiding punitive damages [is] not implicated in this products liability case" (Pls.' Br. 26), and concluded that "Michigan does not have a strong economic interest in having the Court apply its punitive damages ban." Order at 22. Contrary to this conclusion, the Third Circuit has held that the state where the injury occurred has the dominant interest in application of its law regarding punitive damages, even when its law precludes such damages. *Calhoun*, 216 F.3d at 348.

Indeed, the Third Circuit rejected the very argument that Plaintiffs advanced here, because this argument "miscomprehends the nature of our inquiry." *Id.* at 348 n.15. For punitive damages, "the place of the injury," when not fortuitous, is "more importan[t]" or even "determinative." *Id.* at 347. The question is whether any other state's interest *outweighs* the prominent interest of the state where the injury occurred in the application of its law on punitive damages. *Id.* at 348. In *Calhoun*, the Third Circuit concluded that for punitive damages purposes neither the plaintiffs' residence (Pennsylvania) nor the place of conduct (Japan, where Yamaha manufactured and designed the jet ski at issue) outweighed the place of injury (Puerto Rico). *Id.*

The Third Circuit explained that the appropriate choice-of-law question was "whether the state in which the injury occurred has a dominant interest in the application of its law on punitive damages," a question it answered yes. *Id.* at 348 n.15. Here, Michigan expressed a dominant interest by passing laws to ban

- 17 -

punitive damages, just as Puerto Rico did in *Calhoun*. *Id.* And Michigan has an interest in controlling safety on its roadways, just as in *Calhoun* Puerto Rico had an interest in controlling safety on its waterways. *Id.* at 348. In *Calhoun*, the Third Circuit honored Puerto Rico's interest even though it did not allow punitive damages, and the same holds true for Michigan here.

### C.   The Conduct at Issue Occurred in Multiple Locations, Giving No Other Jurisdiction a More Significant Interest Than Michigan.

The Court further mistook the law (*Calhoun* and the *Restatement*) when it accepted Plaintiffs' argument that "the locus of the design choice in a product liability design defect case such as this is determinative of which state's conflicting punitive damages laws apply" (Pls.' Br. 26-27), and when it held that the "state with the most relevant contacts, and the strongest relevant interests, with respect to a claim for punitive damages is the state in which the product was designed." Order at 15. Not only does the place of the injury have the greatest interest (*Calhoun*, 216 F.3d at 347), but interest analysis points to no other single jurisdiction. Relevant conduct in this case occurred in multiple places, and weighing their potential interests is a "wash."

Plaintiffs' Complaint asserts claims based on Graco's design, testing, manufacture, labeling, and marketing of the TurboBooster®'s shoulder belt guide. But Graco's design, testing, manufacture, labeling, and marketing of the shoulder belt guide was not centered in one place (unlike the central role of Michigan as

Plaintiffs' home, the place where they bought and used their TurboBooster®, the place of the accident, the place of the injuries, and the predominant place of M.J.'s treatment). Some work on the original belt guide design took place in Pennsylvania, while other design decisions occurred in China and Georgia. *See, e.g.,* Langmaid Dep. (Ex. K hereto) at 17:2-23, 144:11-17; Morgenstern Dep. (Ex. B hereto) at 9:14–11:3; 14:8-15; 73:9-18. When M.J.'s TurboBooster® was manufactured, Graco was located in Georgia, and thus the decision not to use a different belt guide design at that time was made in Georgia. Finally, the allegedly defective mold that manufactured the subject shoulder belt guide to be thinner than specified was made in China.[7] Pennsylvania simply does not have the most significant relationship to Plaintiffs' claims in this case for compensatory damages. Rather, Michigan (where the injury occurred, and the only state where Plaintiffs formed their relationship with Graco by purchasing its products there) has the most significant relationship to Plaintiffs' compensatory damages claim.

Pennsylvania and many other jurisdictions following the Restatement (Second) of Conflict of Laws make clear that "where conduct causing an injury

---

[7] Chinese law generally caps punitive damages in manufacturing defect cases to twice the plaintiff's losses, and requires proof that the manufacturer knew of the manufacturing defect and that it would cause serious injury or death, yet continued to sell the product. *See* Declaration of Fang Fang (Ex. R hereto) at ¶ 4. Additionally, Chinese law limits lost future earnings to 20 years' worth of such earnings. *Id.* at ¶ 3.

- 19 -

may have occurred in multiple states, the law of the place of injury should control." *Wahl v. Gen. Elec. Co.*, 983 F. Supp. 2d 937, 946 (M.D. Tenn. 2013). *See also McIlvaine v. Ford Motor Co.*, No. 2:12-CV-111-DBH, 2013 WL 588934, at *1 n.4 (D. Me. Feb. 13, 2013); *Price v. Litton Sys., Inc.*, 784 F.2d 600, 604 (5th Cir. 1986); *Duchesneau v. Cornell Univ.*, No. CIV.A. 08-4856, 2012 WL 3104428, at *4 (E.D. Pa. July 31, 2012); *Black v. Toys R US-Delaware, Inc.*, No. 4:08-CV-3315, 2010 WL 4702344, at *16 (S.D. Tex. Nov. 10, 2010); *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 903 (Ill. 2007).[8]

For example, in *Townsend* the Illinois Supreme Court, applying the Second Restatement of Conflict of Laws § 145 to similar facts, held that

> Michigan law applies to a products liability and negligence action where the plaintiff is a resident of Michigan and the injury occurs in Michigan, the product was manufactured in South Carolina, the defendant is a New York corporation domiciled in Illinois, and the conduct complained of, including certain design decisions, investigations of prior similar occurrences, product testing and the decision to distribute nationally in its retail stores occurred in Illinois.

879 N.E.2d at 895. Because the Court's "consideration of injury-causing conduct in a Section 145 analysis includes all conduct from any source contributing to the

---

[8] *Kelly v. Ford Motor Co.*, 933 F. Supp. 465 (E.D. Pa. 1996), on which the Court's Order heavily relied (*see* Order at 11, 12, 13, 14, 15, 16-17, 18, 19, 20, 21), has been characterized as "an outlier case" and "regarded as the minority viewpoint for purposes of a conflicts-of-law analysis." *Dodson v. Ford Motor Co.*, 2006 WL 2642199, at *6 (R.I. Super. Ct. 2006) (citing S.C. Symeonides, *Choice of Law for Products Liability: The 1990s and Beyond*, 78 Tul. L. Rev. 1247, 1268-69 (2004)).

injury," the place-of-conduct consideration was a "wash." *Id.* at 906.

Like the Third Circuit in *Calhoun*, *Townsend* also explained that "situations exist where the place of the injury will not be an important contact, for example, where the place of the injury was fortuitous." *Id.* at 893. But Michigan had a strong relationship to the occurrence and the parties in *Townsend*, since it was where the plaintiffs bought the lawn tractor in question, used it, resided, and were injured. *Id.* at 893. Considering the policies and interests of Michigan, Illinois, and tort law generally, the Court could not "conclude that Illinois' relationship to this case is so pivotal as to overcome the presumption that Michigan, as the state where the injury occurred, is the state with the most significant relationship." *Id.* at 907. The same is true here.

Moreover, the alleged conduct at issue here is different from the design-defect claim in *Kelly v. Ford Motor Co*., which held that the place of "manufacture should not be included in the relevant conduct [because] plaintiff is not asserting a claim based upon a manufacturing defect." 933 F. Supp. at 470. The same is true for *Campbell v. Farber*, 975 F. Supp. 2d at 507-08 (design defect only case). Here, a manufacturing defect *is* claimed, and the conduct at issue here occurred in multiple locations, including China (manufacture), Pennsylvania (design), Georgia (design) Ohio (testing), New York (testing), Michigan (testing), Wisconsin

- 21 -

(testing), Europe (design and testing), and Taiwan (testing). [9]

Plaintiffs' negligent-infliction-of-emotional-distress claims dilute the places of conduct even more. *Black*, 2010 WL 4702344, at *13 (given various places of manufacture, distribution, purchase, marketing creation, marketing receipt, and accident involving infant seat, "no state predominates with regard to the location of the injury-causing conduct for Plaintiffs' negligent infliction of emotional distress claim"). Here, just as in *Black*, the relevant conduct occurred in many states, and no state predominates regarding the location of the injury-causing conduct. Therefore, the law of the place of injury should control. *Id.*

### D.    The Court May Wait to Resolve All Choice-of-Laws at Once.

The Court's Order noted that additional choice-of-law issues remain to be decided, and that "because the Court may benefit from additional briefing on this issue, the Court is not ruling on whether Pennsylvania's law of strict liability applies at this time." Order at 27 n.5. Rather that reconsidering, the Court may vacate the Order and wait to rule on all choice-of-law issues at the same time, on a more fully developed and briefed record.

### II.   Alternatively, the Court Should Certify the Choice-of-Law Issue for Interlocutory Appeal Under 28 U.S.C. § 1292(b).

The proper choice-of-law analysis points to Michigan law, for the reasons

---

[9] Exhibit S hereto includes excerpts of test reports showing the various places in which testing on the TurboBooster® was performed for Graco, including at the University of Michigan testing laboratory in Ann Arbor.

discussed above. At the least, there is substantial ground for difference of opinion on this question, making it appropriate to certify the question under 28 U.S.C. § 1292(b) for interlocutory appeal. Section 1292(b) certification is proper when a district court enters an order and states three things (which are "guiding criteria rather than jurisdictional prerequisites"):

> that the order (1) "involves a controlling question of law," (2) "as to which there is a substantial ground for difference of opinion," and (3) "that an immediate appeal may materially advance the ultimate termination of the litigation."

16 Wright Miller & Cooper, *Federal Practice & Procedure* § 3930, at 488 (3d ed. 2012). All three guiding criteria are satisfied here.

First, the Court's choice-of-law ruling involves a "controlling question of law." Which state's law is to apply at trial is a question of law, and not a matter of discretion. *Contrast id.* at 502-03 (discretionary rulings not suited for § 1292(b)).

Second, there is at least "substantial ground for difference of opinion" on this question, as the discussion in Section I above shows. As Wright & Miller note, the "level of uncertainty required to find a substantial ground for difference of opinion" depends on "context": "If the proceedings that threaten to endure for several years depend on an initial question of jurisdiction, limitations, or the like, certification may be justified at a relatively low threshold of doubt." *Id.* at 495. And choice of law is one of these "initial questions." *Id.* § 3931, at 528 & n.43.

Third, the "may materially advance the ultimate termination" criterion "is

- 23 -

closely tied to the requirement that the order involve a controlling question if law." *Id.* § 3930, at 505. When "the character of the trial is . . . likely to be affected" (*id.* at 506), and delaying appeal risks having to retry the case, as here, this criterion is met, because § 1292(b) is designed to minimize the "burdens of litigation on the parties and the judicial system," such as a repeat trial. *Id.* at 511.

Courts often use § 1292(b) to resolve disputed choice-of-law questions. For example, in *Simon v. United States,* 341 F.3d 193 (3d Cir. 2003) (Becker, J.) (an injury case involving multiple potentially interested jurisdictions), the court held that there was a "clear case for § 1292(b) certification" because the "choice-of-law issues are so critical." *Id.* at 199. The Sixth Circuit[10] and many other courts,[11]

---

[10] *See, e.g., Royal Ins. Co. v. Orient Overseas Container Line Ltd*., 525 F.3d 409, 420-21 (6th Cir. 2008) (review under § 1292(b) of choice-of-law question certified by E.D. Mich.); *Boatland, Inc. v. Brunswick Corp*., 558 F.2d 818, 821 (6th Cir. 1977) (review under § 1292(b) to determine whether Tenn. or Wis. law applied).

[11] *See, e.g., Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 487 (1987) (review under §1292(b) of whether state or federal law controlled pollution claim); *Eggleton v. Plasser & Theurer Exp. Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 583 (8th Cir. 2007) (review under §1292(b) regarding choice of law for personal injury claims); *Federated Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc.,* 468 F.3d 1322, 1325 (11th Cir. 2006) (same); *Collins v. Promark Prods., Inc*., 956 F.2d 383, 386 (2d Cir. 1992) (same); *Thornton v. Cessna Aircraft Co.,* 886 F.2d 85, 87 (4th Cir. 1989) (same); *Edwardsville Nat'l Bank & Trust Co. v. Marion Labs., Inc.*, 808 F.2d 648, 650 (7th Cir. 1987) (same); *Hardy v. Johns-Manville Sales Corp.,* 681 F.2d 334, 337 (5th Cir. 1982) (same); *Brendle v. Gen. Tire & Rubber Co*., 408 F.2d 116, 117 (4th Cir. 1969) (same).

- 24 -

including the *Calhoun* case discussed in Section I above,[12] have also entertained such § 1292(b) appeals.

## CONCLUSION

For the reasons stated above, Graco Children's Products Inc. respectfully requests the Court to grant its Motion to Reconsider the Order and Opinion of April 8, 2015 (ECF #48). In the alternative, Graco requests the Court to certify the choice-of-law question under 28 U.S.C. § 1292(b).

Dated: April 22, 2015                     Respectfully submitted,

                                          By: /s/ Joseph J. Krasovec

SCHIFF HARDIN LLP                         SCHIFF HARDIN LLP
Gregory L. Curtner (P12414)               Joseph J. Krasovec (6201456)
Jessica A. Sprovtsoff (P70218)            Heidi Oertle (6275632)
350 S. Main Street                        233 South Wacker Drive
Suite 210                                 Suite 6600
Ann Arbor, MI 48104                       Chicago, IL 60606
734-222-1518 (Phone)                      312-258-5500 (Phone)
734-222-1501 (Fax)                        312-258-5600 (Fax)
gcurtner@schiffhardin.com (E-mail)        jkrasovec@schiffhardin.com (E-mail)
jsprovtsoff@schiffhardin.com (E-mail)     hoertle@schiffhardin.com (E-mail)

*Attorneys for Defendant Graco Children's Products, Inc.*

---

[12] *See Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996) (§ 1292(b) review of whether state law or federal maritime law controlled accident claim); *Calhoun v. Yamaha Motor Corp.*, 216 F.3d 338, 342 (3d Cir. 2000) (§ 1292(b) review of further choice-of-law questions certified by E.D. Pa.).

- 25 -

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on April 22, 2015, he caused the foregoing documents to be served on all counsel of record via the Court's ECF system.

/s/ Joseph J. Krasovec
Joseph J. Krasovec

10808-1496
CH2\16472386.5