# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JOSEPH JERMANO, et al.,                           Case No.  13-10610

     Plaintiffs,                                  Hon. Matthew F. Leitman
                                        Hon. Mag. Mona K. Majzoub

v.

GRACO CHILDREN'S PRODUCTS, INC.,

     Defendant.
_____/

| | |
|---|---|
| Raymond D. Gentile | Joseph J. Krasovec |
| Douthit, Frets, Rouse, Gentile | Schiff Hardin LLP |
| & Rhodes, LLC | 233 S. Wacker Drive, Suite 6600 |
| 5250 W. 116th Place, Suite 400 | Chicago, Illinois  60606 |
| Leawood, Kansas  66211 | 312.258.5500 |
| 913.387.1600 | jkrasovec@shiffhardin.com |
| dgentile@dfrglaw.com | Attorneys for Defendant |
| Attorneys for Plaintiffs | |
| | |
| Robert F. Garvey (P24897) | Gregory L. Curtner (P12414) |
| Thomas, Garvey & Garvey | Jessica A. Sprovtsoff (P70218) |
| 24825 Little Mack Avenue | Schiff Hardin LLP |
| St. Clair Shores, Michigan  48080 | 350 S. Main Street, Suite 210 |
| 586.779.7810 | Ann Arbor, Michigan  48104 |
| bobgarvey@me.com | 734.222.1518 |
| Attorneys for Plaintiffs | gcurtner@schiffhardin.com |
| | jsprovtsoff@schiffhardin.com |
| | Attorneys for Defendant |

_____/

# PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S
# MOTION FOR RECONSIDERATION OR CERTIFICATION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... iii

COUNTER-STATEMENT OF QUESTIONS PRESENTED ................................ vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. ix

INTRODUCTION ........................................................................... 1

COUNTER-STATEMENT OF FACTS ..................................................... 3

    A.    Defendant's request for non-party at fault ............................. 4

    B.    The Court's order of supplemental briefing........................... 5

    C.    Defendant's supplemental brief ........................................... 5

    D.    Defendant's motion for reconsideration............................... 7

ARGUMENT ............................................................................... 13

I.    DEFENDANT'S MOTION FOR RECONSIDERATION FAILS TO SATISFY THE REQUIREMENTS OF RULE 7.1(h)(3), AND IS OTHERWISE IMPROPER AS IT RELIES ON ARGUMENTS AND EVIDENCE THAT COULD HAVE BEEN RAISED PREVIOUSLY ....... 12

    A.    Legal Standards ............................................................. 12

    B.    No "Palpable Defect" Exists in the Court's Opinion and Order, And Defendant's Motion is Not Only Frivolous, it Completely Runs Afoul of the Body of Law Precluding New Arguments and New Evidence in a Motion for Reconsideration .......................... 14

        1.    The alleged "palpable defect" claimed by Defendant is based on a contrived theory that completely misrepresents the record and fails to amount to any defect at all ...................................................................... 14

        2.    Assuming for argument sake that the alleged "palpable defect" exists, Defendant fails to show how correcting it leads to a different result ........................................ 15

3.      Defendant's request for the Court to vacate its Opinion
        and Order is as self-serving as it is improper ...........................21

II.   DEFENDANT'S IMPROPER REQUEST FOR 28 U.S.C. § 1292(b)
      CERTIFICATION SHOULD BE DENIED.................................................23

      A.    Legal Standards ....................................................................23

      B.    This Case Does Not Involve "Exceptional Circumstances" and
            Fails in Every Respect to Meet the Requirements Necessary for
            § 1292(b) Certification ........................................................24

            1.      The choice-of-law question is fact-based and far from the
                    question of law required for § 1292(b) certification.................24

            2.      The choice-of-law question regarding damages is not
                    controlling ...................................................................26

            3.      Substantial ground for difference of opinion respecting
                    the correctness of the Court's determination that
                    Pennsylvania law applies to Plaintiffs' damages does not
                    exist .........................................................................28

            4.      An immediate appeal would not materially advance the
                    ultimate termination of the litigation, but instead would
                    unnecessarily prolong it .............................................31

CONCLUSION ....................................................................................32

# TABLE OF AUTHORITIES

**Cases**

*Ahrenholz v. Board of Trustees*,
    219 F.3d 674 (7th Cir. 2000) ...............................................................25

*Berg Chilling Sys., Inc. v. Hull Corp.*,
    435 F.3d 455 (3d Cir. 2006) ...................................................... viii, 16

*Beverly v. Price*,
    2015 U.S. Dist. LEXIS 20922 (E.D. Mich. Feb. 23, 2015) ........................ viii, 14

*Calhoun v. Yamaha Motor Corp.*,
    216 F.3d 338 (3d Cir. 2000) ...................................................... 17, 18

*Caterpillar v. Lewis*,
    519 U.S. 61 (1996) ...............................................................24

*Charash  v. Oberlin Coll.*,
    14 F.3d 291 (6th Cir. 1994) ...............................................................31

*Coopers & Lybrand v. Livesay*,
    437 U.S. 463 (1978) ...............................................................24

*FDIC v. World Universal Inc.*,
    978 F.2d 10 (1st Cir. 1992) ...............................................................13

*Garcia v. Plaza Oldsmobile Ltd.*,
    421 F.3d 216 (3d Cir. 2005) ...............................................................30

*Griffith v. United Air Lines, Inc.*,
    416 Pa. 1, 203 A.2d 796 (1964)...............................................................30

*In Re Air Disaster at Detroit Metro. Airport*,
    750 F. Supp. 793 (E.D. Mich. 1989); ...............................................................29

*In re Am. Specialty Cars, Inc.*,
    386 B.R. 187 (E.D. Mich. 2008) ...............................................................25

*In re Baker & Getty Fin. Servs., Inc. v. Nat'l Union Fire Ins. Co.*,
    954 F.2d 1169 (6th Cir.1992)...............................................................26

*In re Brentwood Country Club, LLC*,
   329 B.R. 239 (E.D. Mich. 2005) ................................................................. 25, 26

*In re City of Memphis*,
   293 F.3d 345 (6th Cir. 2002) ................................................................. viii, 23, 26

*In re Miedzianowski*,
   735 F.3d 383 (6th Cir. 2013) ................................................................28

*Kelly v. Ford Motor Co.*,
   933 F. Supp. 465 (E.D. Pa. 1996)................................................................21

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941) ................................................................29

*Lewelling v. Farmers Ins. of Columbus, Inc.*,
   879 F.2d 212 (6th Cir. 1989) ................................................................29

*Martin v. The Joseph Harris Co., Inc.*,
   709 F.2d 1505, 1983 U.S. App. LEXIS 13133 (6th Cir. Apr. 22, 1983) ............24

*Melville v. Am. Home Assur. Co.*,
   584 F.2d 1306 (3d Cir. 1978) ................................................................30

*Mich. Dessert Corp. v. A.E. Staley Mfg. Co.*,
   23 Fed. Appx. 330 (6th Cir. 2001) ................................................................13

*Muncie Power Prods. v. United Techs. Auto., Inc.*,
   328 F.3d 87 (6th Cir. 2003) ................................................................. viii, 29, 31

*Sault Ste. Marie v. Engler*,
   146 F.3d 367 (6th Cir. 1998) ................................................................. ix, 13

*Shah v. NXP Semiconductors USA, Inc.*,
   507 Fed. Appx. 483 (6th Cir. 2012) ................................................................. viii, 13

*St. James Inc. v. Am. Specialty Cars Holdings, LLC*,
   386 B.R. 187 (E.D. Mich. 2007................................................................. viii, 25

*Tele-Save Merch. Co. v. Consumers Distrib. Co.*,
   814 F.2d 1120 (6th Cir. 1987) ................................................................29

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ...................................................................29

*Vitols v. Citizens Banking Co.*,
   984 F.2d 168 (6th Cir. 1993) ......................................................24

*Weatherspoon v. George LNU*,
   2015 U.S. Dist. LEXIS 21052 (E.D. Mich. Feb. 23, 2015) ........................ viii, 14

*Witzke v. Hiller*,
   972 F. Supp. 426 (E.D. Mich. 1997) ..............................................13

**Statutes**

28 U.S.C. § 1292(b) ........................................................ passim

28 U.S.C. § 1404 ...............................................................4


**Rules**

E.D. Mich. L.R. 7.1(h) ..................................................... vi, 13, 14

E. D. Mich. L. R. 7.1(h)(3) ....................................................13

MCR 2.112(K) ............................................................ v, 4, 5, 7

**Other Authorities**

16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice
   and Procedure § 3930, at 426 (2d ed. 1996).....................................26

## COUNTER-STATEMENT OF QUESTIONS PRESENTED

**I.**     In this products liability case where 1) Plaintiffs originally filed suit in Pennsylvania alleging claims for, among other things, strict products liability and negligence under theories of design defect and manufacturing defect, as well as punitive damages, all under Pennsylvania law, 2) the matter was subsequently transferred to this judicial district, 3) Defendant requested that this Court apply Michigan law to Plaintiffs' case, 4) Defendant also requested that it be allowed to file an untimely notice of non-party at fault under Michigan Court Rule 2.112(K), 5) the Court considered Defendant's requests and ordered supplemental briefing on the issues, in which the Court expressly indicated that if 25 pages of briefing was not sufficient, either Party could request additional pages of briefing, 6) Defendant filed its supplemental brief totaling 19 pages in length, in which Defendant failed to properly analyze the choice of law issue separately as to liability and damages, but instead limited its argument to a generalized discussion of compensatory damages as well as to why it should be allowed to file its untimely notice of non-party at fault, 7) Plaintiffs thereafter filed their supplemental brief totaling, per the Court's permission, 35 pages in length in which Plaintiffs properly analyzed the choice of law issue separately as to liability and as to both compensatory as well as punitive damages, 8) the Court heard oral argument on Defendant's requests and, in doing so, placed no limitations on the Parties' respective arguments, 9) the Court

subsequently issued a written Opinion and Order (D.E. 48, Pg ID 824-854) properly applying Pennsylvania's choice of law analysis and properly concluding that Pennsylvania damages law applies while denying Defendant's motion for nonparty at fault, and while reserving a ruling on which state's law applies to the substantive claims, and 10) Defendant's motion for reconsideration is based on a contrived palpable error, and impermissibly rehashes old arguments, raises new arguments that could have previously been made, relies upon evidence it could have previously proffered, misconstrues the record, and fails in every respect to demonstrate how correction of the alleged palpable error would lead to a different result,

Should Defendant's motion for reconsideration of the Court's April 8, 2015 Opinion and Order be denied.

Plaintiffs answer:           Yes.

Defendant answers:          No.

This Court should answer:     Yes.

**II.**    Where 1) Defendant's motion seeks reconsideration of the Court's April 8, 2015, Opinion and Order under E.D. Mich. L.R. 7.1(h) and alternatively seeks relief in the form of 28 U.S.C. § 1292(b) certification of the Opinion and Order to the Sixth Circuit Court of Appeals, 2) Local Rule 7.1(h) provides for

reconsideration of the Court's Opinion and Order based on correction of a "palpable defect," and provides no basis for relief in the form of certification under 28 U.S.C. § 1292(b), 3) Defendant's motion thus improperly seeks relief in the form of certification, and 4) in any event, the Court's Opinion and Order is not properly the subject of interlocutory review as examining the question of which state's law applies to the issue of damages requires detailed factual examination of the record, will not materially affect the outcome of the case, fails to present a substantial ground for which a difference of opinion exists, and unnecessarily prolongs instead of materially advancing the litigation,

Should Defendant's improper request for certification should be denied.

Plaintiffs answer:           Yes.

Defendant answers:           No.

This Court should answer:    Yes.

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Berg Chilling Sys., Inc. v. Hull Corp.*,
    435 F.3d 455 (3d Cir. 2006)

*Beverly v. Price*,
    2015 U.S. Dist. LEXIS 20922 (E.D. Mich. Feb. 23, 2015)

*In re City of Memphis*,
    293 F.3d 345 (6th Cir. 2002)

*Muncie Power Prods. v. United Techs. Auto., Inc.*,
    328 F.3d 87 (6th Cir. 2003)

*Shah v. NXP Semiconductors USA, Inc.*,
    507 Fed. Appx. 483 (6th Cir. 2012)

*Sault Ste. Marie v. Engler*,
    146 F.3d 367 (6th Cir. 1998)

*St. James Inc. v. Am. Specialty Cars Holdings, LLC*,
    386 B.R. 187 (E.D. Mich. 2007)

*Weatherspoon v. George LNU*,
     2015 U.S. Dist. LEXIS 21052 (E.D. Mich. Feb. 23, 2015)

28 U.S.C. § 1292(b)

E.D. Mich. L.R. 7.1(h)

ix

## INTRODUCTION

Defendant's motion for reconsideration is simply too little, too late, and fails in every respect to demonstrate why the Court should reconsider its April 8, 2015, Opinion and Order.   Defendant attempts to overcome its own failure to timely present arguments and evidence in its original supplemental brief by way of a contrived theory that since the time of the Court's decision, Plaintiffs have focused this litigation on manufacturing defect claims, and that this somehow renders this Court's decision in need of reconsideration.   Aside from Defendant's theory being nothing but a thinly-veiled attempt to belatedly shore up the inadequacy of its original briefing and arguments, its theory is flat-out wrong.

Plaintiffs' complaint expressly alleges strict liability and negligence on theories of design and manufacturing defects.   (D.E. 1-3, Pg ID 22-23)   Defendant thus was aware of the manufacturing defect allegations from the outset of this case, and certainly was aware of them when Defendant requested that Michigan law apply and when it filed its supplemental brief in support of the same.   Defendant was free to brief and argue its position with respect to the manufacturing defect claims when briefing its choice of law analysis; it chose not to.   It likewise chose not to brief and argue its position with respect to Plaintiffs' design defect claims.   Instead, Defendant provided a cursory choice of law analysis limited to compensatory damages that spoke in terms of generalities, and provided little if

1

any analysis let alone the proper depecage analysis. Thus, the whole of Defendant's motion is improper as it simply seeks to re-hash old arguments or introduce new ones.

But even when setting aside the impropriety of Defendant's arguments, it fails to show how correcting the alleged failure to consider Plaintiffs' manufacturing defect claims leads to a different result. This case unquestionably *is* a design defect case, and indeed the design defect claims lie at the heart of Plaintiffs' case. That is, regardless of whether or not the TurboBooster was manufactured correctly, the design was defective   Accordingly, the Court's consideration of the facts attendant to the TurboBooster's design when analyzing which state's law applies to Plaintiffs' damages was – and continues to be – correct. And aside from Defendant's accusations that Plaintiffs further pursued their manufacturing defect claims during discovery being an exaggerated red herring, they do nothing to change the fact that the design defect claims are at the heart of Plaintiffs' case, or that the Court properly concluded that Pennsylvania damages law thus applies.

A motion for reconsideration is not a vehicle to re-hash arguments or to raise new arguments that could have been previously made. But Defendant's motion does nothing more than that. Thus, if error lies at all, it lies with Defendant, such that its motion for reconsideration must be denied.

Likewise, Defendant's request for certification to the United States Court of Appeals for the Sixth Circuit is equally as unavailing. Not only is the request improper via a motion for reconsideration, Defendant's request fails to present the "exceptional case" worthy of interlocutory review, and runs afoul of the Sixth Circuit's admonition against "piecemeal" appeals. To be sure, Defendant's request fails to satisfy every requirement for interlocutory certification, as it requires detailed examination of the record, will not materially affect the outcome of the case, fails to present a substantial ground for which a difference of opinion exists, and unnecessarily prolongs instead of materially advancing the litigation.

## COUNTER-STATEMENT OF FACTS

Defendant devotes nearly ten full pages of its twenty-five page brief to its version of the "factual and procedural background" of this case. In doing so, Defendant sets forth facts and introduces exhibits, the vast majority of which were known to Defendant at the time it filed its original motion seeking to apply Michigan law as well as when Defendant filed its supplemental brief, but nonetheless were not provided to this Court. Thus, as explained in Part I.A. of the Argument Section, *infra*, Defendant's factual background is improper and should be discounted outright. To demonstrate the impropriety of Defendant's factual background and why a great portion of it should be dismissed out of hand, Plaintiffs will begin with how the issue of which state's law applies to Plaintiffs'

damages came about, and explain the context in which Defendant's motion must be adjudicated.   In doing so, Plaintiffs will refrain from engaging in the improprieties that run rampant throughout Defendant's brief.

### A.   Defendant's request for non-party at fault.

Some two years after removing Plaintiffs' complaint to the Eastern District of Pennsylvania, and then having the case transferred to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404, Defendant filed a motion for leave to file a Notice of Non-arty at Fault pursuant to Mich. Ct. R. 2.112(K) (3)(c), thereby seeking to apply Michigan law to Plaintiffs' damages for purposes of allocating fault.  (D.E. 27, Pg ID 199-205)  Defendant attached six exhibits to its motion which consisted of A) the proposed notice of non-party at fault, B) an unpublished case from the Eastern District of Michigan, *Quintal v. Von Maur, Inc.*, C) excerpts from A. Thibodeau's deposition, D) excerpts from H. Thibodeau's deposition, E) excerpts from A. Watts deposition, and F) the Court's Amended Case Management Requirements and Scheduling Order.  (D.E. 27-1 through 27-6, Pg ID 206-244) Plaintiffs opposed Defendant's motion (D.E. 28, Pg ID 245-250), and Defendant filed a reply (D.E. 30, Pg ID 252-259), to which Defendant attached two exhibits— A) the crash/accident report, and B) an e-mail communication between counsel. (D.E. 30-1 through 30-2, Pg ID 260-268)

**B.      The Court's order of supplemental briefing.**

On October 23, 2014, the Court heard oral argument on Defendant's motion, and thereafter issued an Order requiring the Parties to submit supplemental briefs. (D.E. 31, Pg ID 269-271)  The Court specifically ordered the Parties to brief the issues of whether "Plaintiffs' claims [are] governed by Michigan law, Pennsylvania law, or the law of some other state?"; if Michigan damages law applied, whether "MCR 2.112(K), and its subsections, apply in this federal action?"; if MCR 2.112(K) did not apply was Defendant required to provide another type of notice; and if Defendant was required to provide notice, but had not yet done so, what standard should the Court use when determining whether to allow the notice?  (D.E. 31, Pg ID 270)  Notably, the Court also expressly stated that, "[b]y listing these issues to address, the Court *does not mean to restrict the range of arguments available to the parties* with respect to the choice of law and notice issues raised by Graco's motion."  (D.E. 31, Pg ID 271 (emphasis added)) To that end, the Court also expressly stated that the Parties could seek additional pages beyond the 25-page limit by simply making a request via e-mail to the Court's case manager.  (Id.)

**C.      Defendant's supplemental brief.**

Defendant, as the moving party seeking to have Michigan law apply, filed its supplemental brief first.  (D.E. 33, Pg ID 307-329)  Defendant's entire brief totaled

nineteen pages in length.  (D.E. 33, Pg ID 309-327)  The "Factual Background" of Defendant's supplemental brief was set forth in about two pages and consisted of three paragraphs.  (D.E. 33, Pg ID 310-312)  The first paragraph indicated that the accident, place of purchase of the TurboBooster, Plaintiffs' residence, and place of medical care were in Michigan.  (D.E. 33, Pg ID 310)

The second paragraph indicated that i) at the time Plaintiffs filed their state-court action in September of 2012, Defendant had moved its corporate headquarters from Pennsylvania to Georgia, but that the "TurboBooster was largely designed before Graco moved to Georgia, ii) design revisions at issue were made in Europe, iii) Defendant "distributes its products through retailers in all 50 states," iv) Defendant "still maintains a downsized office in Pennsylvania," v) it conducted "dynamic testing" of the TurboBooster in frontal crashes in Ohio, New York, Michigan, Wisconsin, the U.K., and Taiwan, and vi) the TurboBooster was "manufactured and assembled in China by Wonderland NurseryGoods" after Defendant moved to Georgia.  (D.E. 33, Pg ID 310-311)

And the third paragraph indicated that the case was removed to the Eastern District of Pennsylvania, transferred to the Eastern District of Michigan, and that the depositions of those individuals involved in the accident were taken in July and August of 2014, at which time Defendant learned certain facts about the driver of the vehicle that struck Plaintiffs' vehicle.  (D.E. 33, Pg ID 311-312)

6

The "Argument" section of Defendant's supplemental brief consisted of about fifteen pages, about half of which addressed the choice-of-law issue, and the other half addressed Mich. Ct. R. 2.112(K).  (D.E. 33, Pg ID 312-326)   Defendant limited the choice-of-law analysis to compensatory damages.  (D.E. Pg ID 313)   Defendant attached the following exhibits to its supplemental brief:   "A) Complaint, B) Traffic Crash Report, Oct. 26, 2010, C) Plaintiffs' Interrogatory Responses, D) Graco's Answers to Plaintiff's Second Set of Interrogatories, E) S. Gerhart Deposition Transcript, F) Graco's Answer and Affirmative Defenses, and G) Report Re: Jermano/Graco Accident, R. Caldwell."  (D.E. 33-1, Pg ID 330)

Plaintiffs then filed their supplemental brief in accordance with the Court's Order.  (D.E. 35, Pg ID 404-450)   Plaintiffs requested and received permission to file a thirty-five page brief, in which Plaintiffs properly applied a depecage analysis to the choice-of-law issues.  (Id.)   The Court held a second hearing in which  Defendant argued first and was not limited by the Court in any manner.

### D.    Defendant's motion for reconsideration.

In contrast to the two-page factual background set forth in Defendant's supplemental brief, the "factual and procedural background" in Defendant's motion for reconsideration is about ten pages in length – i.e., about five times as long.  It begins by setting forth the claims made in Plaintiffs' complaint, including Plaintiffs' manufacturing defect claims set forth in their strict liability and

negligence counts.  (D.E. 51, Pg ID 943-944)  Defendant then goes on to state that "[t]hroughout the proceedings, Plaintiffs have actively pursued each of their four claims and underlying allegations against Graco, including by conducting wide-ranging fact and expert discovery on all of their allegations," particularly, according to Defendant, the manufacturing and failure to warn claims.  (D.E. 51, Pg ID 944)  Thus, by these statements alone, Defendant admits that it was aware of Plaintiffs' manufacturing defect claims from the outset of the case, and thus certainly was aware of Plaintiffs' manufacturing defect claims when Defendant filed its supplemental brief.

In an apparent attempt to tee-up Defendant's alleged "palpable defect," Defendant then goes on to misrepresent that Plaintiffs have taken "varied positions with the Court and Graco about which claims they truly seek to pursue."  (Id.)  This unsupported accusation not only contradicts Defendant's statement made just two sentences earlier – that "[t]hroughout the proceedings, Plaintiffs have actively pursued each of their four claims and underlying allegations against Graco" – it is completely false.  Plaintiffs unequivocally withdrew their failure to warn theories at the January 26, 2015 hearing.  Instead of commending Plaintiffs for withdrawing a theory of liability they believe should no longer be pursued having gone through discovery, Defendant attempts to characterize Plaintiffs' withdrawal as some sort of sleight of hand.  (D.E. 51, Pf ID 944)  And this unsupported accusation also

ignores the overwhelming discovery Plaintiffs have conducted with respect to their design defect claims. (*See* D.E. 36, Sealed Exhibit C1 - C29; D.E. 38, Sealed Exhibit C-Summary)

Defendant then, quite astonishingly, implies that Plaintiffs engaged in yet another sleight of hand when it criticizes Plaintiffs for "emphasizing" their design defect claims in both their supplemental brief as well as at oral argument, while allegedly "downplaying" their manufacturing defect claims. (D.E. 51, Pg ID 945) Defendant's criticism completely ignores the fact that this briefing came about by way of *Defendant's* motion to apply Michigan law. Thus, *Defendant* went first, and in *its* brief Defendant simply argued in generalities with respect to the law applicable to compensatory damages, while turning a blind eye to the proper depecage analysis of the individual claims. The hypocrisy of Defendant's attempt to cast aspersions on Plaintiffs – who properly engaged in depecage analysis with respect to liability and damages (both compensatory and punitive) – for apparently not speaking in broad enough terms in their supplemental brief, is self-evident. Indeed, Defendant was free to address Plaintiffs' manufacturing defect claims, of which it admittedly was well aware of since the outset of this case, in its supplemental brief as well as at oral argument. *Defendant* chose not to do so. But the hypocrisy aside, Plaintiffs' analysis of their strict liability and negligence claims in their supplemental brief focused on the heart of Plaintiffs' case, the

design defect allegation, because whether or not the TurboBooster was manufactured correctly, it nonetheless suffered from a design defect.

Defendant then goes on for the next four full pages of its brief to discuss Plaintiffs' manufacturing defect claim.   In making this first-time argument, Defendant relies upon expert reports and deposition testimony that was available to Defendant at the time it filed its supplemental brief, but which Defendant failed to provide to the Court.[1]  Thus on these bases alone, the Court should not so much as consider  these alleged "factual assertions."  *See* Part I.A., Argument Section, *infra.*   But that aside, Plaintiffs' factual assertions with respect to the manufacturing defect claim are of no moment.

First, of course Plaintiffs have further pursued their manufacturing defect claims during discovery.  They would be derelict not to have done so.  That does not change the fact that Plaintiffs' design defect claims are at the center of this case, nor does it change the fact that Defendant knew of Plaintiffs' manufacturing defect claims from the outset of this case.  And, to be sure, Defendant admits that Plaintiffs have pursued their manufacturing defect claims "throughout the proceedings." (D.E. 51, Pg ID 944)  Second, the substance of each expert's manufacturing defect theories, while significant to proving liability, are simply red

---

[1]     To conserve page length, Plaintiffs have attached as Exhibit A, Defendant's exhibit list filed in connection with its motion for reconsideration, in which Plaintiffs have provided the relevant date of each exhibit to demonstrate the exhibit's availability at time Defendant filed its supplemental brief on December 16, 2014.

herrings for purposes of this motion.[2]   As demonstrated in Part I.B. Argument Section, *infra*, Defendant fails to show how consideration of Plaintiffs' manufacturing defect claims would change the result here.   Third, Defendant's emphasis on China as being the place where the TurboBooster was manufactured may be relevant for future briefing with respect to the applicable law for liability purposes, which the Court has yet to rule on, but it is irrelevant for purposes of this motion because this indeed *is* a design defect case as the Court recognized.

Finally, as with the whole of Defendant's factual assertions, its discussion of "Plaintiffs' [Alleged] Use of the TurboBooster," along with many of the exhibits cited therein, is completely improper as it was never so much as mentioned in Defendant's supplemental brief.   To be sure, Defendant certainly was in possession of the instruction manual upon which it relies (Defendant's Ex. N) when Defendant filed its original motion for leave as well as its supplemental brief, but never brought this manual to the Court's attention.   Likewise, the report of Dr. Corrigan (Defendant's Ex. P, dated 12/4/2014) and excerpts from Dory Jermano's deposition (Defendant's Ex. A, dated 7/8/2014) were also in Defendant's possession at the time of the prior briefing.   The report of Dr. VanArsdell is dated after the  supplemental brief was filed, but VanArsdell is Defendant's expert and

---

[2]      As indicated, because Plaintiffs do not wish to engage in the same improprieties as Defendant, Plaintiffs will refrain from introducing new arguments with respect to the substance of the expert reports cited by Defendant, and it will refrain from introducing new exhibits.

Defendant thus had the ability to bring VanArsdell's opinion to the Court's attention previously. The Court should therefore dismiss these alleged factual assertions out of hand. *See* Part I.A., Argument Section, *infra*.

In addition, discussion of Plaintiffs' alleged use of the TurboBooster is not a factual statement at all, but rather improper argumentation that causes Plaintiffs undue prejudice. That is, Plaintiffs are left with a Hobson's choice: 1) they can "take the bait" and argue why Defendant is wrong, but thereby violate the well-settled law against raising new arguments and introducing new evidence in a motion for reconsideration, or 2) Plaintiffs can comply with the parameters of the law, but thereby leave Defendant's improper accusations unanswered. Confident that the Court will see through Defendant's improprieties, Plaintiffs choose to follow the law.

## ARGUMENT

## I. DEFENDANT'S MOTION FOR RECONSIDERATION FAILS TO SATISFY THE REQUIREMENTS OF RULE 7.1(h)(3), AND IS OTHERWISE IMPROPER AS IT RELIES ON ARGUMENTS AND EVIDENCE THAT COULD HAVE BEEN RAISED PREVIOUSLY.

### A. Legal Standards

Defendant's motion for reconsideration is brought under Eastern District of Michigan Local Rule 7.1(h), which states that in order for reconsideration to be granted, the movant "must [1] not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have

been misled but [2] also show that correcting the defect will result in a different disposition of the case."  E.D. Mich. L.R. 7.1(h) (3).  "A palpable defect is a defect that is obvious, clear, unmistakable, manifest or plain."  *Witzke v. Hiller*, 972 F. Supp. 426, 427 (E.D. Mich. 1997).

This standard is not satisfied merely by rearguing a position.  As the Rule expressly states, motions for reconsideration "that merely present the same issues ruled upon by the court, either expressly or by reasonable implication" "will not [be] grant[ed.]"  E.D. Mich. L.R. 7.1(h) (3).  Likewise, motions for reconsideration are not vehicles to proffer new arguments or to introduce evidence that the movant could have presented earlier.  *See Sault Ste. Marie v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (recognizing that motions under Fed. R. Civ. P. 59(e) "are aimed at *re*consideration not initial consideration" and thus are not opportunities to "re-argue a case" or "raise arguments which could, and should, have been made" previously) (citing *FDIC v. World Universal Inc*., 978 F.2d 10, 16 (1st Cir. 1992); *see also Mich. Dessert Corp. v. A.E. Staley Mfg. Co*., 23 Fed. Appx. 330, 336 (6th Cir. 2001) (recognizing that "motions for rehearing and reconsideration brought pursuant to Local Rule 7.1(g) [former 7.1(h)] are treated as Federal Rules of Civil Procedure 59 motions"); *Shah v. NXP Semiconductors USA, Inc*., 507 Fed. Appx. 483, 495 (6th Cir. 2012) (affirming denial of motion for reconsideration brought under E.D. Mich. L.R. 7.1(h) and recognizing that "a party may not introduce

evidence for the first time in a motion for reconsideration where that evidence could have been presented earlier"); *Beverly v. Price*, 2015 U.S. Dist. LEXIS 20922, *2 (E.D. Mich. Feb. 23, 2015) ("A motion for reconsideration is not a vehicle to rehash old arguments, or to proffer new arguments or evidence that the movant could have presented earlier.") (citation omitted) (Ex. B); *Weatherspoon v. George LNU*, 2015 U.S. Dist. LEXIS 21052, *3 (E.D. Mich. Feb. 23, 2015) (same) (citation omitted).  (Ex. C)

As set forth below, the whole of Defendant's motion for reconsideration, including the brief and exhibits upon which the motion relies, violates this well-settled authority regarding the standard for reconsideration, as well as the parameters of what can be raised and relied upon in support of the same.

> **B.** **No "Palpable Defect" Exists in the Court's Opinion and Order, And Defendant's Motion is Not Only Frivolous, it Completely Runs Afoul of the Body of Law Precluding New Arguments and New Evidence in a Motion for Reconsideration.**
>
> **1.** **The alleged "palpable defect" claimed by Defendant is based on a contrived theory that completely misrepresents the record and fails to amount to any defect at all.**

Upon doing nothing more than acknowledging the standard necessary for reconsideration under Rule 7.1(h), Defendant's brief manufactures a "palpable defect" for purposes of this motion.  Specifically, Defendant claims that the Court's Opinion and Order suffers from a "palpable defect" because it is based on the alleged "false premise" that "this is 'a design-defect case' alone."  (D.E. 51, Pg

14

ID 952)  This alleged "false premise" not only ignores the fact that *Defendant* did not so much as mention Plaintiffs' manufacturing defect claims in its supplemental brief, it ignores the fact that Plaintiffs' complaint set forth the manufacturing claims such that Defendant was aware of them all along.  Thus, the alleged "false premise" was created by Defendant itself.

But that aside, the purported defect is no defect at all inasmuch as whether this strict liability and negligence case is solely about design defect claims or about manufacturing defect claims as well, the Court's analysis with respect to the application of Pennsylvania law to Plaintiffs' damages does not change because design defect claims not only remain in the case, they are at the heart of Plaintiffs' case.   And, significantly, although the TurboBooster was manufactured in China, as Defendant states, the manufacturing was done "at Graco's direction."  (D.E. 51, Pg ID)  Thus, manufacturing decisions, like design decisions, may have occurred in Pennsylvania.   But regardless, the TurboBooster was defectively designed irrespective of whether it was manufactured correctly.  This is noteworthy because Defendant is not arguing that design defect claims are not part of the case; rather, it argues that manufacturing defect claims also exist.  Thus, for purposes of deciding which state's damages law applies, Defendant's argument is of no moment. Defendant's argument is more akin to deciding which state's law applies with respect to liability for the design defect claims, and liability for the manufacturing

defect claims.  The Court has not yet answered those questions, (D.E. 48, Pg ID 27), but indeed, under Pennsylvania's choice-of-law rules, different state's laws may apply to the various liability claims.  *See Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006).

>    2.    **Assuming for argument sake that the alleged "palpable defect" exists, Defendant fails to show how correcting it leads to a different result.**

After announcing the purported palpable defect, Defendant goes on for the next ten-plus pages of its brief to make arguments that have nothing to do with the alleged palpable defect.  That is, the arguments in no way show how consideration of the manufacturing defect claims somehow renders the Court's analysis of the design defect claims and its conclusion that Pennsylvania law applies to Plaintiffs' damages erroneous.  This alone demonstrates the frivolity of Defendant's fabricated "palpable defect."

Defendant's professed reasons why the Court "should reconsider its choice-of-law ruling" are because, according to Defendant, 1) "Michigan Law Presumptively Controls Because the Accident's Location Was Not Fortuitous" (D.E. 51, Pg ID 953-956); 2) "Michigan Has a Significant Interest in its Punitive Damages Law" (D.E. 51, Pg ID 956-958); and 3) "The Conduct at Issue Occurred In Multiple Locations, Giving No Other Jurisdiction a More Significant Interest

Than Michigan."   (D.E. 51, Pg ID 958-962)   None of these arguments have anything whatsoever to do with the fabricated "palpable defect."

For example, Defendant's argument that Michigan law applies because the accident allegedly was not fortuitous, never so much as mentions the word "manufacturing defect," let alone demonstrates why a consideration of Plaintiffs' manufacturing defect claims would change the result of the Court's decision that Pennsylvania law applies to Plaintiffs' damages.  Instead, Defendant's arguments, and indeed all of the facts and case law upon which the arguments rely, relate to the choice-of-law issue in the first instance, meaning that these are arguments, facts, and case law that Defendant could have brought to the fore in its supplemental brief originally submitted to the Court.  To be sure, Defendant certainly knew the location of the car accident at issue from the outset of this case, and the primary case upon which Defendant relies, *Calhoun v. Yamaha Motor Corp.*, 216 F.3d 338 (3d Cir. 2000), has been in the jurisprudence for about fifteen years.  But, aside from a cursory mention in a footnote, Defendant's supplemental brief is otherwise is silent both as to the "non-fortuitous" nature of the accident as well as to the body of case law, including *Calhoun*, upon which Defendant relies in claiming that because the accident allegedly was "non-fortuitous," Michigan law applies.  (D.E. 33, Pg ID 316)

17

Likewise, Defendant's argument that "Michigan has a significant interest in its punitive damages law," does not so much as mention the words "manufacturing defect," let alone show why a consideration of Plaintiffs' manufacturing defect claims would change the result of the Court's decision. Instead, this argument and the single case upon which Defendant relies, *Calhoun*, is based on the alleged non-fortuitous nature of the accident, both of which were known to Defendant at the time it filed its supplemental brief. But again, Defendant's supplemental brief is virtually silent both as to this argument and the case law, and is completely silent as to punitive damages. In fact, Defendant's supplemental brief is limited to the issue of whether Michigan or Pennsylvania law applies to compensatory damages.

Finally, although Defendant's argument that because the "conduct at issue" allegedly "occurred in multiple locations," "no other jurisdiction has a more significant interest than Michigan," makes mention of a manufacturing defect claim, it likewise includes Plaintiffs' allegations relating to defect design, testing, labeling and marketing. Thus, there is no relationship between the alleged palpable defect and this argument, because the Court *did* consider the design defect argument in its decision. Said differently, consideration of the manufacturing defect claim alone is not the impetus behind Defendant's argument, and thus this argument has no relationship to the alleged "palpable defect."

18

Rather, this "multiple jurisdiction" argument, like Defendant's prior arguments, is just another attempt to improperly rehash old arguments and raise new ones.  In its supplemental brief, Defendant argued that, aside from Michigan and Pennsylvania, "[t]he *only other* potentially interested state is Georgia, Graco's principal place of business at the time of the accident," and noted that "Georgia has no interest in applying its laws to [this] accident."  (D.E. 33, Pg ID 313, 315 (emphasis added))  Aside from this cursory mention of Georgia and its lack of interest in seeing its laws applied, Defendant made no further mention of Georgia in its supplemental brief.  Defendant's supplemental brief also contended that the Turbo Booster was tested in Ohio, New York, Michigan, Wisconsin, the U.K. and Taiwan (D.E. 33, Pg ID 311), but as the Court recognized in its Opinion and Order, the deposition testimony of Steven Gerhart upon which Defendant relied to support its contention "do not mention any testing performed in the State of Michigan. And even if they did, this limited Michigan contact pales in comparison to the extensive work conducted from the State of Pennsylvania on the TurboBooster." (D.E. 48, Pg ID 839)  Similarly, Defendant's supplemental brief made an unsupported allegation that the TurboBooster was manufactured and assembled in China.  (D.E. 33, Pg ID 311)  Defendant also made a single paragraph reference to the "location of injurious conduct" being in multiple places, but provided little or

no argumentation, and relied upon a single case not mentioned in support of Defendant's current motion.  (D.E. 33, Pg ID 317)

Rather, in its motion for reconsideration, Defendant contradicts its prior position, and not only argues that Michigan's, Pennsylvania's, and Georgia's are implicated, Defendant argues that so are the laws of China (alleged place of manufacture), Europe (alleged place of design and testing), and Ohio, New York, Wisconsin, and Taiwan (all alleged places of testing).  (D.E. 51, Pg ID 961-962) And Defendant's newly crafted argument not only contradicts its prior position, it relies on deposition testimony known to Defendant prior to filing its supplemental brief on December 16, 2014 (D.E. 51-12, Page ID 1017-1020, Def's Ex. K, Langmaid Dep. dated 11/13/2014; 51-3, Pg ID 947-978, Ex. B, Morgenstern Dep, dated 11/14/2014), as well as case law which was all decided well before Defendant filed its supplemental brief.  Thus, in its supplemental brief, Defendant most certainly could have raised this "multiple jurisdiction" argument in the manner it now does on reconsideration; it simply chose not to.  In fact, in at least some portions of its supplemental brief, it argued to the contrary.  Similarly, the newly added declaration from a lawyer licensed in the People's Republic of China opining as to Chinese law on punitive damages (D.E. 51-19, Pg ID 1124-1127, Ex. R, Dec. of F. Fang, dated 4/22/2015) is something that Defendant could have obtained when submitting its supplemental brief.  But again, it chose not to.

Thus, as the above illustrates, even when considering the alleged "palpable defect" – *i.e.*, even when considering the manufacturing defect claims, the result does not change because design defect claims, which lie at the heart of this case, remain, and the Court's sound Opinion and Order concluding that Pennsylvania law applies to Plaintiffs' damages is undeniably correct.[3]   In addition, although Defendant's new arguments and exhibits should not be considered by the Court under the well-settled body of law noted in Part II.A., *supra*, again, Defendant's new arguments and exhibits do nothing to change the outcome here.

### 3.      Defendant's request for the Court to vacate its Opinion and Order is as self-serving as it is improper.

The impropriety of Defendant's arguments and evidence upon which it relies is glaring, but what is equally as astounding is Defendant's alternative request for the Court to vacate its Opinion and Order for purposes of deciding all of the choice-of-law issues, "on a more fully developed and briefed record." (D.E. 51, Pg ID 962)   This request is as thinly veiled as Defendant's fabricated "palpable defect" and entire motion for reconsideration – *i.e.*, this request is simply another impermissible attempt at a second bite of the apple.  The Court provided Defendant

---

[3]      Defendant's citation to an unpublished case from Rhode Island Superior Court that purportedly criticizes a case upon which the Court relied, *Kelly v. Ford Motor Co.*, 933 F. Supp. 465 (E.D. Pa. 1996), does nothing to call into question, let alone demonstrate the incorrectness, of this Court's Opinion and Order.  *Kelly* is a published case from the Eastern District of Pennsylvania and it remains good law; therefore, this Court is obligated to follow *Kelly* in conducting its choice-of-law analysis.  *See Van Dusen*, 376 U.S. at 637-42; *Klaxon*, 313 U.S. at 496.

a full opportunity to brief the choice-of-law issues associated with this case when it order supplemental briefing. Indeed, the Court's Order of supplemental briefing specifically required the Parties to address whether "Plaintiffs' claims [are] governed by Michigan law, Pennsylvania law, or the law of some other state." (D.E. 31, Pg ID 270) The Court's Order also specifically stated that the Parties could seek additional pages beyond the 25-page limit. (D.E. 31, Pg ID 271) (In fact, Plaintiffs requested and were allowed to file a 35-page brief.) And the Court's Order required Defendant to file its supplemental brief first, as it was the party seeking to have Michigan law apply. (Id.)

Thus, the Court not only ordered briefing on the choice-of-law issues, it left open the page-length of the briefing, and it allowed Defendant to go first. So, Defendant was free to and had ample opportunity to argue and frame the choice-of-law issues fully when it filed its supplemental brief. Defendant chose to limit its supplemental brief to 19 pages; it chose to limit its arguments to compensatory damages; it chose to limits its reliance on case law discussing distinguishable pharmaceutical matters; it chose not to address Plaintiffs' claims individually— even though it was fully aware of Plaintiffs' complaint; and it chose not to rely on the exhibits it now provides to this Court. And to be sure, with the exception of a few "supplemental" reports and the newly received declaration from a Chinese lawyer (which Defendant could have previously obtained), all of the exhibits to

Defendant's motion for reconsideration were available to Defendant at the time it filed its supplemental brief.

Thus, for Defendant to now contend that additional briefing on a more fully developed record is necessary regarding the Court's choice-of-law decision on damages law, and for Defendant to criticize Plaintiffs as well as this Court as improperly limiting the choice-of-law analysis after Defendant *itself* chose to limit its arguments and the evidence upon which it relied, simply adds injury to the already improper nature of Defendant's motion for reconsideration, such that Defendant's alternative request must be rejected.

## II.   DEFENDANT'S IMPROPER REQUEST FOR 28 U.S.C. § 1292(b) CERTIFICATION SHOULD BE DENIED.

### A.   Legal Standards

The authority for certifying interlocutory appeals is set forth in 28 U.S.C. § 1292(b), which states in relevant part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. . . .

Interlocutory appeals under § 1292(b) should be granted sparingly and only in "exceptional cases." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002).

"Routine resort to § 1292(b) requests would hardly comport with Congress' design to reserve interlocutory review for 'exceptional' cases while generally retaining for the federal courts a firm final judgment rule." *Caterpillar v. Lewis*, 519 U.S. 61, 74 (1996). Indeed, the Sixth Circuit has expressly held that "[p]iecemeal review of district court decisions is not favored by this Court." *Martin v. The Joseph Harris Co., Inc.*, 709 F.2d 1505, 1983 U.S. App. LEXIS 13133 (6th Cir. Apr. 22, 1983).

Thus, a party seeking certification under § 1292(b) has the burden of "persuading the court that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after entry of final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978). The requesting party must show that: "(1) the question involved is one of law; (2) the question is controlling; (3) there is substantial ground for difference of opinion respecting the correctness of the district court's decision; and (4) an immediate appeal would materially advance the ultimate termination of the litigation." *Vitols v. Citizens Banking Co.*, 984 F.2d 168, 170 (6th Cir. 1993) (citation omitted)).

**B.    This Case Does Not Involve "Exceptional Circumstances" and Fails in Every Respect to Meet the Requirements Necessary for § 1292(b) Certification.**

**1.    The choice-of-law question is fact-based and far from the question of law required for § 1292(b) certification.**

"A legal question of the type envisioned in § 1292(b) . . . generally does not include matters within the discretion of the trial court. Interlocutory appeals are

intended for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *In re Am. Specialty Cars, Inc*., 386 B.R. 187, 196 (E.D. Mich. 2008) (citations and internal quotation marks omitted).  To be sure, "factual determinations are not appropriate for interlocutory review," but instead "are intended for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *St. James Inc. v. Am. Specialty Cars Holdings, LLC*, 386 B.R. 187, 196 (E.D. Mich. 2007) (citations and internal quotation marks omitted). Accordingly, "[a]n appeal that presents a mixed question of law and fact does not meet this standard." *Id.* (citation and internal quotation marks omitted).  *See also Ahrenholz v. Board of Trustees*, 219 F.3d 674, 677 (7th Cir. 2000) (recognizing that a "question of law" for purposes of satisfying § 1292(b) is that is "pure" or "abstract" and "suitable for determination by an appellate court without a trial record"); *In re Brentwood Country Club, LLC*, 329 B.R. 239, 242-43 (E.D. Mich. 2005) ("With reference to 28 U.S.C. § 1292(b) the term 'question of law' refers to a 'pure' question of law and not just an issue that is free from factual disputes.").

Defendant's request simply makes a single-sentence bald assertion that "the Court's choice-of-law ruling involves a 'controlling question of law,'" while conspicuously ignoring the more than twenty preceding pages of detailed factual

analysis in which Defendant argues that Court incorrectly decided the choice-of-law issue.  (D.E. 51, Pg ID 963)  In addition, these twenty-some pages of briefing cite to numerous exhibits and refer to the oral argument held before the Court. Indeed, by way of its own briefing Defendant demonstrates that the choice-of-law issue is hardly one of "pure law," but instead is one involving numerous factual determinations.  Thus, the choice of law issue regarding which state's damages law applies to this case is not a "question of law" or a pure legal issue suitable for interlocutory review.  *See Brentwood*, 329 B.R. at 243 (refusing to review an interlocutory order where the appellant "ask[ed] this [c]ourt to review the oral arguments, the parties' pleadings and the record to determine if the bankruptcy court exceeded its authority").

### 2. The choice-of-law question regarding damages is not controlling.

A legal issue can be deemed controlling "if it could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d at 351; *In re Baker & Getty Fin. Servs., Inc. v. Nat'l Union Fire Ins. Co*., 954 F.2d 1169, 1172 n.8 (6th Cir.1992).  Said differently, a question is controlling "if interlocutory reversal might save time for the district court, and time and expense for the litigants." 16 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3930, at 426 (2d ed. 1996).

26

Defendant fails to address this factor in its motion; however, that aside, it is clear that the issue of which state's damages law applies is not controlling to the outcome of the case. That is, interlocutory reversal would not save time for this Court or the Parties; in fact, just the opposite is true. In its Opinion and Order, this Court held that Pennsylvania damages law applies such that Plaintiffs are entitled to seek punitive damages, no caps apply to non-economic damages, and that liability is joint and several.[4] (D.E. 48, Pg ID 845, 850) If the case proceeds to trial without interlocutory review of the Court's decision, and Plaintiffs are awarded punitive damages and non-capped non-economic damages, then Defendant could then seek an appeal from the final judgment, and if the Sixth Circuit agrees with Defendant, then the award of punitive damages would be vacated and the award of non-economic damages would be capped. There simply would be no need to re-try the case.

Thus, granting interlocutory review of the Court's Opinion and Order would not materially affect the outcome of the case, but instead would prolong the case for the Court and the Parties alike. This is particularly so because no legitimate basis exists to believe that the Sixth Circuit would reverse the Court's decision that Pennsylvania law applies to Plaintiffs' damages, and granting interlocutory certification would therefore run afoul of judicial economy and justice alike.

---

[4]     The Court further held that even if Michigan damages law applied, Defendant's request to file an untimely notice of non-party at fault would be denied. (D.E. 48, Pg ID 851)

27

**3.    Substantial ground for difference of opinion respecting the correctness of the Court's determination that Pennsylvania law applies to Plaintiffs' damages does not exist.**

A substantial ground for difference of opinion exists where "(1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question." *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013) (internal quotation marks and citations omitted).  The Sixth Circuit has held that "the relevant inquiry under the fourth prong [is] whether there is a circuit split on a question that *our own circuit has not answered*.  Where our circuit has answered the question, the district court is bound by our published authority." *Id.* (emphasis in original).

Defendant argues that, based on its reasons for why reconsideration should be granted, there exists "substantial ground for difference of opinion" as to the Court's ruling that Pennsylvania law applies to Plaintiffs' damages.  (D.E. 51, Pg ID 963)   Defendant's argument, such as it is, actually demonstrates why certification should be denied, because it is based on the numerous factual issues associated with resolving the choice of law issue. *See* Part II.A., *supra.*

And to be sure, this factor inures to the benefit of Plaintiffs and for denying certification where 1) the Court's Opinion and Order is based on settled law from

28

the United States Supreme Court, Michigan and Pennsylvania federal courts (including the Third Circuit), and Michigan and Pennsylvania state courts, (D.E. 48, Pg ID 832-850); 2) the issue of whether Michigan's damages law or some other state's damages law applies is hardly one of first impression, (D.E. 48,  Pg ID 834-35, citing *In Re Air Disaster at Detroit Metro. Airport*, 750 F. Supp. 793, 806-07 (E.D. Mich. 1989); 3) Defendant has failed to demonstrate that a difference of opinion exists in the Sixth Circuit regarding whether Michigan's or some other state's damages law applies in a case such as this; and 4) Defendant has likewise failed to show that a circuit split exists with respect to this issue.

In fact, when reviewing the Sixth Circuit choice-of-law jurisprudence, the appellate Court obviously follows Supreme Court precedent and, in diversity matters, applies the choice-of-law rules of the forum/transferor state.  *See Van Dusen v. Barrack*, 376 U.S. 612, 637-42 (1964); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 215 (6th Cir. 1989); *Tele-Save Merch. Co. v. Consumers Distrib. Co.,* 814 F.2d 1120, 1122 (6th Cir. 1987).   Of course, the choice-of-law analyses therefore vary according to the applicable forum state.  But where, as in this case, the law of the forum state abandoned *lex loci delicti*, the place where the tort occurred, in favor of the balancing test set forth in the Restatement (Second) Conflict of Laws, the Sixth Circuit has undertaken the balancing analysis.  For

example, in *Muncie Power Prods. v. United Techs. Auto., Inc*., 328 F.3d 87 (6th Cir. 2003), the Sixth Circuit applied Ohio's choice of law rules by first noting that, upon abandoning *lex loci deliciti* in tort matters, Ohio adopted the Restatement Second approach. *Id.* at 873-74. The Court then went on to weigh the Restatement Factors while also considering the respective state's (Ohio's and Indiana's) interests, when deciding whether the district court properly concluded that, although the accident occurred in Ohio, on the balance, Indiana law applied such that the plaintiff could not recover for contribution. *Id.* at 875-78. The Sixth Circuit's analysis lead it to affirm the district court because, among other things, the design decisions associated with the defective tank involved in the accident took place in Indiana. *Id.* at 876-77.

Similarly, the law of the forum state in this case, Pennsylvania, abandoned the traditional *lex loci delicti* conflicts rule in *Griffith v. United Air Lines, Inc*., 416 Pa. 1, 203 A.2d 796, 805 (1964), and instead adopted the "more flexible rule" which has evolved into a hybrid approach that "combines the approaches of both Restatement [(Second) of Conflict of Laws] (contacts establishing significant relationships) and 'interest analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy)." *Melville v. Am. Home Assur. Co*., 584 F.2d 1306, 1311 (3d Cir. 1978) (citing *Griffith*, 203 A.2d at 805). *See also Garcia v. Plaza Oldsmobile Ltd*., 421 F.3d 216, 219 (3d Cir. 2005). Thus, this Court's

analysis of the conflict between Pennsylvania's and Michigan's damages law, wherein the Court thoroughly analyzed the interests of each state in accordance with the facts and contacts attendant thereto, is completely in keeping with the Sixth Circuit's approach, and is an approach that is consistently followed in this Circuit. *See Muncie Power Prods.*, 328 F.3d at 875-78; *Charash  v. Oberlin Coll.*, 14 F.3d 291, 296 (6th Cir. 1994).  Thus, this factor also weighs in favor of denying § 1292(b) certification.

### 4.    An immediate appeal would not materially advance the ultimate termination of the litigation, but instead would unnecessarily prolong it.

As explained in Part II.B.2., *supra*, if the case proceeds to trial without an interlocutory appeal, and if Plaintiffs are awarded punitive damages and non-capped non-economic damages, then Defendant could thereafter appeal from the final judgment.  If the Sixth Circuit agrees with Defendant that Michigan damages law applies, then the award of punitive damages is vacated and the award of non-economic damages is capped.  There simply would be no need to re-try the case as Defendant avers in its motion.  (D.E. 51, Pg ID 964)  Thus, taking an immediate appeal would not ultimately advance the termination of the litigation, but instead would extend the litigation.  And, given the correctness of the Court's Opinion and Order, an immediate appeal would needlessly extend the litigation as there is no reason to believe that the Sixth Circuit would reverse.

31

Defendant's citation to two cases from the Sixth Circuit, which were decided more than thirty years apart, nor its citation to a single case from the United States Supreme Court or other federal Circuit Courts of Appeal, does not demonstrate otherwise.  (D.E. 51, Pg ID 964)  Simply because choice of law issues have, from time to time, been reviewed on an interlocutory basis does not *a fortiari* make them subject to interlocutory review as a matter of course.  Indeed, this is particularly true where, as in this case, if the Sixth Circuit ultimately determines that punitive damages and non-capped economic damages were improperly awarded – *i.e.,* the appellate court determines that Michigan damages law applies, then the result is that the punitive damages are vacated, and the non-economic damages are capped.

In summary, an analysis of each of the factors attendant to a determination of whether a non-final order should be certified for interlocutory review shows that Defendant has completely failed to carry its burden in demonstrating that "exceptional circumstances" exist for certifying the Court's Opinion and Order to the Sixth Circuit.  Defendant's request for certification must therefore be denied.

## CONCLUSION

For the above-stated reasons, Plaintiffs respectfully request that the Court deny Defendant's motion for reconsideration, and deny Defendant's alternative request for interlocutory certification.

Respectfully submitted,

s/Robert F. Garvey
Robert F. Garvey (P24897)
Thomas, Garvey & Garvey
24825 Little Mack Avenue
St. Clair Shores, Michigan  48080
586.779.7810
bobgarvey@me.com
Attorneys for Plaintiffs

Raymond D. Gentile
Douthit, Frets, Rouse, Gentile
& Rhodes, LLC
5250 W. 116th Place, Suite 400
Leawood, Kansas  66211
913.387.1600
dgentile@dfrglaw.com

Date:  May 12, 2015          Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2015, I electronically filed the foregoing document using the ECF system which will send notification to ECF participants of record.

s/Robert F. Garvey
Robert F. Garvey