UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH JERMANO, et al.,

        Plaintiffs,

v.

GRACO CHILDREN'S PRODUCTS
INCORPORATED

        Defendant.

Case No. 13-cv-10610

Hon. Matthew F. Leitman

Magistrate Judge Mona K. Majzoub

**DEFENDANT GRACO
CHILDREN'S PRODUCTS, INC.'S
SUPPLEMENTAL BRIEF IN
SUPPORT OF THE APPLICATION
OF MICHIGAN LAW TO THE
DETERMINATION OF
LIABILITY**

---

DOUTHIT, FRETS, ROUSE, GENTILE &
RHODES, LLC
Raymond D. Gentile
Jeffrey D. Rowe
5250 W. 116th Place
Suite 400
Leawood, KS 66211
913-387-1600 (Phone)
913-928-6739 (Fax)
dgentile@dfrglaw.com (E-mail)


THOMAS, GARVEY & GARVEY
Robert F. Garvey (P24897)
24825 Little Mack Avenue
St. Clair Shores, MI 48080
586-779-7810 (Phone)
586-779-4912 (Fax)
bobgarvey@me.com (E-mail)

*Attorneys for Plaintiffs*

SCHIFF HARDIN LLP
Joseph J. Krasovec, III
233 South Wacker Drive, Suite 6600
Chicago, IL 60606
312-258-5500 (Phone)
312-258-5600 (Fax)
jkrasovec@schiffhardin.com (E-mail)


SCHIFF HARDIN LLP
Gregory L. Curtner (P12414)
Jessica A. Sprovtsoff (P70218)
350 S. Main Street, Suite 210
Ann Arbor, MI 48104
734-222-1518 (Phone)
734-222-1501 (Fax)
gcurtner@schiffhardin.com (E-mail)
jsprovtsoff@schiffhardin.com (E-mail)


*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

ISSUE PRESENTED ............................................................. iii

TABLE OF AUTHORITIES ...................................................iv

CONTROLLING AND MOST APPROPRIATE AUTHORITIES.......................ix

INTRODUCTION ..................................................................1

FACTUAL BACKGROUND ......................................................1

A.   The Alleged Conduct for Plaintiffs' Design Defect Claim. ...........................2

B.   Plaintiffs' Use of the TurboBooster® ................................................7

ARGUMENT ........................................................................9

I.   Application of Pennsylvania Choice-of-Law Rules .......................................9

II.   "Actual" Conflicts Exist Between Michigan and Pennsylvania Law ...........10

    A.   Michigan Law...............................................................10

        1.   Plaintiffs' Design Defect Claim...............................................10

        2.   Plaintiffs' Negligent Infliction of Emotional Distress Claim...13

        3.   Plaintiffs' Fault ........................................................14

    B.   Pennsylvania Law.........................................................15

        1.   Plaintiffs' Design Defect Claims ............................................15

        2.   Plaintiffs' Negligent Infliction of Emotional Distress Claim...19

        3.   Plaintiffs' Fault ........................................................20

# TABLE OF CONTENTS
(continued)

**Page**

III.   "True" Conflicts Exist Between Michigan and Pennsylvania Law ..............20

    A.   Plaintiffs' Design Defect Claims.........................................................20

    B.   Plaintiffs' Negligent Infliction of Emotional Distress .......................23

    C.   Plaintiffs' Own Fault ...........................................................................24

IV.   The Non-Fortuitous Place of Injury Dictates Which State's Laws Apply ....25

V.   Graco's Conduct Was Not Centered in Pennsylvania Concerning Plaintiffs' Allegations of Design Defect. .........................................................................29

VI.   Ms. Jermano's Negligent Infliction of Emotional Distress Claim Should be Governed by Michigan Law. .........................................................................20

CONCLUSION .........................................................................................................32

## <u>ISSUE PRESENTED</u>

1.      Should this Honorable Court apply Michigan law to the determination of liability and affirmative defenses when the injury occurred in Michigan, the relationship between the parties was created and remained in Michigan, the alleged conduct causing the injury occurred in many locations (including Michigan, Georgia, Pennsylvania, and China), the parties are citizens of Michigan and Georgia, respectively?

**Defendant's Answer:    Yes.**

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Azzarello v. Black Brothers Company, Inc.,*
  480 Pa. 547 (Pa. 1977) ........................................................................15

*Black v. Toys R US-Delaware, Inc.,*
  No. 4:08-CV- 3315, 2010 WL 4702344 (S.D. Tex. Nov. 10, 2010) .....................30

*Blakesley v. Wolford,*
  789 F.2d 236 (3d Cir. 1986) ................................................................. 27

*Calhoun v. Yamaha Motor Corp.,*
  216 F.3d 338 (3d Cir. 2000) ..................................................................26

*Campbell v. Fawber,*
  975 F. Supp. 2d 485 (E.D. Pa. 2013) ....................................................28

*Cook v. Darling,*
  160 Mich. 475, 125 N.W. 411 (1910) ....................................................11

*Croskey v. BMW of N. Am.,*
  532 F.3d 511 (6th Cir. 2008) ...............................................................12

*DeJesus v. U.S. Dept. of Veterans Affairs,*
  384 F. Supp. 2d 780 (E.D. Pa. 2005) ........................................20, 23, 31

*Dooms v. Stewart Bolling & Co.,*
  241 N.W.2d 738 (1976) .......................................................................11

*Duchesneau v. Cornell Univ.,*
  No. CIV.A. 08-4856, 2012 WL 3104428 (E.D. Pa. July 31, 2012) .....................30

*Duran v. Detroit News, Inc.,*
  200 Mich. App. 622 (1993)...................................................................23

*Elliott v. Gen. Motors Corp.,*
  No. 190954, 1997 WL 33353580 (Mich. Ct. App. Mar. 28, 1997)......................13

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Ferraro v. Ford Motor Co.,*
  423 Pa. 324, 223 A.2d 746 (1966) ..........................................................................20

*Fleck v. Titan Tire Corp.,*
  177 F. Supp. 2d 605 (E.D. Mich. 2001)....................................................................11

*Garcia v. Wyeth-Ayerst Laboratories,*
385 F.3d 961, 967 (6th Cir. 2004).......................................................................... 22

*Gaudio v. Ford Motor Co.,*
  976 A.2d 524 (Pa. Super. Ct. 2009)............................................................... passim

*Gregory v. Cincinnati, Inc*., 538 N.W.2d 325 (Mich. 1995) ............................10, 12

*Griffith v. United Airlines, Inc.,*
  416 Pa. 1, 203 A2d 796 (Pa. 1964) ..........................................................................9

*Hammersmith v. TIG Ins. Co.,*
  480 F.3d 220 (3d Cir. 2007)....................................................................10, 20, 25

*Harsh v. Petroll,*
  840 A.2d 404 (Pa. Commw. Ct. 2003) ...................................................................25

*Henderson v. Merck & Co.,*
2005 WL 2600220 at *6 (E.D. Pa. 2005) ...............................................................22

*Hollister v. Dayton Hudson Corp.,*
  201 F.3d 731 (6th Cir. 2000) ..........................................................................11, 12

*In re Tylenol (Acetaminophen) Mktg., Sales, Practices, & Prods. Liab. Litig.*, ___
  F. Supp. ___, 2015 WL 2417411 ...................................................................20, 25

*Johnson v. Chrysler Corp.,*
  254 N.W.2d 569 (1977) ...........................................................................................11

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Jones v. Enertel, Inc.,*
  254 Mich. App. 432, 656 N.W.2d 870 (2002)........................................................14

*Kelley v. Ford Motor Co.,*
  938 F. Supp. 465 (E.D. Pa. 1996)........................................................27

*Kelley v. Ford Motor Co.,*
  No. CIV. A. 94-257, 1996 WL 639832 (E.D. Pa. Oct. 29, 1996)........................28

*LeJeune v. Bliss-Salem, Inc.,*
  85 F.3d 1069 (3d Cir. 1996)........................................................24, 26

*Lewis v. Coffing Hoist Div., Duff-Norton Co.,*
  528 A.2d 590 (Pa. Super. Ct. 1987)........................................................18, 21

*Mall v. Honda N. Am., Inc.,*
  No. 06-CV-12332, 2007 WL 2462874 (E.D. Mich. Aug. 28, 2007)....................13

*McDonald v. Whitewater Challengers, Inc.,*
  ____ A.3d ____, 2015 WL 1955379 (Apr. 29, 2015) ................................................1

*McIlvaine v. Ford Motor Co.,*
  No. 2:12-CV-111-DBH, 2013 WL 588934 (D. Me. Feb. 13, 2013) ....................30

*Oddi v. Ford Motor Co.,*
  234 F.3d 136 (3d Cir. 2000)........................................................19

*Parr v. Ford Motor Co.,*
  109 A.3d 682 (Pa. Super. Ct. 2014)........................................................19

*Pedersen v. Huron Clinton Metro. Auth.,*
  No. 317898, 2015 WL 213149 (Mich. Ct. App. Jan. 15, 2015) ...........................14

*Prentis v. Yale Mfg. Co.,*
  365 N.W.2d 176 (Mich. 1985)........................................................11, 12

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Price v. Litton Sys., Inc.,*
  784 F.2d 600 (5th Cir. 1986) .................................................................30

*Rutherford v. Chrysler Motors Corp.,*
  231 N.W.2d 413 (1975) .......................................................................13

*Shields v. Consol. Rail Corp.,*
  810 F.2d 397 (3d Cir. 1987)..................................................................27

*Shuder v. McDonald's Corp.,*
  859 F.2d 266 (3d Cir. 1988).............................................................25, 27

*Specialty Surfaces Intern. Inc. v. Continental Ins. Co.,*
  609 F.3d 223 (3d Cir. 2010).......................................................10, 20, 25

*Taylor v. Kurapati,*
  236 Mich. App. 315 (1999)...................................................................23

*Teadt v. Lutheran Church Missouri Synod,*
  237 Mich. App. 567 (1999)...................................................................23

*Tincher v. Omega Flex, Inc.,*
  104 A.2d 328 (Pa. 2014) ...............................................................passim

*Townsend v. Sears, Roebuck & Co.,*
  879 N.E.2d 893 (Ill. 2007) ...................................................................30

*Wahl v. Gen. Elec. Co.,*
  983 F. Supp. 2d 937 (M.D. Tenn. 2013)...................................................30

*Wargelin v. Sisters of Mercy Health Corp.,*
  385 N.W.2d 732 (Mich. Ct. App. 1986)...........................................13, 23, 31

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**STATUTES**

M.C.L. § 500.3101 ................................................................................24

M.C.L. § 600.2945 ...................................................................... 10, 21, 22, 23

M.C.L. § 600. 2946 ............................................ 10, 11, 12, 20, 21, 22, 23

M.C.L. § 600.2947 ................................................................................24

M.C.L. § 600.2957 ........................................................................14, 24

**OTHER AUTHORITIES**

*Pennsylvania Suggested Standard Civil Jury Instruction 16.20* .............................16

Restatement (Second) of Conflict of Laws § 145 ........................................ 9, 24, 26

Restatement (Second) of Conflict of Laws § 146 ....................................................26

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

*Calhoun v. Yamaha Motor Corp.*, 216 F.3d 338 (3d Cir. 2000)

*DeJesus v. U.S. Dept. of Veterans Affairs,* 384 F. Supp. 2d 780 (E.D. Pa. 2005)

*Elliott v. Gen. Motors Corp.*, No. 190954, 1997 WL 33353580 (Mich. Ct. App. Mar. 28, 1997)

*Gregory v. Cincinnati, Inc.*, 538 N.W.2d 325 (Mich. 1995)

*Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A2d 796 (Pa. 1964)

*Harsh v. Petroll,* 840 A.2d 404 (Pa. Comm. Ct. 2003)

*Hollister v. Dayton Hudson Corp.*, 201 F.3d 731 (6th Cir. 2000)

*In re Tylenol (Acetaminophen) Mktg., Sales, Practices, & Prods. Liab. Litig.*, ___ F. Supp. ___, 2015 WL 2417411 (E.D. Pa. 2015)

*Jones v. Enertel, Inc.*, 254 Mich. App. 432, 656 N.W.2d 870 (Mich. 2002)

*LeJeune v. Bliss-Salem, Inc.,* 85 F.3d 1069 (3d Cir. 1996)

*Mall v. Honda N. Am., Inc.,* No. 06-CV-12332, 2007 WL 2462874 (E.D. Mich. Aug. 28, 2007)

*Parr v. Ford Motor Co.*, 109 A.3d 682 (Pa. Super. Ct. 2014)

*Prentis v. Yale Mfg. Co.*, 365 N.W.2d 176 (Mich. 1985)

*Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014)

*Wargelin v. Sisters of Mercy Health Corp.*, 385 N.W.2d 732 (Mich. Ct. App. 1986)

M.C.L. § 600.2445

M.C.L. § 600.2446

Restatement (Second) of Conflict of Laws § 145

Restatement (Second) of Conflict of Laws § 146

## INTRODUCTION

Defendant Graco Children's Products, Inc. ("Graco") respectfully requests that this Court apply the laws of the State of Michigan to the determination of liability with respect to Plaintiffs' claims and Graco's affirmative defenses.[1]

## FACTUAL BACKGROUND

Plaintiffs have voluntarily withdrawn their claims based on failure to warn, manufacturing defect, and negligent infliction of emotional distress for Plaintiff Dorothy Berge.  The only claims remaining are strict liability and negligence based on design defect, and negligent infliction of emotional distress for Plaintiff Dory Jermano, a Michigan resident who claims separate harm for having witnessed the injury suffered by M.J. in the subject motor vehicle accident.  With the focus of this case now on Plaintiffs' allegations of design defect, a more detailed discussion of that theory and Graco's related defenses is warranted.[2]

---

[1] After the Court ruled that Pennsylvania law applies to the determination of compensatory and punitive damages, a Pennsylvania court recently confirmed, consistent with predictions made by several federal courts there, that Pennsylvania law applies dépeçage. *See McDonald v. Whitewater Challengers, Inc.*, ____ A.3d ____, 2015 WL 1955379, at *5 n.16 (Pa. Supr. Ct. Apr. 29, 2015).  It is therefore permissible for this Court to rule that Michigan law applies to the liability issues, while already having ruled that Pennsylvania law applies to the issues of damages.

[2] So as to not burden the Court with repetitive briefing, Graco hereby incorporates its discussion of the relevant events which occurred in Michigan from Graco's prior briefing.  *See* Def.'s Mot. Reconsider, ECF No. 51, p. 2, n. 1; Def.'s Suppl. Br., ECF No. 33, pp. 2-3.  Importantly, there is no dispute that the accident and injuries occurred in Michigan, Plaintiffs and M.J. are Michigan residents, the TurboBooster® was purchased and used in Michigan, M.J. was treated for her injuries predominantly in Michigan and any misuse of the product occurred exclusively in Michigan.

- 1 -

**A.      The Alleged Conduct for Plaintiffs' Design Defect Claim.**

Plaintiffs' principle theory is that their TurboBooster® was defectively designed because it incorporated a headrest and shoulder belt guide that did not retain the vehicle's shoulder belt during this collision.   Plaintiffs' engineering experts have opined that booster seats made with an alternative headrest and shoulder belt guide design would have better captured and retained the shoulder belt in an accident.   *See, e.g.,* Ex. A, Excerpt of Report of G. Whitman, p. 31. They go on to argue that retention of the shoulder belt in the belt guide keeps the shoulder belt from moving off the child's shoulder in an actual motor vehicle crash, which they claim is what happened to M.J., resulting in her neck and back injuries. *Id.* , p. 41.

Graco first began production of the TurboBooster® for sale in the United States in 2002.  *See* Ex. B, Dep. of D. Brunick p. 38.  The design of the headrest and shoulder belt guide was initially created in Pennsylvania.  Shortly after Graco began selling the TurboBooster® in the U.S., it launched a similar seat in Europe known as the Junior Plus.

Both TurboBooster® and Junior Plus seats could be used backless or, as Plaintiffs were using at the time of their accident, with a back and headrest.  When used with the back and headrest, both seats incorporated the same shoulder belt guide, which is used to guide and position the vehicle's shoulder belt over the

- 2 -

child's shoulder and across the child's chest while the child sits in the booster seat. Both seats also had a designated path on the shoulder belt guide through which the shoulder belt is routed.



*See* ECF #51-1, Ex. N, Excerpts of TurboBooster® User Manual at pp. 28.[3]

The TurboBooster® has always passed compliance testing conducted under the United States standard, Federal Motor Vehicle Safety Standard ("FMVSS") 213. That federal standard does not require, and has never required, that the shoulder belt remain within the shoulder belt guide during dynamic sled testing to that standard.   In fact, the National Highway Traffic Safety Administration's ("NHTSA") own testing of the TurboBooster® included a test where the shoulder

---

[3] For ease of reference, Graco will refer to various exhibits herein which have been previously submitted in connection with the parties' prior choice-of-law briefing.  These exhibits will be referenced by their respective ECF designations.

belt *did* come out of the shoulder belt guide, and NHTSA determined the TurboBooster® had passed the test.  *See* Ex. C, NHTSA FMVSS 213 Compliance Test, p. Graco 869.

However, Europe applies a different standard for child seats that are sold there.  The European standard is known generally as "R-44." While there are some basic similarities between the U.S. standard (FMVSS 213) and R-44, R-44 requires that the shoulder belt remain within the shoulder belt guide during the dynamic testing.  *See* Ex. D, Dep. of M. LaPlante, pp.74-75.

The Junior Plus passed the R-44 standard with specific crash test dummies (also known as anthropometric test devices or "ATDs") that tested booster seats in Europe.  However, in 2004, Graco learned that the European regulatory authority, which determines compliance with R-44, would be adding larger-sized ATDs for testing booster seats, like the Junior Baby.  Around the same time, Graco also made a design change to the Junior Baby headrest that caused the shoulder belt to come out of the shoulder belt guide, when tested in Europe using the proposed ten year-old ATD. This larger-sized ATD, which approximated a ten year-old child, was significantly taller and heavier than the largest ATD previously used, which simulated a six year-old child.  *See* Ex. E (filed under seal), Graco E-Mail Chain Re: European Testing, pp. 5-6.

- 4 -

Anticipating the change to the European standard and the change in design of the headrest, Graco tested the Junior Baby with ten year-old ATDs at a test facility in Finland. Those tests showed that the shoulder belt came out of the shoulder belt guide, in some tests, which would violate R-44. *Id.,* pp. 1-3. Because Graco wanted to ensure that Junior Plus seats sold in Europe would remain compliant with the R-44 European standard, Graco engineers located in France and the Pennsylvania began to revise the design of the existing shoulder belt guide. *See* ECF #36, Ex. C10. To prevent the vehicle shoulder belt from coming out of the shoulder belt guide in the European testing, the engineers sought to add more structure to the "L-Shaped Rib" and the existing belt guide. *Id.* However, when tested to the R-44 European standard, the shoulder belt still moved out of this revised belt guide design.

Separately, Wonderland Nursery Goods, LTD. ("Wonderland"), the entity that manufactures the Junior Baby and TurboBooster® in China, also proposed a redesign of the entire headrest, including the shoulder belt guide. *See* ECF #36, Ex. C15. With this newly designed headrest, the Junior Baby consistently passed the R-44 testing that used the ten year-old ATDs. Accordingly, in 2007, Graco changed the design of the headrest and shoulder belt guide on the Junior Baby to the design which had been developed by Wonderland in China. *See* ECF #36, Ex. C17, C18.

In the United States, however, FMVSS 213 did not require that the shoulder belt remain in the shoulder belt guide during sled testing. Because the TurboBooster® had always passed the test requirements of FMVSS 213, including as noted earlier, a test where the shoulder belt actually came out of the shoulder belt guide, there was no need to change the design of the shoulder belt guide in the United States. Nor were there any reports to Graco about injuries from shoulder belts coming out of the shoulder belt guide in an accident.

Despite consistently passing FMVSS 213 and despite there being no reports of injury as a result of a shoulder belt coming out of a belt guide in an actual collision, Plaintiffs' theory is that Graco should have changed the design of the shoulder belt guide (which was created in China) on the Plaintiffs' TurboBooster® (which was sold to them in Michigan) to the design used on the Junior Baby (which was developed for use in Europe). That alleged conduct occurred in Georgia, not Pennsylvania, because the Plaintiffs' TurboBooster® was made on November 21, 2009. At that time, Graco's management and senior engineering staff were located in Atlanta, Georgia, who had moved there in June, 2009. *See* Ex. F, Aff. of S. Beckstrom, ¶3; ECF #51-1, Ex. B, pp. 9-11. Any decision with respect to change (or not change) the design of the headrest and belt guide used on TurboBoosters® sold in the United States was therefore made in Georgia.

**B.      Plaintiffs' Use of the TurboBooster®**

All of Plaintiffs' conduct with respect to their purchase and use of their TurboBooster® occurred in Michigan.   For example, the headrest of the TurboBooster® is adjustable to accommodate children of different seated heights. That headrest must be adjusted to the correct height for the shoulder belt guide to position the vehicle's shoulder belt properly over the child's shoulder. If the headrest is incorrectly adjusted — particularly, too low relative to the child's head and shoulder —   the belt guide will tend to shift the shoulder belt off the child's shoulder and down across the child's upper arm, crossing the child's upper torso lower than it should to effectively restrain the child's upper body in a crash.

The instruction manual addressed this misuse.  *See* ECF #51-1, Ex. N, p. 28. Indeed, the manual that accompanied Plaintiffs' TurboBooster® instructed them to position the headrest with its lowest point located at a height even with the child's shoulders, and adjust the headrest to a position where the shoulder belt lies over the child's shoulder when placed in the belt guide. *Id*.  The TurboBooster® instruction manual Plaintiffs received also illustrated these instructions:



To ensure the correct head support height is obtained, the bottom of the headrest MUST be even with the top of child's shoulders as shown in **4** and the shoulder belt must be positioned in the red zone as shown in **5**.

**CORRECT**

The lap belt portion **MUST** pass under the armrests and be positioned low on the hips.

When the Plaintiffs' TurboBooster® was recovered from the accident scene, the headrest was adjusted to its *lowest* position.  There is no evidence that the headrest ever changed position in the collision.  The experts retained by Graco have opined that, because the headrest was in its lowest possible position, the vehicle's seat belt was improperly positioned on M.J.'s arm, not on her shoulder, at the time of the collision.  *See, e.g.*, ECF #51-1, Ex. O, William VanArsdell, Ph.D. Rep. at 8-9.

Moreover, M.J.'s injuries on her upper torso are consistent with the shoulder belt being improperly positioned across her arm and lower chest, rather than up on her shoulder, where she sustained no injuries.  *See* ECF #51-1, Ex. P, Catherine Corrigan, M.D. Rep. at 16.  So, Graco has asserted in its affirmative defenses that misuse of Plaintiffs' TurboBooster® was a contributing cause of M.J.'s injuries.

- 8 -

The location for Plaintiffs' alleged misuse was Michigan. After the Plaintiffs purchased their TurboBooster® in Michigan, they reviewed the manual to learn how to use it, including how to route the shoulder belt through the shoulder belt guide, in Michigan. *See* D. Jermano Dep. excerpts attached as Ex. G, pp. 23:25-25:25. Further, the manner in which they routed the shoulder belt through the belt guide (improperly) on the night of this tragic accident of course also occurred in Michigan. *See Id.* pp. 35:9-22; 36:1-5; 36:6-20.

## ARGUMENT

## I.   Application of Pennsylvania Choice-of-Law Rules.

Pennsylvania choice-of-law rules[4] combines the "significant contacts" analysis of the Restatement (Second) of Conflict of Laws § 145 and the "governmental interest analysis." *Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A2d 796, 805 (Pa. 1964) ("'The merit of such a rule is that it gives to the place "having the most interest in the problem" paramount control over the legal issues arising out of a particular factual context'" (citations omitted)). In practice, this analysis presents three questions.

First, the Court should determine whether there is an "actual" or "false" conflict. Second, if there is an "actual" conflict, is there a "true" conflict based on the governmental interests underlying each State's laws? Third, if there is a "true

---

[4] As set forth in Graco's brief in support of the application of Michigan law on the issue of damages, Pennsylvania choice-of-law rules govern. ECF #33, Def.'s Suppl. Br. p. 4.

conflict," which state has the more significant contacts and a greater interest in having its law applied? *In re Tylenol (Acetaminophen) Mktg., Sales, Practices, & Prods. Liab. Litig.*, ___ F. Supp. ___, 2015 WL 2417411, at *2 (E.D. Pa. May 20, 2015) (citing *Specialty Surfaces Intern. Inc. v. Continental Ins. Co.*, 609 F.3d 223, 229-36 (3d Cir. 2010); *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 229 (3d Cir. 2007)).

## II.   **"Actual" Conflicts Exist Between Michigan and Pennsylvania Law.**

### A.   **Michigan Law**

#### 1.   **Plaintiffs' Design Defect Claims**

The Michigan legislature has enacted a statutory framework governing product liability claims premised on design defect. *See* M.C.L. §§ 600.2945, 600.2946. In Michigan, a product liability action is defined by statute as "an action based on a legal or equitable theory of liability brought for … injury to a person, caused by or resulting from the production of a product." *Id.* § 600.2945(h). By "product," the statute refers to any and all of its component parts. *Id.* § 600.2945(g). "Production" of a product includes, among other things, its design, formulation, development of standards, inspection, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling." *Id.* § 600.2945(h).

Michigan law recognizes two statutory product liability theories: negligence and implied warranty. *Gregory v. Cincinnati, Inc.*, 538 N.W.2d 325, 329 (Mich.

- 10 -

1995); *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 736-37 (6th Cir. 2000).

As the Michigan Supreme Court explained, a "negligence theory generally focuses on the defendant's conduct, requiring a showing that it was unreasonable." *Prentis v. Yale Mfg. Co.*, 365 N.W.2d 176, 186 (Mich. 1985). In contrast, an implied warranty "generally focuses upon the fitness of the product, irrespective of the defendant's conduct, *id.*, and "imposes strict liability on the manufacturer and vendors of a product," *Fleck v. Titan Tire Corp.*, 177 F. Supp. 2d 605, 621 (E.D. Mich. 2001). In this regard, a claim for implied warranty under Michigan law is equivalent to a strict liability claim brought in jurisdictions recognizing such claim by that title. *Johnson v. Chrysler Corp.*, 254 N.W.2d 569, 571 (1977); *Fleck*, 177 F. Supp. 2d at 619 (citing *Cook v. Darling*, 160 Mich. 475, 481, 125 N.W. 411, 413 (1910); *Dooms v. Stewart Bolling & Co.*, 241 N.W.2d 738, 746 (1976)).

Though negligence and implied warranty are distinct theories, "in an action against the manufacturer of a product based upon an alleged defect in its design, breach of implied warranty and negligence involve identical evidence and require proof of exactly the same elements." *Prentis*, 365 N.W.2d at 186. The elements for design defect are codified in Michigan. M.C.L. § 600.2946(2). To prove a design defect, plaintiff must establish that "(1) the product was not reasonably safe when it left the control of the manufacturer; and (2) a 'feasible alternative production practice was available that would have prevented the harm without

- 11 -

significantly impairing the usefulness or desirability of the product to the users.'"

*Croskey v. BMW of N. Am.*, 532 F.3d 511, 516 (6th Cir. 2008) (citing M.C.L. §

600.2946(2)); *Gregory v. Cincinnati Inc.*, 538 N.W.2d 325, 329 (1995)).

Under this risk-utility test, the trier of fact will "consider the alternatives and

risks faced by the manufacturer in designing the product and to determine whether,

'the manufacturer exercised reasonable care in making the design choices it

made.'" *Id.* (quoting *Prentis*, 365 N.W.2d at 176).  Thus, under Michigan law, a

plaintiff must produce evidence demonstrating:

> (1) that the severity of the injury was foreseeable by the
> manufacturer; (2) that the likelihood of occurrence of her injury
> was foreseeable by the manufacturer at the time of distribution
> of the product; (3) that there was a reasonable alternative design
> available; (4) that the available alternative design was
> practicable; (5) that the available and practicable reasonable
> alternative design would have reduced the foreseeable risk of
> harm posed by the defendant's product; and (6) that omission of
> the available and practicable reasonable alternative design
> rendered defendant's product not reasonably safe.

*Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 738 (6th Cir. 2000) (affirming

summary judgment where plaintiff failed to satisfy the prima facie elements of

design defect cause of action).

Furthermore, in a crashworthiness case such as this, a plaintiff also must

prove the extent that the defect contributed to or enhanced the injuries:

> A plaintiff relying on the "crashworthiness" doctrine must
> prove that the defect, although not the cause of the accident,
> resulted in the enhancement of the plaintiff's injuries, and must

- 12 -

> demonstrate such enhanced injuries. The plaintiff must first
> prove the extent of injuries attributable to what the plaintiff
> alleges to be the defect in the car. Specifically, the plaintiff has
> the burden to prove the amount of injuries which are in excess
> of those which can reasonably be expected and those which are
> not attributable to the claimed defect. Any injuries not
> attributable to the claimed defect are not enhanced injuries. The
> plaintiff also has the burden to separately establish the extent of
> the injury that he would have sustained had there not been the
> claimed defect in the car.

*Elliott v. Gen. Motors Corp.*, No. 190954, 1997 WL 33353580, at *1 (Mich. Ct.

App. Mar. 28, 1997) (*citing Rutherford v. Chrysler Motors Corp.*, 231 N.W.2d 413

(1975)); *see also Mall v. Honda N. Am., Inc.,* No. 06-CV-12332, 2007 WL

2462874, at *13 (E.D. Mich. Aug. 28, 2007).

### 2.    Plaintiff's Negligent Infliction of Emotional Distress Claim

Michigan recognizes a negligence claim for a parent who witnesses the

negligent infliction of injury to his or her child and suffers emotional distress as a

result. *Wargelin v. Sisters of Mercy Health Corp.*, 385 N.W.2d 732, 735 (Mich. Ct.

App. 1986). To recover, plaintiff must prove that: "(1) the injury threatened or

inflicted on the third person must be a serious one, of a nature to cause severe

mental disturbance to the plaintiff; (2) the shock must result in actual physical

harm; (3) the plaintiff must be a member of the immediate family, or at least a

parent, child, husband or wife; and (4) the plaintiff must actually be present at the

time of the accident or at least suffer shock fairly contemporaneous with the

accident." *Id.* (citation omitted).  Under Michigan law, plaintiff must prove actual

physical harm to recover on a claim for negligent infliction of emotional distress. *Pedersen v. Huron Clinton Metro. Auth.*, No. 317898, 2015 WL 213149, at *3 (Mich. Ct. App. Jan. 15, 2015).

### 3.   Plaintiffs' Fault

Michigan's comparative fault statutes provide that in a tort action for personal injury the liability of each person is allocated by the trier of fact "in direct proportion to the person's percentage of fault." M.C.L. § 600.2957(1); *see Jones v. Enertel, Inc.*, 254 Mich. App. 432, 434, 656 N.W.2d 870 (2002) ("As a result of the Legislature's 'fair share liability' system, each tortfeasor is responsible for a portion of the total damage award according to their percentage of fault." (citation omitted)). In assessing percentages of fault, "the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action." M.C.L. § 600.2957(1).

Further, the comparative fault statutes provide that in "personal injury actions involving the fault of more than one person, the trier of fact must specifically determine the plaintiff's total damages and the percentage of fault attributed to all persons involved 'regardless of whether the person was or could have been named as a party to the action.'" *Jones*, 254 Mich.App. at 436, 656 N.W.2d 870 (quoting M.C.L. § 600.6304(1)(b)). The term "fault" is defined by the statute as "an act, an omission, conduct, including intentional conduct, a breach of

warranty, or a breach of a legal duty, or any conduct that could give rise to the imposition of strict liability, that is a proximate cause of damage sustained by a party." M.C.L. § 600.6304(8).

### B.   Pennsylvania Law

#### 1.   Plaintiffs' Design Defect Claims

Due to the Pennsylvania Supreme Court's recent decision in *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014), Pennsylvania law governing design defect claims is far less settled than under Michigan law. Unlike Michigan, Pennsylvania has not codified its laws applicable to design defect based product liability claims.   Instead, Pennsylvania has left this to the development of the common law.   *Id.* at 755. ("[t]he common law is the starting point of our explanation of the conceptual framework for strict liability in tort in Pennsylvania").

Until seven months ago, strict liability in Pennsylvania was governed by *Azzarello v. Black Brothers Company, Inc.,* 480 Pa. 547 (Pa. 1977). Under *Azzarello,* concepts of negligence, such as "unreasonably dangerous," had no place in a claim for strict product liability, and could not appear in jury instructions governing those claims. *Id.* at 559. Moreover, under *Azzarello,* it was the trial court, not the jury, who determined whether a product's design in the first instance is unreasonably dangerous and in a defective condition, based primarily on the

- 15 -

plaintiff's allegations, and before any actual evidence is presented. *Id.* at 558. Hence, jury instructions in Pennsylvania in strict product liability cases generally instructed the jury that they "[M]ay find a defect where the product left the supplier's control lacking any element necessary to make it safe for its intended use or possessing any feature that renders it unsafe for its intended use." *Id.* at 559. The jury was also instructed that a product manufacturer is a "guarantor," though not an "insurer," of the products it sells. *Pennsylvania Suggested Standard Civil Jury Instruction* 16.20; *see also Azzarello*, 391 A.2d at 559 n.12.

In *Tincher,* the Pennsylvania Supreme Court overruled *Azzarello* in several respects. First, the *Tincher* court was highly critical of the *Azzarello* court's two-step approach of having the trial judge first rule on questions about the risk-utility of a product, and then having the jury determine whether the product was "[p]rovided with every element necessary to make it safe for (its intended) use." *Tincher*, 104 A.3d at 376. *Tincher* went on to point out that this, "[l]ed to puzzling trial directives that the bench and bar understandably have had difficulty following in practice." *Id.* Underpinning the Court's ruling in *Tincher* is the rejection of a prohibition of negligence-based concepts in the realm of strict liability under *Azzarello* and its progeny. *Id.* at 409.

The *Tincher* decision thus casts doubt over the use of the current generally accepted jury instructions in Pennsylvania that a manufacturer is a "guarantor" but

not an "insurer" of its products, and that products are defective if supplied without any element making it unsafe for its intended use. *Id.* at 371, 373, 379. Indeed, the *Tincher* decision itself points to several issues now unsettled under Pennsylvania law, "such as the availability of negligence-derived defenses" in strict liability cases. *Id.* at 409.

Should this Court decide to follow Pennsylvania law, it will be forced to write on a clean slate, with little guidance from Pennsylvania courts which currently are left to generate new law and jury instructions in the wake of the *Tincher* decision:

> This Opinion does not purport to either approve or disapprove prior decisional law, or available alternatives suggested by Commentators or the *Restatement*s, relating to foundational or subsidiary considerations and consequences of our explicit holdings. . . . The common law regarding these related considerations should develop within the proper factual contexts against the background of targeted advocacy.

*Id.* at 410; *see also* Jay Evans, The Difficulty of Consistent Application of Supreme Court Precedent, *The Legal Intelligencer*, Feb. 17, 2015, attached hereto as Ex. H; (concluding the "open question, however, is how the lower courts will take this controlling precedent and apply it"); Larry Coben et al., Assessing the State of Products Liability Law Post-'Tincher', *The Legal Intelligencer*, Dec. 9, 2014, attached hereto as Ex. I; (concluding "litigants and courts are left to wage legal war over a host of issues").

- 17 -

Although not directly answered by *Tincher*, the question about the admissibility of compliance with government standards is now also unsettled. Under cases applying *Azzarello*, defendants were prohibited from introducing evidence of compliance with government standards in strict liability design defect cases. *See Gaudio v. Ford Motor Co.,* 976 A.2d 524, 547 (Pa. Super. Ct. 2009). In strict liability cases, "[M]anufacturers may not attempt to prove the quality or design of their product by showing that it comports with industry or government standards." *Id.*; *see also  Lewis v. Coffing Hoist Div., Duff-Norton Co.*, 528 A.2d 590, 594 (Pa. Super. Ct. 1987). With *Tincher* overruling *Azzarello*'s directive that evidence of a defendant's conduct has no place in strict liability, *Gaudio* and *Lewis*'s rule prohibiting references to compliance with government standards is now unclear. For now, however, it appears to still be in effect, since it was not specifically overruled in *Tincher.*

In overruling *Azzarello,* however, the Pennsylvania Supreme Court in *Tincher* made one thing clear:

> the cause of action in strict products liability requires proof, in the alternative, either of the ordinary consumer's expectations or the risk-utility of a product.

*Tincher*, 104 A.3d at 401.

- 18 -

Pennsylvania also recognizes the crashworthiness doctrine. In such, a plaintiff, in addition to proving that a defect exists in the product, must establish three elements:

> First, the plaintiff must prove that the design of the vehicle was defective, and that at the time of design an alternative, safer, and practicable design existed that could have been incorporated instead. Second, the plaintiff must identify those injuries he or she would have received if the alternative design had instead been used. Third, the plaintiff must demonstrate what injuries were attributable to the defective design.

*Parr v. Ford Motor Co.*, 109 A.3d 682, 689 (Pa. Super. Ct. 2014) (quoting *Gaudio v. Ford Motor Co.,* 976 A.2d 524, 532 (Pa. Super. 2009)). In order to prevail, a plaintiff must quantify the extent of the injuries attributable to the alleged defect. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3d Cir. 2000) (affirming grant of summary judgment on crashworthiness claim due to exclusion of expert testimony establishing extent of enhanced injuries).

### 2. Plaintiff's Negligent Infliction of Emotional Distress Claim

Under Pennsylvania law, to recover for negligent infliction of emotional distress, plaintiff must demonstrate that she: "(1) was located near the scene of the accident; (2) suffered a direct emotional impact from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) was closely related to the injured

party." *DeJesus v. U.S. Dept. of Veterans Affairs,* 384 F. Supp. 2d 780, 801 (E.D. Pa. 2005).

### 3. Plaintiffs' Fault

Pennsylvania law generally prohibits evidence of the plaintiff's contributory negligence in strict products liability claims. *Gaudio*, 976 A.2d at 540. In certain limited circumstances, evidence of a plaintiff's conduct may be admissible, specifically where the defendant alleges that the plaintiff's voluntary assumption of risk, unforeseeable product misuse, or highly reckless conduct is relevant to the issue of causation. *Id.* To establish voluntary assumption of the risk, the defendant must show that the buyer knew of a defect and yet voluntarily and unreasonably proceeded to use the product in conscious disregard for the attendant risks. *Ferraro v. Ford Motor Co.*, 223 A.2d 746, 748 (1966).

### III. "True" Conflicts Exist Between Michigan and Pennsylvania Law.

To be sure, these "actual" conflicts between Michigan and Pennsylvania laws also create "true" conflicts based on the governmental interests underlying each State's laws. *See In re Tylenol (Acetaminophen) Mktg., Sales, Practices, & Prods. Liab. Litig.*, ___ F. Supp. ___, 2015 WL 2417411, at *2 (citing *Specialty Surfaces Intern. Inc.*, 609 F.3d at 229-36; *Hammersmith*, 480 F.3d at 229).

### A. Plaintiffs' Design Defect Claims

The Michigan Legislature, in enacting M.C.L. § 600.2946, specifically identified the elements of a design defect based product liability claim under

- 20 -

Michigan law. M.C.L. § 600.2946(2) requires a plaintiff to prove that a product was not reasonably safe at the time it left the seller's control, and that a practical and technically feasible alternative design existed at such time that would have prevented the harm suffered without impairing the usefulness and desirability of the product and without creating a greater risk of harm to others. *Id.* § 600.2946(2). Nowhere in § 600.2945 or § 600.2946 is the concept of a consumer expectation test included as a basis for recovery in product liability action under Michigan law.

Additionally, the Michigan Legislature created a rebuttable presumption that the manufacturer or seller is not liable if the aspect of the product that allegedly caused the harm was in compliance with regulations or standards promulgated by a federal agency. *Id.* § 600.2946(4). Evidence of non-compliance under § 600.4926(4), however, does not raise a presumption of defect on the part of the manufacturer or seller.

Conversely, Pennsylvania law allows a plaintiff, in a strict liability action, to prove her claim by the application of either the ordinary consumer's expectation or of the risk utility of the product. *Tincher*, 104 A.3d at 400-01. Furthermore, evidence of compliance with a government standard does not raise a presumption of a lack of defect in a product. Indeed, under *Gaudio* and *Lewis,* if still viable in light of *Tincher* such evidence is not admissible at all in strict liability actions. *See Gaudio*, 976 A.2d at 547; *Lewis*, 528 A.2d at 591.

- 21 -

There is no question that Michigan's governmental interests would be impaired by the application of Pennsylvania law. The Michigan legislature enacted M.C.L. § 600.2945 and § 2946 to protect Michigan citizens against harm and to define how Michigan citizens recover against product manufacturers — no matter where their products were originally made or designed.  Michigan's statutory framework for product liability claims exists for the benefit of both its citizens and those who do business here.  The argument that Michigan has no interest in seeing the recovery by a Michigan resident be denied or dismissed has been rejected by at least one Pennsylvania Court.  *See Henderson v. Merck & Co.,* 2005 WL 2600220 at *6 (E.D. Pa. 2005) (Michigan statute pertaining to liability of FDA-approved drugs existed for benefit of Michigan citizens as well as companies doing business in Michigan) *citing, Garcia v. Wyeth-Ayerst Laboratories,* 385 F.3d 961, 967 (6th Cir. 2004).

Michigan product liability statutes clearly define the elements and framework under which a product used in Michigan and that injures a Michigan resident in Michigan, is deemed to be defective.  They instruct that a product must be reasonably safe and must employ a feasible design that would have prevented the harm without impairing the usefulness of the product, and without increasing the risk of injury to others. Barring evidence of compliance with government

- 22 -

standards and permitting plaintiffs to invoke the consumer expectation test to prove their case under Pennsylvania unquestionably impairs Michigan's interests.

Reciprocally, Pennsylvania's governmental interest would be impaired by the application of M.C.L. § 600.2945 and § 2946. Michigan law does not allow plaintiffs to prove a product is defective by the application of a consumer expectation test, while Michigan law allows for the presumption that a product is not defective upon proof that it complies with an applicable government standard. Application of Pennsylvania law would result in the opposite.

### B.    Plaintiff's Negligent Infliction of Emotional Distress

Michigan's governmental interests would be impaired by the application of Pennsylvania law on negligent infliction of emotional distress. Michigan courts have repeatedly refused to expand negligent infliction of emotional distress. *Duran v Detroit News, Inc*., 200 Mich. App. 622, 629 (1993); *Taylor v Kurapati*, 236 Mich. App. 315, 360-61 (1999); *Teadt v Lutheran Church Missouri Synod*, 237 Mich. App. 567, 581 n.6 (1999). Applying Pennsylvania law here would expand liability for emotional injuries beyond that which Michigan Courts have allowed.

Pennsylvania's governmental interest however *would not* be impaired by the application of Michigan law. The only interest underlying this claim is the local law of the state where the injury occurred. *Wargelin*, 385 N.W.2d at 735 (Michigan "plaintiff must actually be present at the time of the accident"); *DeJesus,* 384 F.

- 23 -

Supp. 2d at 801 (Pennsylvania plaintiff must be "located near the scene of the accident"). A person would expect her alleged harm to be governed by the law of the place where the injury occurred. Conversely, Pennsylvania has no expectation that its law would govern the infliction of emotional distress that allegedly occurred to a foreign citizen, who is located in another state at the time the harm is suffered.

### C.    Plaintiffs' Fault

Michigan's governmental interests would be impaired by the application of Pennsylvania law concerning Plaintiffs' own fault. *See* M.C.L. § 600.2957. The Michigan legislature imposed pure comparative fault under a comprehensive statutory scheme, including the Michigan No-Fault Act, M.C.L. § 500.3101, and the Michigan Products Liability Act, M.C.L. § 600.2947.  These statutes clearly define Michigan's governmental interest for injuries to its citizens and in its borders.

Similarly, Pennsylvania's governmental interest would be impaired by the application of pure comparative fault under M.C.L. § 600.2957. Pennsylvania courts have ruled that evidence of the plaintiff's contributory negligence is generally inadmissible in strict products liability. *Gaudio*, 976 A.2d at 540.

For all of these conflicts, the Court should proceed to the next step and decide which State has the more significant contacts and a greater interest in

- 24 -

applying its law to the determination of liability. *See In re Tylenol (Acetaminophen) Mktg., Sales, Practices, & Prods. Liab. Litig.*, ___ F. Supp. ___, 2015 WL 2417411, at *2 (citing *Specialty Surfaces Intern. Inc.*, 609 F.3d at 229-36; *Hammersmith*, 480 F.3d at 229).

## IV.   The Non-Fortuitous Place of Injury Dictates Which State's Laws Apply.

Although in *Griffith*, the Pennsylvania Supreme Court abandoned the "lex loci delicti" rule in favor of a more flexible approach, where the place of injury was not fortuitous, "the place of the injury assumes much more importance, and in some instances may be determinative." *LeJeune v. Bliss-Salem, Inc.,* 85 F.3d 1069, 1072 (3d Cir. 1996) (quoting *Shuder v. McDonald's Corp.*, 859 F.2d 266, 272 (3d Cir. 1988). *See also Harsh v. Petroll,* 840 A.2d 404, 418 (Pa. Commw. Ct. 2003) (applying the law where the accident occurred (Pennsylvania), rather than the residence of either of the plaintiffs (Virginia) or the location of the product liability defendant General Motors (Michigan), in action against car manufacturer). In further support of this point, the Restatement (Second) Conflict of Laws § 146 makes clear:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the

principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.[5]

Graco anticipates that Plaintiffs will, as they have in their previous briefing, rely on selective facts and argue the TurboBooster® was designed exclusively in Pennsylvania.  In doing so, however, they would ignore every other factor in the *Restatement*.  While Pennsylvania courts have cautioned against merely counting the contacts, instead measuring them on a "qualitative … scale," there is no authority to support ignoring or overweighting any one factor over the others, *except in instances where an the place of injury is not fortuitous*.  In such instances, including this case, the place of injury is the only factor given greater weight than the other factors listed in § 145 of the Restatement.  *Calhoun v. Yamaha Motor Corp.*, 216 F.3d 338, 347 (3d Cir. 2000) (state of plaintiff's domicile had strongest interest in application of its laws); *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1072 (3d Cir. 1996) (affirming application of Delaware law to underlying liability when accident occurred in Delaware, plaintiff resided in

---

[5] Comment e to Restatement (2d) Conflict of Laws § 146 states:

> *When conduct and injury occur in different states.*  On occasion, conduct and personal injury will occur in different states.  In such instances, the local law of the state of injury will usually be applied to determine most issues involving the tort (see §145, Comments d-e, and §§156-166 and 172).  One reason for the rule is that persons who cause injury in a state should not ordinarily escape liability imposed by the local law of that state on account of the injury.  Moreover, the place of injury is readily ascertainable.  Hence, the rule is easy to apply and leads to certainty of result.

> The local law of the state where the personal injury occurred is most likely to be applied when the injured person has a settled relationship to that state, either because he is domiciled or resides there or because he does business there.

Pennsylvania, and relevant conduct occurred in multiple states); *Shuder v. McDonald's Corp.*, 859 F.2d 266, 272 (3d Cir. 1988) (under Pennsylvania choice-of-law rules, applying law of the place of the injury because "[t]he place of the accident was not fortuitous"); *Shields v. Consol. Rail Corp.*, 810 F.2d 397, 401 (3d Cir. 1987) (reversing trial court's choice of Pennsylvania law; applying Indiana law to contribution claim, when accident and plaintiff's residence were in Indiana, and defendants' headquarters were in Pennsylvania); *Blakesley v. Wolford,* 789 F.2d 236, 243 (3d Cir. 1986) (reversing trial court's choice of Pennsylvania law; applying Texas law to compensatory damages cap and informed consent, when plaintiff traveled to and was injured in Texas).

Here, the relevant facts are uncontested and overwhelming. There is no dispute that Plaintiffs and M.J. were residents of Michigan at the time of the collision. There is no dispute that they purchased two identical TurboBooster® seats from retail stores in Michigan, including the one here at issue and used these products almost exclusively in Michigan. There is no dispute that their relationship with Graco began and ended in Michigan.  There is no evidence that Plaintiffs ever visited Pennsylvania, much less lived there, and there is no evidence that M.J. was ever treated for her injuries in Pennsylvania. Since the time of the collision, M.J.'s medical care has been provided for exclusively under Michigan's No-Fault Insurance Act.

- 27 -

There is no authority in Pennsylvania, or from any other state for that matter, which minimizes, much less casts aside, the importance of the place of injury in determining which state's law applies in a product liability action. The place of injury is *always* given added weight when, as here, it is also where the injured party lives and where the injured party's relationship with the product arose.

Even in those cases relied upon by the Court for the application of Pennsylvania law to compensatory and punitive damages, the law of the place of injury still controlled the question of whether the defendant was liable, including the validity of any affirmative defenses. *Kelley v. Ford Motor Co.*, 938 F. Supp. 465, 471 (E.D. Pa. 1996); *Campbell v. Fawber*, 975 F. Supp. 2d 485, 508 (E.D. Pa. 2013) (holding that while Michigan law applied to bar plaintiff's punitive damages claims, "Pennsylvania law (the state in which plaintiff lived and was injured) will control for all remaining issues in this matter"). In fact, *Kelley* went on in a subsequent decision to apply Pennsylvania law to the Ford's affirmative defenses. *See Kelley v. Ford Motor Co.*, No. CIV. A. 94-257, 1996 WL 639832, at *1-11 (E.D. Pa. Oct. 29, 1996) (applying Pennsylvania law to Ford's affirmative defense of seat belt use); s*ee also Campbell,* 975 F. Supp. at 495-96 (applying Pennsylvania law to plaintiff's strict liability and crashworthiness claims). There simply is no case decided under Pennsylvania's choice-of-law rules that dictates that Pennsylvania law should govern the determination of liability in this case.

## V.    Graco's Conduct Was Not Centered in Pennsylvania Concerning Plaintiffs' Allegations of Design Defect.

Plaintiffs' contention that the TurboBooster® was designed exclusively in Pennsylvania overemphasizes the activities which occurred there.  While the much of the original concept and design of the TurboBooster® took place in Pennsylvania, activities occurring in many other states and countries contributed to the design of the actual TurboBooster® purchased by Plaintiffs in 2010 in Michigan.

For example, the TurboBooster® was tested in simulated frontal impacts in Michigan, Ohio, New York, Wisconsin, Virginia, and outside the United States in Finland and China.  *See* ECF #51-1, Ex. S (excerpts of various test reports for the TurboBooster®).  Decisions about revising the headrest and shoulder belt guide took place in Europe and China, in addition to Pennsylvania. Finally, the decision to continue using the headrest and shoulder belt guide when M.J.'s TurboBooster® was made in November, 2009 was made in Georgia, when Graco was headquartered there, as opposed to Pennsylvania.

The issue Plaintiffs say Graco identified in the "failure" of the belt guide design came from testing performed in Europe, using the European, as opposed to the U.S. standard applicable to M.J.'s child seat.  The alternative designs created in Europe and China attempted to address the issue raised by the European testing. Contrary to Plaintiffs' assertions, the design work on the TurboBooster®'s belt

guide and headrest did not occur exclusively in Pennsylvania.   Instead, the decisions that went into the design of the headrest and belt guide used on M.J.'s seat occurred in Georgia, China and Europe, in addition to Pennsylvania.

Pennsylvania and many other jurisdictions following the Restatement (Second) of Conflict of Laws make clear that "where conduct causing an injury may have occurred in multiple states, the law of the place of injury should control." *Wahl v. Gen. Elec. Co.*, 983 F. Supp. 2d 937, 946 (M.D. Tenn. 2013); *McIlvaine v. Ford Motor Co*., No. 2:12-CV-111-DBH, 2013 WL 588934, at *1 n.4 (D. Me. Feb. 13, 2013); *Price v. Litton Sys., Inc*., 784 F.2d 600, 604 (5th Cir. 1986); *Duchesneau v. Cornell Univ*., No. CIV.A. 08-4856, 2012 WL 3104428, at *4 (E.D. Pa. July 31, 2012); *Black v. Toys R US-Delaware, Inc*., No. 4:08-CV-3315, 2010 WL 4702344, at *16 (S.D. Tex. Nov. 10, 2010); *Townsend v. Sears, Roebuck & Co*., 879 N.E.2d 893, 903 (Ill. 2007).  Accordingly, given the diversity of states, and countries in which conduct relating to the design of the TurboBooster® occurred, the state in which the injury occurred and the domicile of Plaintiffs, here Michigan is the state with the greatest interest in Plaintiffs' design defect-based claims.

## VI.   Ms. Jermano's Negligent Infliction of Emotional Distress Claim Should Be Governed by Michigan Law.

Plaintiff Dory Jermano's negligent infliction of emotional distress claim rests on a different factual allegation and distinct legal concept than her claims

based on a defect in the TurboBooster®. Pls.' Compl. ¶¶ 39-43.  As such, it constitutes a separate injury that occurred in Michigan.  As such, it is another "place of injury" that weighs in favor of the application of Michigan law.

Ms. Jermano alleges negligent infliction of emotional distress because she "directly and contemporaneously witnessed" M.J.'s injuries after their severe accident in Michigan. *Id.* at ¶ 41. At the moment she witnessed the accident and M.J.'s injuries, Ms. Jermano could not have any perception or expectation that Graco's alleged conduct in designing the TurboBooster somehow contributed to the extent of  M.J.'s injuries. Instead, Ms. Jermano allegedly had witnessed the injuries sustained by her child as a result of the tortious conduct of a driver who crossed the centerline and struck their vehicle head-on at highway speeds.

Within this context, the law in both Michigan and Pennsylvania distinguishes Ms. Jermano's negligent infliction claim from her product liability claims brought on behalf of M.J. because Ms. Jermano was a bystander who witnessed M.J.' injury in a motor vehicle accident. *Wargelin*, 385 N.W.2d at 735 (Michigan "plaintiff must actually be present at the time of the accident"); *DeJesus,* 384 F. Supp. 2d at 801 (Pennsylvania plaintiff must be "located near the scene of the accident"). Her bystander claim arises exclusively in Michigan: Ms. Jermano, as a Michigan resident, was involved in a Michigan car accident, observed the injuries in Michigan to M.J. arising out of that conduct, and suffered

emotional distress in Michigan. Michigan law therefore must apply to Ms. Jermano's claim of negligent infliction of emotional distress.

## **CONCLUSION**

To apply Pennsylvania law to the remaining claims in this case would create an extraordinary, unprecedented rule. Accepting Plaintiffs' position, the law applicable to a design defect claim would turn on where that product was designed. Plaintiffs would have no way of knowing at the outset of their case which state's laws apply, as it is often the case that only after extensive discovery, as had occurred here, would a plaintiff be in a position to know which state's laws applied, and whether or not such laws supported her claims. It would unwittingly impose other state's laws on Michigan residents when they are injured in Michigan by products they purchased and used entirely in Michigan, but where designed elsewhere. Such a rule bends the limits on choice-of-law rules beyond their breaking point.

For all the foregoing reasons, Defendant Graco Children's Products, Inc. respectfully requests that this Court apply the laws of the State of Michigan to the determination of liability with respect to Plaintiffs' claims and Graco's affirmative defenses.

Dated: June 26, 2015                Respectfully submitted,

                                    By: /s/ Joseph J. Krasovec

SCHIFF HARDIN LLP                   SCHIFF HARDIN LLP
Gregory L. Curtner (P12414)         Joseph J. Krasovec, III (6201456)
Jessica A. Sprovtsoff (P70218)      233 South Wacker Drive
350 S. Main Street                  Suite 6600
Suite 210                           Chicago, IL 60606
Ann Arbor, MI 48104                 312-258-5500 (Phone)
734-222-1518 (Phone)                312-258-5600 (Fax)
734-222-1501 (Fax)                  jkrasovec@schiffhardin.com (E-mail)
gcurtner@schiffhardin.com (E-mail)
jsprovtsoff@schiffhardin.com (E-mail)

*Attorneys for Defendant Graco Children's Products, Inc.*

- 33 -

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on June 26, 2015, he caused the foregoing documents to be served on all counsel of record via the Court's ECF system.

/s/ Joseph J. Krasovec
Joseph J. Krasovec

10808-1496
CH2\16747684.3