# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JOSEPH JERMANO, et al.,

      Plaintiffs,

v.

GRACO CHILDREN'S PRODUCTS, INC.,

      Defendant.

Case No. 13-10610

Hon. Matthew F. Leitman
Hon. Mag. Mona K. Majzoub

Raymond D. Gentile
Douthit, Frets, Rouse, Gentile
& Rhodes, LLC
5250 W. 116th Place, Suite 400
Leawood, Kansas 66211
913.387.1600
dgentile@dfrglaw.com
Attorneys for Plaintiffs

Robert F. Garvey (P24897)
Thomas, Garvey & Garvey
24825 Little Mack Avenue
St. Clair Shores, Michigan 48080
586.779.7810
bobgarvey@me.com
Attorneys for Plaintiffs

Joseph J. Krasovec
Schiff Hardin LLP
233 S. Wacker Drive, Suite 6600
Chicago, Illinois 60606
312.258.5500
jkrasovec@shiffhardin.com
Attorneys for Defendant

Gregory L. Curtner (P12414)
Jessica A. Sprovtsoff (P70218)
Schiff Hardin LLP
350 S. Main Street, Suite 210
Ann Arbor, Michigan 48104
734.222.1518
gcurtner@schiffhardin.com
jsprovtsoff@schiffhardin.com
Attorneys for Defendant

# PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THE APPLICATION OF PENNSYLVANIA LAW TO ISSUES OF LIABILITY, AND IN OPPOSITION TO DEFENDANT'S REQUEST THAT ISSUES OF LIABILITY BE GOVERNED BY MICHIGAN LAW

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.......................................................................... iii

STATEMENT OF QUESTIONS PRESENTED ...................................... vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY ......................... viii

STATEMENT OF FACTS............................................................................. 2

LEGAL STANDARDS – CHOICE OF LAW RULES ............................................ 6

ARGUMENT ..................................................................................................... 9

I.    PENNSYLVANIA LAW APPLIES TO THE JERMANOS' STRICT
LIABILITY CLAIM ...................................................................................... 9

    A.    The Laws of Pennsylvania and Michigan Conflict with Respect
to Claims for Strict Products Liability.................................................... 9

    B.    A False Conflict Exists Between the Laws of Pennsylvania and
Michigan with Respect to the Claim for Strict Products
Liability Because Only Pennsylvania's Interests Would Be
Otherwise Impaired.................................................................................. 10

    C.    Assuming for Argument Sake that a True Conflict Exists
Between the States' Strict Liability Laws, Pennsylvania Law
Still Applies Because it Has More Relevant Contacts With, and
Has a Greater Interest in, the Alleged Wrongdoing ............................ 14

II.    PENNSYLVANIA LAW APPLIES TO THE JERMANOS'
NEGLIGENCE CLAIM FOR DESIGN DEFECT....................................... 18

    A.    The Laws of Pennsylvania and Michigan Conflict with Respect
to Claims for Design Defect Liability .................................................. 19

        1)    Michigan law............................................................................ 19

        2)    Pennsylvania law....................................................................... 20

B.    A False Conflict Exists Between the Laws of Pennsylvania and Michigan with   Respect to the Claim for Design Defect Because Only Pennsylvania's Interests Would Be Otherwise Impaired ................................................................... 22

C.    Assuming for Argument Sake that a True Conflict Exists Between the Product Liability Laws of Pennsylvania and Michigan, Pennsylvania Law Applies Because it Has More Relevant Contacts With, and Has a Greater Interest in, the Alleged Wrongdoing .......................................................... 24

III.   NO CONFLICT EXISTS BETWEEN PENNSYLVANIA LAW AND MICHIGAN LAW WITH RESPECT TO DORY'S NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM ................................ 30

CONCLUSION ................................................................................... 33

# TABLE OF AUTHORITIES

## Cases

*Air Prods.& Chemicals, Inc. v. Eaton Metal Prods., Co.*,
    272 F. Supp. 2d 482 (E.D. Pa. 2003) .................................................................. 6, 31

*Barnes v. Owens-Corning Fiberglas Corp.*,
    201 F.3d 815 (6th Cir. 2000) .................................................................. 22

*Berg Chilling Sys., Inc. v. Hull Corp.*,
    435 F.3d 455 (3d Cir. 2006)................................................................. passim

*Botek v. Mine Safety Appliance Corp.*,
    531 Pa. 160, 611 A.2d 1174 (Pa. Sup. Ct. 1992)................................. 32

*Byrne v. Schneider's Iron & Metal, Inc.*,
    190 Mich. App. 176, 475 N.W.2d 854 (1991)...................................... 29

*Cipolla v. Shaposka*,
    439 Pa. 563, 267 A.2d 854 (1970) ........................................................ 6

*Coram Healthcare Corp. v. Aetna U.S. Healthcare Inc.*,
    94 F. Supp. 2d 589 (E.D. Pa. 1999) ................................................. passim

*Gaudio v. Ford Motor Co.*,
    2009 Pa. Super. 102, 976 A.2d 524 (2009).......................................... 21

*Griffith v. United Air Lines, Inc.*,
    416 Pa. 1, 203 A.2d 796 (1964) .................................................... vii, 7, 8

*In re Disaster at Detroit Metro. Airport*,
    750 F. Supp. 793 (E.D. Mich. 1989)................................................ passim

*Johnson v. Chrysler Corp.*,
    74 Mich. App. 532, 254 N.W.2d 569 (1977)........................................ 9

*Lacey v. Cessna Aircraft Co.*,
    932 F.2d 170 (3rd Cir. 1991) ......................................................... passim

*Laconis v. Burlington County Bridge Comm.*,
  583 A.2d 12182 (Pa. Super. 1990)..............................................................vii, 26

*LeJeune v. Bliss-Salem, Inc.*,
  85 F.3d 1069 (3d Cir. 1996)....................................................................passim

*Lewis v. Coffing Hoist Division, Duff-Norton Co., Inc.*,
  515 Pa. 334, 528 A.2d 590 (1987) ....................................................................21

*Love v. Cramer*,
  414 Pa. Super. 231, 606 A.2d 1175 (1992).....................................................vii, 31

*Mazzagatti v. Everingham by Everingham*,
  512 Pa. 266, 516 A.2d 672 (1986) ....................................................................31

*Melville v. Am. Home Assur. Co.*,
  584 F.2d 1306 (3d Cir. 1978)..............................................................................7

*Owens v. Allis-Chalmers Corp.*,
  414 Mich. 413, 326 N.W.2d 372 (1982).............................................................19

*Prentis v. Yale Manufacturing Co.*,
  421 Mich. 670, 365 N.W.2d 176 (1984).......................................................passim

*Radeljak v. DaimlerChrysler Corp.*,
  475 Mich. 598, 719 N.W.2d 40 (2006)................................................................9

*Redland Soccer Club v. Dep't of the Army of the United States*,
  55 F.3d 827 (3d Cir. 1995).................................................................................32

*Reyno v. Piper Aircraft Co.*,
  630 F.2d 149 (3d Cir. 1980), *rev'd on other grounds*, 454 U.S. 235 (1981) vii, 12

*Sinn v. Burd*,
  486 Pa. 146, 404 A.2d 672 (1979) .............................................................vii, 31

*Taylor v. Mooney Aircraft Corp.*,
  265 Fed. Appx. 87 (3d Cir. 2008).......................................................................8

*Tincher v. Omega Flex*,
  ___ Pa. ___, 104 A.3d 328, 2014 Pa. LEXIS 3031 (Nov. 19, 2014) ...........passim

iv

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964)............................................................................ 6

*Wargelin v. Sisters of Mercy Health Corp.,*
    149 Mich. App. 75, 385 N.W.2d 732 (1986)................................vii, 32

*Welch v. Outboard Marine Corp.,*
    481 F.2d 252 (5th Cir. 1973) .......................................................... 21

## Statutes

Mich. Comp. Laws Ann. § 600.2946(2) ................................................ 19

Mich. Comp. Laws Ann. § 600.2946(4) ................................................ 20

Mich. Comp. Laws Ann. § 600.2947(2) ................................................ 20

## Other Authorities

Restatement (Second) of Conflict of Laws ............................................. 7

Restatement (Second) Conflict of Laws § 145(2)..................................... 8

## Rules

Federal Rule of Civil Procedure 10(c) .................................................... 2

## STATEMENT OF QUESTIONS PRESENTED

I.   WHERE THE WRONGDOING IN THIS CASE CENTERS ON DEFENDANT'S DEFECTIVELY DESIGNED TURBOBOOSTER, AND ONLY PENNSYLVANIA LAW WOULD BE IMPAIRED BY THE APPLICATION OF MICHIGAN LAW BECAUSE DEFENDANT'S WRONGFUL CONDUCT OCCURRED IN PENNSYLVANIA, WHICH WAS THE LOCATION OF DEFENDANT'S HEADQUARTERS AT THE TIME, AND PENNSYLVANIA HAS A STRONG POLICY INTEREST IN KEEPING CONSUMERS SAFE FROM PRODUCTS DEFECTIVELY DESIGNED WITHIN ITS BORDERS, WHILE MICHIGAN POLICY IS TO PROTECT BUSINESSES WITHIN ITS OWN BORDERS, DOES

   A.   A FALSE CONFLICT EXIST BETWEEN PENNSYLVANIA'S AND MICHIGAN'S STRICT LIABILITY LAWS, SUCH THAT PENNSYLVANIA LAW MUST BE APPLIED, AND

   B.   A FALSE CONFLICT EXIST BETWEEN PENNSYLVANIA'S AND MICHIGAN'S DESIGN DEFECT LAWS, SUCH THAT PENNSYLVANIA LAW MUST BE APPLIED.

| | |
|---|---|
| The Jermanos Answer: | Yes. |
| Defendant Answers: | No. |
| This Court Should Answer: | Yes. |

II.   WHERE THE WRONGDOING IN THIS CASE CENTERS ON DEFENDANT'S DEFECTIVELY DESIGNED TURBOBOOSTER, AND ALL DECISIONS RELEVANT TO THE DESIGN CHOICE WERE MADE IN PENNSYLVANIA, WHICH, AT THE TIME OF THE DESIGN, ADMITTEDLY WAS THE LOCATION OF DEFENDANT'S HEADQUARTERS, AND

   WHERE PENNSYLVANIA HAS A STRONG INTEREST IN PROTECTING CONSUMERS FROM DEFECTIVE PRODUCTS DESIGNED WITHIN ITS BORDERS, WHILE MICHIGAN HAS NO INTEREST IN PROTECTING OUT-OF-STATE SUPPLIERS SUCH AS DEFENDANT UNDER

MICHIGAN'S PRODUCER PROTECTIVE POLICY, SUCH THAT THE JERMANOS HAVE OVERCOME THE PRESUMPTION THAT THE LOCATION OF THE INJURY CONTROLS,

**A.** ASSUMING A TRUE CONFLICT EXISTS BETWEEN PENNSYLVANIA'S AND MICHIGAN'S STRICT LIABILITY LAWS, SHOULD PENNSYLVANIA LAW BE APPLIED BECAUSE IT IS THE STATE WITH THE MOST RELEVANT CONTACTS AND THE GREATER INTEREST IN HAVING ITS LAW APPLIED, AND

**B.** ASSUMING A TRUE CONFLICT EXISTS BETWEEN PENNSYLVANIA'S AND MICHIGAN'S DESIGN DEFECT LAWS, SHOULD PENNSYLVANIA LAW BE APPLIED BECAUSE IT IS THE STATE WITH THE MOST RELEVANT CONTACTS AND THE GREATER INTEREST IN HAVING ITS LAW APPLIED.

The Jermanos Answer:     Yes.

Defendant Answers:     No.

This Court Should Answer:     Yes.

**III.** WHETHER THE COURT SHOULD AVOID THE CHOICE OF LAW ISSUE WITH RESPECT TO DORY'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, WHERE NO CONFLICT EXISTS BETWEEN THE STATE'S RESPECTIVE LAWS REGARDING SUCH A CLAIM.

The Jermanos Answer:     Yes.

Defendant Answers:     No.

This Court Should Answer:     Yes.

vii

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Berg Chilling Sys., Inc. v. Hull Corp.,*
     435 F.3d 455 (3d Cir. 2006)

*Coram Healthcare Corp. v. Aetna U.S. Healthcare Inc.,*
     94 F. Supp. 2d 589 (E.D. Pa. 1999)

*Griffith v. United Air Lines, Inc.,*
     416 Pa. 1, 203 A.2d 796 (1964)

*In re Disaster at Detroit Metro. Airport,*
     750 F. Supp. 793 (E.D. Mich. 1989)

*Lacey v. Cessna Aircraft Co.,*
     932 F.2d 170 (3rd Cir. 1991)

*Laconis v. Burlington County Bridge Comm.,*
     583 A.2d 12182 (Pa. Super. 1990)

*LeJeune v. Bliss-Salem, Inc.,*
     85 F.3d 1069, 1071 (3d Cir. 1996)

*Love v. Cramer,*
     414 Pa. Super. 231, 606 A.2d 1175 (1992)

*Prentis v. Yale Manufacturing Co.,*
     421 Mich. 670, 365 N.W.2d 176 (1984)

*Reyno v. Piper Aircraft Co.,*
     630 F.2d 149 (3d Cir. 1980), *rev'd on other grounds*, 454 U.S. 235 (1981)

*Sinn v. Burd,*
     486 Pa. 146, 404 A.2d 672, 685 (1979)

*Tincher v. Omega Flex,*
     ___ Pa. ___, 104 A.3d 328, 2014 Pa. LEXIS 3031 (Nov. 19, 2014)

*Wargelin v. Sisters of Mercy Health Corp.,*
     149 Mich. App. 75, 385 N.W.2d 732 (1986)

This Court is not writing on a clean slate in deciding whether to apply Pennsylvania or Michigan substantive law to Plaintiffs' ("the Jermanos") claims for strict products liability and design defect. Indeed, in ruling that Pennsylvania law governs the allocation of fault and the Jermanos' damages in this case, this Court has issued two comprehensive Opinions and Orders which involve several of the considerations relevant to the inquiry now before the Court. (D.E. 48, Pg ID 824-854; D.E. 1215-1224) Despite these decisions and the record leading up to them, Defendant Graco Children's Products, Inc.'s Supplemental Brief in support of the application of Michigan substantive law to this case, improperly argues as though Court's prior rulings do not exist, and indeed attempts to rewrite the record.

For the reasons set forth below, as well as for all of the reasons set forth in this Court's prior decisions and briefing in this case, Pennsylvania substantive law controls the Jermanos' claims for strict products liability and design defect where, even assuming for argument sake that a true conflict exists between the laws of Pennsylvania and Michigan with respect to these claims, the relevant contacts with the wrongdoing—Defendant's defectively designed TurboBooster that caused Mia's catastrophic injuries—all point to Pennsylvania, and it is the State that has the greatest interest in the wrongdoing.[1]

---

[1]     Plaintiff Dory Ann Jermano's claim for negligent infliction of emotional distress should not be the subject of this choice of law analysis. *See* Argument, Part III. *infra*.

1

## STATEMENT OF FACTS

Pursuant to Federal Rule of Civil Procedure 10(c), the Jermanos hereby adopt by reference and incorporate herein their Supplemental Brief filed on January 13, 2015, including but not limited to the Statement of Facts section as well as all exhibits. (D.E. 35, Pg ID 404-450, and all documents filed under seal) In addition, the Jermanos have attached under seal "Exhibit C and its subparts" previously filed with their Supplemental Brief, not only for the Court's ease of reference, but also to demonstrate the numerous misrepresentations made in Defendant's current Supplemental Brief.

For example, Defendant suggests that the European testing of the TurboBooster revealed that the belt was coming out of the guide only with ten-year-old dummies. (D.E. 62, Pg ID 1285-1286) This suggestion misrepresents the truth because, in actuality, there are 38 documented instances of shoulder belt guide failures involving ten, six, and four-year-old dummies, all of which occurred *prior* to the time the subject TurboBooster failed and caused Mia's injuries. (Ex. 1, Summary of Documented Instances)   In addition, Defendant also erroneously claims that the first guide failures occurred in 2004.  As Exhibit C demonstrates, the initial belt guide failures were documented as of November 19, 2002, and the first design change intended to correct the problem was made shortly after these initial failures, *in Pennsylvania*, on November 25, 2002 with absolutely no

2

involvement by anyone in Europe. One of Defendant's engineers in Pennsylvania implemented this change on both the U.S. and the European seats on December 4, 2002. (Ex. C-6) And notably, this Revision B belt guide is the belt guide that was on Mia's TurboBooster. This Revision B belt guide then began failing in tests conducted in 2003, and continued to fail with dummies that included far more three and six-year-olds than ten-year-olds. (Ex. 1)

Similarly, Defendant's claim that the initial design change to prevent guide failures was limited to European products (D.E. 62, Pg ID 1286, first full paragraph), also defies the truth. The first design change to address the problem associated with the belt guide actually did apply to both U.S. and European seats. (Ex. C-6) In addition, the second design change, the one mentioned by Defendant in its Supplemental Brief, is referenced in Exhibit C in the May 17, 2005 entry. The ECN for the referenced design change clearly and expressly specified that it would apply to BOTH European and U.S. seats. (Ex. C-12, p 3)

Yet another misrepresentation to this Court is Defendant's assertion that *China* proposed a redesign of the belt guide. (D.E. 62, Pg ID 1286, bottom paragraph) In support of this falsity, Defendant cites to the Jermanos Exhibit C-15. (*Id.*) An examination of this document fails in every respect to support Defendant's assertion. Instead, the document establishes that, as to the belt guide present on Mia's TurboBooster, a safety concern – documented at a safety review

3

meeting held in Pennsylvania by Pennsylvania engineers – exists because the "belt guide does not seem structurally supported to withstand shoulder belt crash load." (Ex. C-15)  To be sure, Exhibit C-15 stands for no other proposition.

The misrepresentations continue in Defendant's Supplemental Response when Defendant suggests that some specific decision was made on November 21, 2009 not to equip Mia's seat with the new design.  (D.E. 62, Pg ID 1287)  The record is devoid of any evidence to support this assertion.  Instead, the evidence demonstrates that, on August 31, 2007, a full two years earlier, Defendant's design engineers and managers, in Pennsylvania exclusively, recommended that the new design be incorporated into the U.S. seats.  (Ex. C, 8/31/07 entry and referenced exhibits)  This recommendation was again made in Pennsylvania by Defendant's engineers on October 1, 2007.  Despite these recommendations made in 2007, the decision was made to only implement the "new" design in Europe.  Defendant provides nothing to support the 2009 date.  And, as Exhibit C demonstrates, in any event, all decisions relating to the TurboBooster's design were made by Defendant's "Sustaining Engineering" group in Pennsylvania, even after Defendant's headquarters were relocated to Georgia.  (Ex. C, 4/10 entry)

Indeed, as set forth in the Jermanos' previously filed Supplemental Brief, testimony from Defendant's design engineers in Pennsylvania establish that design decisions made with respect to the TruboBooster, occurred in Pennsylvania.

4

Charles Crane, Defendant's design engineer and one of the TurboBooster's "inventors," testified that the TurboBooster was designed to protect a child from injury in the event of crash, the likes of which the Jermanos experienced on that fateful day. (Ex. C-24, p20, L4-18)  As Crane explained, the "entire point" of the TurboBooster is to "get protection" for a "child in the event there is an accident . . . to keep a child as safe as possible and minimize the danger to a child in an accident." (Ex. C-24, p22, L11–p 23, L. 5).  As explained by Steve Gerhart, Defendant's test and compliance manager from the date the TurboBooster was designed in 2001 through November, 2003, the TurboBooster "boosts" the child above the vehicle's seat, thereby positioning the child in such a manner that the lap/shoulder seat belts in the vehicle, designed primarily for adults, will stay on the strong, skeletal parts of the child's body before and during a crash event. (Ex. C-14, p32, L3-9; p45, L13–p46, L 21)  Gerhart is well-familiar with the TurboBooster's design, as he was test manager when the exact part at issue in this case, the "Revision B" version of the seat's "shoulder belt guide," was designed and put into production. (Ex. C-14, p6, L17- p7, L7; Ex. C-5)

Accordingly, despite Defendant's misrepresentations and attempt to rewrite history, the record undeniably demonstrates that the relevant acts associated with the wrongdoing in this case occurred in Pennsylvania.

## LEGAL STANDARDS – CHOICE OF LAW RULES

This Court, as the transferee court, must apply the choice of law rules of the transferor state, Pennsylvania. *See Van Dusen v. Barrack*, 376 U.S. 612, 637-42 (1964). Pennsylvania's choice of law rules require that a court avoid the choice of law question if the laws of the competing states would produce the same result. *See Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006); *see also Air Prods.& Chemicals, Inc. v. Eaton Metal Prods., Co.*, 272 F. Supp. 2d 482, 490 n.9 (E.D. Pa. 2003) (noting that if no conflict exists, the law of the forum is to be applied). If, however, the laws of the relevant states would produce different results, then the Court must determine whether a "false conflict" or a "true conflict" exists. A false conflict exists where "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3rd Cir. 1991). In that situation, the Court should "apply the law of the state whose interests are truly implicated by the particular cause of action." *Coram Healthcare Corp. v. Aetna U.S. Healthcare Inc.*, 94 F. Supp. 2d 589, 594 (E.D. Pa. 1999). A true conflict exists where "the interests of each state would be impaired if the law of the other is given effect." *Id*. If a "true conflict" exists, then a court must decide "which state has the greater interest in the application of its law." *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854, 856 (1970).

When faced with a "true conflict," Pennsylvania follows a "flexible rule" in deciding which state's law applies. Indeed, in the seminal case of *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796, 805 (1964), the Pennsylvania Supreme Court abandoned the traditional *lex loci delicti* conflicts rule in which the law of the place of the wrong governed the substantive rights and liabilities of the parties. The court instead adopted the "more flexible rule" which has evolved into a hybrid approach that "combines the approaches of both Restatement [(Second) of Conflict of Laws] (contacts establishing significant relationships) and 'interest analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy)." *Melville v. Am. Home Assur. Co.*, 584 F.2d 1306, 1311 (3d Cir. 1978) (citing *Griffith*, 203 A.2d at 805). *See also Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216, 219 (3d Cir. 2005) (recognizing that when applying Pennsylvania choice of law rules, a court "should use the Second Restatement of Conflict of Laws as a starting point, and then flesh out the issue using an interest analysis").

The Restatement (Second) of Conflict of Laws states that, with respect to a tort claim, the choice of law should be determined by the law of the state that "has the most significant relationship to the occurrence and the parties." *Id.* § 145(1). In determining which state has the most significant relationship, a court should consider the following contacts, including: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the

7

domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) Conflict of Laws § 145(2). These contacts are measured qualitatively, not quantitatively. *Coram*, 94 F. Supp. 2d at 594.

Finally, in keeping with *Griffith's* pronouncement that Pennsylvania's choice of law analysis focuses on "the policies and interests underlying the particular issue before the court," *Griffith*, 203 A.2d at 805, the Third Circuit concluded that Pennsylvania's choice of law analysis employs depecage, which is the principle whereby "different states' laws may apply to different issues in a single case." *Berg Chilling Sys.*, 435 F.3d at 462.

In its Supplemental Brief, Defendant acknowledges that this Court must apply Pennsylvania's choice of law rules and, in doing so, must therefore apply depecage. (Defendant's Supp. Brief, D.E. 62, Pg ID 1282, 1290) Despite this acknowledgement of the relevant law, Defendant fails to properly analyze the Jermanos' claims. That is, Defendant fails to separately analyze the Jermanos' claim for strict liability design defect (Count I), and instead speaks only to the design defect claim in terms of negligence (Count II). Thus, in keeping with the requirements of Pennsylvania choice of law rules, the Jermanos will analyze each claim, including the strict liability claim, separately. *See Taylor v. Mooney Aircraft Corp.*, 265 Fed. Appx. 87, 91 (3d Cir. 2008) (admonishing the district

8

court for improperly framing its "choice of law analysis in terms of 'this litigation' and 'this action' as a whole," as opposed to separately analyzing the issues).

## ARGUMENT

## I.  PENNSYLVANIA LAW APPLIES TO THE JERMANOS' STRICT LIABILITY CLAIM.

Count I of the Jermanos' Complaint alleges "Strict Liability" against Defendant as the TurboBooster was "defective" in its "design" thereby making it "unreasonably dangerous."  (D.E. 1-3, Pg ID 22-23)  As set forth below, under controlling precedent, a false conflict exits with respect to this claim, such that Pennsylvania law must be applied because only its interests would otherwise be impaired.

### A.  The Laws of Pennsylvania and Michigan Conflict with Respect to the Claim for Strict Products Liability.

Michigan "has refused to adopt the doctrine of strict liability in tort for product defects."  *In re Disaster at Detroit Metro. Airport*, 750 F. Supp. 793, 800(E.D. Mich. 1989) (citing *Prentis v. Yale Manufacturing Co.*, 421 Mich. 670, 682 n. 9, 687 n. 24, 365 N.W.2d 176, 181 n. 9, 184 n. 24 (1984)); *see also Radeljak v. DaimlerChrysler Corp.*, 475 Mich. 598, 612 n.10, 719 N.W.2d 40, 47 n.10 (2006) ("[A]ll but 6 of the 50 American States—Delaware, Massachusetts, Michigan, North Carolina, Virginia, and Wyoming—offer strict liability."); *Johnson v. Chrysler Corp.*, 74 Mich. App. 532, 535, 254 N.W.2d 569, 571 (1977)

9

("We find no error in the dismissal of the strict liability count."). Instead, "the proper test for determining a manufacturer's liability for defective design is negligence." *Prentis,* 421 Mich. at 687 n. 25, 365 N.W.2d at 184 n. 25.

Pennsylvania, on the other hand, recognizes a claim for strict products liability. *See LeJeune v. Bliss-Salem, Inc.,* 85 F.3d 1069, 1071 (3d Cir. 1996); *see also Tincher v. Omega Flex,* ___ Pa. ___, 104 A.3d 328, 358, 2014 Pa. LEXIS 3031 (Nov. 19, 2014) (recognizing that "Pennsylvania remains a Second Restatement jurisdiction" with respect to "§ 402A Strict Liability")

Thus, because Michigan law does not recognize a claim for strict products liability, but Pennsylvania law does, a conflict exits.

**B.    A False Conflict Exists Between the Laws of Pennsylvania and Michigan with Respect to Claims for Strict Products Liability Because Only Pennsylvania's Interests Would Be Otherwise Impaired.**

"Michigan's negligence risk-utility products liability law reflects a producer protective policy." *In re Disaster at Detroit Metro. Airport*, 750 F. Supp. 793, 801 (E.D. Mich. 1989). This judicial district has recognized that this "producer protective policy" is "designed to induce companies to conduct business in Michigan by protecting domiciled producers from excessive financial liability." *Id.* The court reasoned that "[b]y protecting the economic health of companies that conduct business in Michigan, the state derives substantial revenues in sales and taxes, directly and indirectly, and furthers the economic well-being of the entire

10

state." *Id.* Notably, however, "Michigan simply has no interest in applying its law to protect a foreign state producer that supplies products for a company doing business in that state." *Id.* at 801. With respect to consumers, "Michigan's products liability law, which reflects a policy favoring producers, is not conversely designed to punish its plaintiff-consumers. Michigan's negligence risk-utility doctrine is, for choice of law purposes, consumer neutral." *Id.* at 801 n.16.

Conversely, Pennsylvania law recognizes strict products liability to protect consumers "from defective products and to encourage manufacturers to produce safe products." *LeJeune*, 85 F.3d at 1071. Thus, applying Michigan law to this case would impair Pennsylvania's interests in protecting consumers. But applying Pennsylvania law would not impair Michigan's interests because, as indicated, "Michigan simply has no interest in applying its law to protect a foreign state producer that supplies products for a company doing business in that state." *In re Disasterr*, 750 F. Supp. at 801. And there is no dispute that Defendant is a "foreign state producer" that supplies its products, including the TurboBooster at issue, for companies doing business in Michigan. A false conflict therefore exists. *See Lacey*, 932 F.2d at 188.

Indeed, *Lacey* supports this conclusion. In *Lacey,* as in this case, a conflict existed between the laws of Pennsylvania and British Columbia because "Pennsylvania has adopted strict liability, whereas British Columbia has not." *Id.*

11

The Third Circuit noted that, "[a]pplying Pennsylvania law of strict liability would further Pennsylvania's interest in deterring the manufacture of defective products and in shifting the costs of injuries onto producers, but would not impair British Columbia's interest in fostering industry within its borders." *Id.* "Conversely," however, "applying British Columbia's negligence standard would not serve British Columbia's interest, but would harm Pennsylvania's interest." *Id.* As a result, the Third Circuit concluded that the case "present[ed] a false conflict," and the district court should apply Pennsylvania law because it was "the jurisdiction whose interests would be damaged if its law were not applied." *Id.*

In reaching this conclusion, the Third Circuit relied upon its previous decision in *Reyno v. Piper Aircraft Co.*, 630 F.2d 149 (3d Cir. 1980), *rev'd on other grounds*, 454 U.S. 235 (1981)[2]. *Piper* involved the crash of a Piper aircraft in Scotland in July 1976. The plane was owned by a Scottish air taxi service, the passengers and crew of which were Scottish. *Id.* at 154. Gaynell Reyno, as personal representative of the estates of various Scottish decedents, sued on their behalf, and named as one of the defendants Piper Aircraft Corp., a Pennsylvania corporation that manufactured the aircraft. *Id.* The wrongful death action was based on theories of strict liability and negligence. *Id.*

---

[2]     The Supreme Court reversed *Reyno* because it rejected the Third Circuit's forum *non conveniens* analysis; the Court did not reject the Third Circuit's choice of laws analysis. *See Reyno*, 454 U.S. at 260.

12

On appeal to the Third Circuit following a dismissal based on forum *non conveniens* grounds, the Court was faced with whether to apply Pennsylvania law, which recognizes a claim for strict products liability, or Scotland's negligence law, which did not recognize a claim for strict products liability. *Id.* at 167. The Third Circuit analyzed the "perceived conflict" as being "between Scotland's interest in encouraging industry by protecting manufacturers and making it relatively more difficult for consumers to recover," and Pennsylvania's strict liability which "has shifted some of the burdens of injuries from consumers to producers" based on a policy of "increased deterrence" in order to "make manufacturers more careful in production and design than they would be if held to a negligence standard." *Id.*

The Third Circuit concluded that "[a]pplying Pennsylvania's strict liability standard to its *resident manufacturer* would serve that state's interest in the regulation of manufacturing, [and that ] Scotland's interest in encouraging industry within its borders would not be impaired, however, by applying a stricter standard of care on a foreign corporation which has no industrial operation in Scotland." *Id.* at 168 (emphasis added). "Furthermore," the Court went on, "Scotland would have no interest in denying compensation to its residents for the purpose of benefiting a foreign corporation." *Id.* And, "[f]inally," the Court concluded, "imposition of strict liability on Piper cannot be said to be unfair to it." *Id.* The Court reasoned that "Pennsylvania, the state in which Piper makes its product, and the vast

13

majority of American jurisdictions in which most of Piper's aircraft are sold and fly, have strict liability," and thus, "that is the legal standard under which it plans its operations." Accordingly, the Court held that "[b]ecause Pennsylvania's interest could be served without interfering with any significant interest of Scotland," the conflict was a "false one" and "Pennsylvania law should apply." *Id.* at 167-68.

Accordingly, in this case, where Michigan, like British Columbia and Scotland, does not recognize a claim for strict products liability based on similar policy reasons, but Pennsylvania does, a false conflict exists such that Pennsylvania's strict products liability law should be applied, as it is the state whose interests are truly implicated. This is particularly so where, at the time of the TurboBooster's design and to the present, Defendant has a business presence in Pennsylvania, although it may be currently headquartered in Georgia. *See id.*

**C.    Assuming for Argument Sake that a True Conflict Exists Between the States' Strict Liability Laws, Pennsylvania Law Still Applies Because it Has More Relevant Contacts With, and Has a Greater Interest in, the Alleged Wrongdoing.**

The Jermanos maintain that a false conflict exists with respect to their strict products liability claim under the binding precedent of *Lacey* and *Piper*; however, they also recognize this Court's prior ruling that "there is a 'true' conflict between Michigan law and Pennsylvania law with respect to punitive damages." (Opinion and Order, D.E. 48, Pg ID 837) Based on similar policy reasons associated with

14

the conflict between the States' laws regarding strict products liability claims, this Court reasoned that "Michigan's interest in encouraging commerce on one hand, and Pennsylvania's interest in discouraging tortious conduct within its borders on the other," resulted in a "true conflict" because the interests of both Michigan and Pennsylvania "would be impaired if their law of punitive damages was not applied in this action." (*Id.*)

Thus, although *Lacey* and *Piper* are binding in terms of this being a false conflict, for argumentation purposes, the Jermanos will analyze the strict liability claim as a "true" conflict, and in doing so, the answer as to which State's law applies lies in the Court's prior decision.   When analyzing the "true" conflict between Michigan and Pennsylvania's laws on punitive damages, this Court considered each state's respective contacts on a qualitative scale, as required under Pennsylvania choice of law rules. (*Id.*, Pg ID 837-838) The Court noted that when deciding between two state's laws on punitive damages, the location where the allegedly outrageous conduct took place, and the state of incorporation and principal pace of business of the corporation involved were most significant because the purpose of punitive damages is not to compensate the injured party for injury but to punish and deter outrageous conduct. (Id., Pg ID 838) The Court then found that

> the majority of Graco's allegedly-tortious conduct took place in Pennsylvania, where Graco was headquartered

15

> when it designed the TurboBooster and where the bulk of
> the design work occurred. (*See* ECF #35-3-outlining the
> activities that took place in Pennsylvania.)     These
> Pennsylvania connections to the conduct in question –
> the allegedly-defective design and testing of the
> TurboBooster – weigh very heavily in favor of applying
> Pennsylvania's punitive damages law over Michigan's
> law.     Pennsylvania has a strong interest in deterring
> tortious conduct within its borders through the
> availability of punitive damages.

(*Id.*)

Each State's respective interests regarding strict products liability are similar

to their respective interests regarding punitive damages.  As indicated, Michigan's

product liability laws are "producer protective" and are "designed to induce

companies to conduct business in Michigan by protecting domiciled producers

from excessive financial liability." *In re Disaster*, 750 F. Supp. at 801.  The

Michigan product liability laws "protect[] the economic health of companies that

conduct business in Michigan," thereby allowing Michigan to "derive[] substantial

revenues in sales and taxes, directly and indirectly," while "further[ing] the

economic well-being of the entire state." *Id.*  Thus, "Michigan simply has no

interest in applying its law to protect a foreign state producer that supplies products

for a company doing business in that state." *Id.* at 801.  And, as to consumers,

Michigan's negligence only route of recovery – *i.e.*, its lack of a strict liability

method of recovery, "is, for choice of law purposes, consumer neutral." *Id.* at 801

n.16. Pennsylvania law, on the other hand, recognizes strict products liability

precisely to protect consumers "from defective products and to encourage manufacturers to produce safe products." *LeJeune*, 85 F.3d at 1071.

Accordingly, in this case, where i) Defendant, as the designer of the defective product was, at the relevant time, headquartered in Pennsylvania, ii) the design decisions as to the defective product were all substantially made in Pennsylvania, including the decision not to incorporate the safer design implemented in Europe, and no design decisions were made in Michigan, iii) Defendant maintains no business in Michigan and thus is a foreign company, iv) Defendant sells its product in multiple states, and thus does not seek to avail itself only of the six states (Michigan being one of them) that do not recognize strict liability, but instead chooses to expose itself to the strict liability states; and v) the Parties' relationship is centered in Pennsylvania because the defective product was designed in Pennsylvania and the product information provided to the Jermanos with the TurboBooster all listed Defendant's addresses in Pennsylvania (D.E. 48, Pg ID 829), it is clear that all of the contacts point to Pennsylvania and weigh in favor of applying Pennsylvania strict products liability law.

As to the respective interests, again, Michigan "simply has no interest in applying its law to protect a foreign state producer that supplies products for a company doing business in that state," such as Defendant, *In re Disaster*, 750 F. Supp. at 801, but Pennsylvania has a strong interest in protecting consumers "from

17

defective products and to encourage manufacturers to produce safe products."
*LeJeune*, 85 F.3d at 1071.  Accordingly, even if a "true" conflict exists between the
strict products liability laws of Michigan and Pennsylvania, Pennsylvania has more
relevant contacts and a greater interest in the defective design wrongdoing, such
that its law therefore must be applied.  *See In re Disaster*, 750 F. Supp. at 801-802
(analyzing the conflict between Michigan law which does not recognize a claim for
strict products liability, and the laws of Missouri and California which do
recognize such a claim, and concluding that, under Michigan's choice of law rules,
Michigan law should be displaced because, among other things, applying Michigan
law would not induce "MDC", the foreign state defendant company, "or other
similarly situated companies, to conduct business in Michigan or stimulate the
economy").

## II.  PENNSYLVANIA  LAW  APPLIES  TO  THE  JERMANOS' NEGLIGENCE CLAIM FOR DESIGN DEFECT.

Count II of the Jermanos' Complaint alleges "Negligence" against
Defendant because the TurboBooster's was "defective" in its "design."  (D.E. 1-3,
Pg ID 23-25)  A conflict exists between the Pennsylvania and Michigan law with
respect to the manner in which a plaintiff may prevail on a design defect claim;
however, as set forth below, whether a true or a false conflict exits, Pennsylvania
law must be applied.

A.   **The Laws of Pennsylvania and Michigan Conflict with Respect to Claims for Design Defect Liability.**

1)   **Michigan law**

In Michigan, a product liability claim for design defect is governed by statute, Mich. Comp. Laws Ann. § 600.2946(2), and must be proven under the negligence risk-utility test. *See In re Disaster*, 750 F. Supp. at 800 ("In those cases in which liability against a manufacturer is predicated upon defective design, the Michigan courts follow a pure negligence risk-utility test.") (citing *Prentis*, 421 Mich. at 687 n.25, 365 N.W.2d at 184 n.25). "In essence, this test focuses on whether the manufacturer exercised reasonable care in making its design choices in light of the alternatives and risks that were presented under the circumstances." *Id.* (citing *Prentis*, 421 Mich. at 688-691, 365 N.W.2d at 184.) To establish a *prima facie* case of design defect, a plaintiff must present data or other factual evidence concerning the magnitude of the risks involved, the utility or relative safety of the proposed alternatives, or evidence otherwise concerning the unreasonableness of risks arising from the alleged defect. *Owens v. Allis-Chalmers Corp.*, 414 Mich. 413, 432, 326 N.W.2d 372, 379 (1982). Michigan has expressly refused to adopt the consumer expectation test as means of proving a design defect claim. *See Prentis*, 421 Mich. at 681-91, 180 N.W.2d at 180-86.

Consistent with its "producer protective policy," *In re Disaster*, 750 F. Supp. 793, 801, Michigan's product liability statutory scheme also allows for

certain defenses to a design defect case.  For example, the Michigan Legislature has provided that there is a "rebuttable presumption" that the manufacturer of the product is not liable if "the aspect of the product that allegedly caused the harm was in compliance with standards relevant to the event causing the death or injury set forth in a federal or state statute or was approved by, or was in compliance with regulations or standards relevant to the event causing the death or injury promulgated by, a federal or state agency responsible for reviewing the safety of the product."  Mich. Comp. Laws Ann. § 600.2946(4).   In addition, "misuse" of the product may be a complete defense, but only where the misuse was not reasonably foreseeable.  Mich. Comp. Laws Ann. § 600.2947(2).

2)     **Pennsylvania law**

Pennsylvania product liability standards are based on the common law, and allow for a claim of products liability to be proven under a strict liability standard "require[ing] proof, in the alternative, either of the ordinary consumer's expectations or of the risk-utility of a product."  *Tincher*, 104 A.3d at 401.   In reaching this holding, the Pennsylvania Supreme Court declined to adopt the Restatement Third position of strict liability, but at the same time deviated from simply applying the Restatement Second position in a products liability case as it had previously done, noting that "the tortious conduct at issue is not the same as that found in traditional claims of negligence."  *Id.* at 400.

20

The consumer expectations test "offers a standard of consumer expectations which, in typical common law terms, states that:  the product is in a defective condition if the danger is unknowable and unacceptable to the average or ordinary consumer." *Id.* at 387 (citing *Welch v. Outboard Marine Corp.*, 481 F.2d 252, 254 (5th Cir. 1973) ("A product is defective and unreasonably dangerous[, inter alia,] if the risks are greater than a reasonable buyer would expect.")).  "The nature of the product, the identity of the user, the product's intended use and intended user, and any express or implied representations by a manufacturer or other seller are among considerations relevant to assessing the reasonable consumer's expectations." *Id.* (citation omitted).  "The risk-utility test offers courts an opportunity to analyze post hoc whether a manufacturer's conduct in manufacturing or designing a product was reasonable, which obviously reflects the negligence roots of strict liability." *Id.* at 389.

In keeping with its consumer protective policy, unlike Michigan, Pennsylvania does not allow evidence of compliance with industry or governmental standards as a defense to a product liability design defect claim. *See Gaudio v. Ford Motor Co.*, 2009 Pa. Super. 102, 976 A.2d 524, 547 (2009) (citing *Lewis v. Coffing Hoist Division, Duff-Norton Co., Inc.*, 515 Pa. 334, 342-44, 528 A.2d 590, 593-94 (1987) (stating that "the question of whether or not the defendant has complied with industry standards improperly focuses on the quality of the

defendant's conduct in making its design choice, and not on the attributes of the product itself")).  Also unlike Michigan, Pennsylvania also does not have a misuse defense.

**B.    A False Conflict Exists Between the Laws of Pennsylvania and Michigan with Respect to the Claim for Design Defect Because Only Pennsylvania's Interests Would Be Otherwise Impaired.**

Although Pennsylvania law allows a plaintiff to prevail on a design defect product liability claim based on a theory not recognized in Michigan – *i.e.*, the consumer expectations test, the conflict between the respective states' laws is a false one under the facts of this case because only Pennsylvania's interests are truly implicated and only its laws would be impaired if not applied.  *See Lacey*, 932 F.2d at 187; *Coram Healthcare*, 94 F. Supp. 2d at 594.  This is because the wrongdoing at the heart of this case is Defendant's defective design of the TurboBooster. Defendant has admitted that the subject TurboBooster was primarily designed in Pennsylvania, and Defendant is bound by that admission.  *See Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) (recognizing that "[j]udicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.") (citation omitted).  As this Court recognized, "Graco acknowledges that it 'largely designed the TurboBooster in Pennsylvania and Europe . . . .' (Graco Brief, ECF #33 at 9, g. ID 317), and "also acknowledges that the version of the

22

TurboBooster the Jermanos purchased 'was largely designed before Graco moved to Georgia' in June 2009.' (Graco Brief, ECF #33 at 3, Pg. ID 311)" (Opinion and Order, D.E. 48, Pg ID 829, & n.1)

Pennsylvania's interest in its design defect laws lies in protecting consumers from defective products and to encourage manufacturers within its borders to produce safe products. *See LeJeune*, 85 F.3d at 1071. Michigan's interest, on the other hand, are "producer protective" and designed to promote business within Michigan borders. Defendant is not a Michigan company, nor is there any indication that it sells its products in Michigan for the purpose of availing itself of Michigan's "pro-business" product liability laws. As this Court recognized when concluding that Michigan did not have a strong economic interest in seeing that its punitive damages law be applied, "[g]iven that Graco sells its products in Pennsylvania – despite facing the risk of a punitive damages award under Pennsylvania law – there is little reason to believe that Graco would scale back its sales in Michigan if this Court applied Pennsylvania's punitive damages rule in this case." (D.E. 48, Pg ID 845) Likewise, given that Graco sells its products in Pennsylvania – despite facing the pro-consumer design defect laws – there is little reason to believe that Graco will stop selling its products in Michigan if Pennsylvania design defect law is applied in this case. Accordingly, Michigan's

23

economy and its governmental interest in "producer protective" design defect laws is not impaired.

Thus, a false conflict exists between Pennsylvania's and Michigan's design defect product liability laws because, under the particular facts of this case, only Pennsylvania's interests would be impaired, thereby necessitating the application of Pennsylvania law. *See Lacey*, 932 F.2d at 187.

> **C.   Assuming for Argument Sake that a True Conflict Exists Between the Product Liability Laws of Pennsylvania and Michigan, Pennsylvania Law Applies Because it Has More Relevant Contacts With, and Has a Greater Interest in, the Alleged Wrongdoing.**

As indicated, a conflict exists between the product liability laws of Michigan and Pennsylvania with respect to a design defect claim because, in Michigan, a plaintiff is required to prove a design defect claim under the risk-utility test, *see Prentis*, 421 Mich. at 681-91, 180 N.W.2d at 180-86, but in Pennsylvania, a plaintiff may prove a design defect claim under either the risk-utility test or the consumer expectation test. *Tincher*, 104 A.3d at 401. For the reasons set forth above, the Jermanos maintain that the conflict is a false one; however, even when assuming for argument sake that this is a true conflict, Pennsylvania law must still be applied as it is the state with the most relevant contacts and the greater interest in the design defect wrongdoing.

The analysis of this true conflict mirrors the analysis of the strict liability conflict. That is, weighing the quality of contacts relevant to the wrongdoing at the heart of Mia's injuries, demonstrates that Pennsylvania law controls. *See Coram Healthcare*, 94 F. Supp. 2d at 594. As indicated, i) Defendant has admitted that at the time the subject TurboBooster was designed, it was headquartered in Pennsylvania, ii) it has admitted that the design decisions relating to the defective product were all substantially made in Pennsylvania, iii) Defendant maintains no business in Michigan and thus is a foreign company, iv) Defendant sells its product in multiple states, and thus does not sell its products in Michigan for the purpose of availing itself of Michigan's producer protective laws, and v) the Parties' relationship is centered in Pennsylvania because the defective product lies at the heart of this case, and indeed the product information provided to the Jermanos with the TurboBooster all listed Defendant's addresses in Pennsylvania (D.E. 48, Pg ID 829).

Michigan, on the other hand, is i) simply the fortuitous location where the defective TurboBooster caused Mia's injuries, ii) where she and her family happen to reside, and iii) where her parents, as consumers, purchased the TurboBooster. Because this is a design defect case, the fact that the defective TurboBooster injured Mia in Michigan is completely fortuitous, as a defective design claim is an indictment of the entire product line. *See Prentis*, 421 Mich. at 690, 365 N.W.2d at

185 (recognizing that "a verdict for the plaintiff in a design defect case is the equivalent of a determination that an entire product line is defective")  As this Court recognized, Defendant sells the TurboBooster in multiple states, (D.E. 48, Pg ID 845), such that it is completely fortuitous that this particular defective TurboBooster caused harm in Michigan.  And, for that matter, Mia and her family could have been travelling across the Ohio border to Cedar Point or the Canadian border to Niagara Falls when the defect caused the harm, thereby again demonstrating the completely fortuitous nature of Michigan being the place where the injury occurred, and why the Michigan location contact pales when compared to the Pennsylvania contacts.

As this Court found when *twice* rejecting Defendant's argument that the location of the accident underlying the Jermanos claims was not fortuitous and that the Jermanos failed to overcome the presumption that Michigan law controlled their punitive damages claim, "Pennsylvania courts have qualified this [site of injury] rule in a critical respect:  the law of the state of injury controls 'unless another state, applying the contacts test, has a more significant relationship to the occurrence and parties.'"  (Recon. Order, D.E. 59, Pg ID 1217, citing Opinion and Order, D.E. 48, Pg ID 842, quoting *Laconis v. Burlington County Bridge Comm.*, 583 A.2d 1218, 1222 (Pa. Super. 1990))  This Court went on to recognize that "the decisions of the United States Court of Appeals for the Third Circuit make

26

absolutely clear that even when faced with an injury in a non-fortuitous location, a court applying Pennsylvania's choice-of-law rules *must* balance the competing interests of each relevant state." (Recon. Order, D.E. 59, Pg ID 1217-218, citing *Lejune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1072 (3d Cir. 1996))  Thus, this Court concluded that "[a]s explained in the Order [D.E. 48], under the circumstances of this case, Pennsylvania has a very strong interest in having its law of punitive damages applied while Michigan, has a negligible interest in applying its law precluding n award of punitive damages." (*Id.*, D.E. 59, Pg ID 1218)  "[A]ny presumption that Michigan law applies because the accident occurred in this state must give way and has been overcome." (*Id.*)

Likewise, weighing the relevant contacts and respective state interests with respect to the application of substantive design defect product liability law, Pennsylvania has a very strong interest in having its laws applied under the facts of this case, while Michigan has a negligible interest in having its laws applied. Accordingly, the presumption that Michigan law applies because it is the location of the accident has once again been overcome.  To be sure, Defendant's third attempt at this argument does nothing to show why the Court's two-time rejection of the argument was wrong, and Defendant offers nothing new to show why the conclusion should be any different with respect to substantive design defect product liability law.

Indeed, Defendants various "red herring" arguments likewise do nothing to conclude otherwise. For example, Defendant claims that post-*Tincher*, the design defect law of Pennsylvania is "unsettled" leaving this Court with "little guidance." (Def's Brief, D.E. 62, Pg ID 1298) First, this self-professed conclusion as to the "unsettled" state of Pennsylvania design defect law has no bearing on a choice of law analysis. *See Berg Chilling Sys.*, 435 F.3d at 462. Second, the *Tincher* court was faced with the single question of "[w]hether [it] should replace the strict liability analysis of Section 402A of the Second Restatement with the analysis of the Third Restatement." *Tincher*, 104 A.3d at 343. The Court answered this question in the negative, while adopting both the risk-utility and consumer expectation tests as possible means to prove a design defect case. *Id.* at 401. Contrary to Defendant's catastrophic prophesy, the *Tincher* court did not leave the design defect laws of Pennsylvania in a state of "unsettled" confusion; rather, the Court clarified that it was not adopting the Restatement Third. *See id.* And, in any event, in every choice of law analysis, federal district courts must routinely apply laws of judicial districts beyond their own borders. The Jermanos are quite confident that this Court is up to the task.

Defendant's references to Michigan's statutory defenses of compliance with governmental standards and misuse of the product, likewise are of no moment to the outcome that Pennsylvania's contacts with the wrongdoing and its

28

governmental interests predominate. Defendant admits that Pennsylvania design defect law does not allow for admission of compliance with governmental standards as a defense. (Def's Brief, D.E. 62, Pg ID 1299) Pennsylvania's refusal to allow for such a defense is consistent with its consumer protective interest, and is consistent with why Pennsylvania law prevails under the facts of this case. *See* Part II.C, *supra.* Defendant's argument with respect to Michigan's misuse argument fails for the same reason, and is even more attenuated because even under Michigan law, *Dory's* alleged misuse of the TurboBooster has no bearing on *Mia's* recovery of damages, *see, e.g., Byrne v. Schneider's Iron & Metal, Inc.*, 190 Mich. App. 176, 189, 475 N.W.2d 854, 860 (1991) (recognizing that the conduct of the parent may not be imputed to the recovery attributable to the child's damages), and Mia was too young to have misused the TurboBooster. Thus, this argument, even under Michigan law, is irrelevant and fails in every respect to show why Pennsylvania law does not apply.

Similarly, Defendant's references to "crashworthiness" have no bearing on the result that Pennsylvania design defect law applies in this case. Defendant provides no reason for the Court to conclude that this doctrine requires the application of Michigan law to the Jermanos' design defect products liability claim.

29

Finally, Defendant's references to Pennsylvania and Michigan's comparative fault standards have no bearing on the substantive choice of law issue before the Court. Issues pertaining to allocation of fault were decided in this Court's prior Opinion and Order, in which the Court held that Pennsylvania law applied. (D.E. 48, Pg ID 845) (addressing the issue of "whether Michigan law or Pennsylvania law governs whether damages must be apportioned according to percentages of fault and/or capped at a certain amount," and concluding that "these issues are governed by Pennsylvania law"). And, in any event, any differences between the comparative fault laws do nothing to change the fact that the contacts with the relevant wrongdoing all point to Pennsylvania.

In summary, even when assuming for sake of argument that a true conflict exists between Pennsylvania and Michigan design defect product liability laws, the overwhelming relevant contacts with Pennsylvania with respect to the defective design wrongdoing, coupled with Pennsylvania's interest in holding resident manufacturers accountable for their defective products, leads to the conclusion that Pennsylvania law must be applied.

### III.   NO CONFLICT EXISTS BETWEEN PENNSYLVANIA LAW AND MICHIGAN LAW WITH RESPECT TO DORY'S NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM.

In Count III of their Complaint, the Jermanos seek damages on behalf of Dory, Mia's mother, based on Defendant's negligent infliction of emotional

distress. As set forth below, the laws of Pennsylvania and Michigan do not conflict with respect to such a claim because each would produce the same result; thus, the Court must avoid the choice of law inquiry and apply the law of the forum state, which is Michigan. *See Berg Chilling Sys.,* 435 F.3d at 462; *see also Air Prods. & Chemicals,* 272 F. Supp. 2d at 490 n.9 (noting that if no conflict exists, the law of the forum is to be applied).

In Pennsylvania, a cause of action for negligent infliction of emotional distress depends upon three factors:

> (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it;

> (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and

> (3) Whether plaintiff and the victim were closely related as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Sinn v. Burd,* 486 Pa. 146, 171, 404 A.2d 672, 685 (1979). In addition, recovery under the bystander rule "is further limited by the requirement that the person seeking damages must suffer physical injury as a result of actually witnessing the harm to a close relative." *Love v. Cramer,* 414 Pa. Super. 231, 234, 606 A.2d 1175, 1177 (1992) (citing *Mazzagatti v. Everingham by Everingham,* 512 Pa. 266, 516 A.2d 672 (1986)). *See also Redland Soccer Club v. Dep't of the Army of the*

*United States*, 55 F.3d 827, 848 (3d Cir. 1995) ("Absent some physical injury or impact, Pennsylvania's governing law does not provide recovery for negligent infliction of emotional distress.'"). The Pennsylvania Supreme Court has opined that compensable physical injuries are "objective, measurable, observable physical injuries[,]" even if they are otherwise "relatively mild." *Botek v. Mine Safety Appliance Corp.*, 531 Pa. 160, 611 A.2d 1174, 1177 (Pa. Sup. Ct. 1992).

In Michigan, the elements of a negligent infliction of emotional distress claim are:

> (1) "the injury threatened or inflicted on the third person must be a serious one, of a nature to cause severe mental disturbance to the plaintiff"; (2) the shock must result in actual physical harm; (3) the plaintiff must be a member of the immediate family, or at least a parent, child, husband or wife; and (4) the plaintiff must actually be present at the time of the accident or at least suffer shock "fairly contemporaneous" with the accident.

*Wargelin v. Sisters of Mercy Health Corp.*, 149 Mich. App. 75, 81, 385 N.W.2d 732, 734 (1986) (citation omitted).

Although the precise language of what is required to recover for a claim of negligent infliction of emotional distress varies somewhat under each State's respective standards, the fundamental requirements are the same, thereby leading to the conclusion that the result would likely be the same under either state's law. As such, this Court must avoid the choice of law question with respect to this claim. *See Berg Chilling Sys.*, 435 F.3d at 462.

32

## CONCLUSION

For the above-stated reasons, the Jermanos respectfully request that, as with the issue of damages, this Court hold that Pennsylvania substantive law applies to their strict liability and design defect claims.

Respectfully submitted,

s/Robert F. Garvey
Robert F. Garvey (P24897)
Thomas, Garvey & Garvey
24825 Little Mack Avenue
St. Clair Shores, Michigan  48080
586.779.7810
bobgarvey@me.com
Attorneys for Plaintiffs

Raymond D. Gentile
Douthit, Frets, Rouse, Gentile
& Rhodes, LLC
5250 W. 116th Place, Suite 400
Leawood, Kansas  66211
913.387.1600
dgentile@dfrglaw.com
Attorneys for Plaintiffs

Date:  July 20, 2015

33

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2015, I electronically filed the foregoing document using the ECF system which will send notification to ECF participants of record.

s/Robert F. Garvey

Robert F. Garvey

203093704.1 27599/170151