UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH JERMANO, et al., | Case No. 13-cv-10610 |
| Plaintiffs, | Hon. Matthew F. Leitman |
| v. | Magistrate Judge Mona K. Majzoub |
| GRACO CHILDREN'S PRODUCTS INCORPORATED, | **DEFENDANT GRACO CHILDREN'S PRODUCTS, INC.'S REPLY TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THE APPLICATION OF PENNSYLVANIA LAW TO ISSUES OF LIABILITY, AND IN OPPOSITION TO DEFENDANT'S REQUEST THAT ISSUES OF LIABILITY BE GOVERNED BY MICHIGAN LAW** |
| Defendant. | |

DOUTHIT, FRETS, ROUSE, GENTILE & RHODES, LLC
Raymond D. Gentile
Jeffrey D. Rowe
5250 W. 116th Place, Suite 400
Leawood, KS 66211
913-387-1600 (Phone)
913-928-6739 (Fax)
dgentile@dfrglaw.com (E-mail)

THOMAS, GARVEY & GARVEY
Robert F. Garvey (P24897)
24825 Little Mack Avenue
St. Clair Shores, MI 48080
586-779-7810 (Phone)
586-779-4912 (Fax)
bobgarvey@me.com (E-mail)

*Attorneys for Plaintiffs*

SCHIFF HARDIN LLP
Joseph J. Krasovec, III
233 South Wacker Drive, Suite 6600
Chicago, IL 60606
312-258-5500 (Phone)
312-258-5600 (Fax)
jkrasovec@schiffhardin.com (E-mail)

SCHIFF HARDIN LLP
Gregory L. Curtner (P12414)
Jessica A. Sprovtsoff (P70218)
350 S. Main Street, Suite 210
Ann Arbor, MI 48104
734-222-1518 (Phone)
734-222-1501 (Fax)
gcurtner@schiffhardin.com (E-mail)
jsprovtsoff@schiffhardin.com (E-mail)

*Attorneys for Defendant*

**SUPPLEMENTAL STATEMENT OF FACTS**

Plaintiffs accuse Graco of making "numerous misrepresentations" in its Supplemental Brief on the issue of whether Michigan or Pennsylvania law applies to the determination of liability. [DE 62] Plaintiffs' accusations are completely unfounded, as Graco's arguments are well-supported by the evidence in this record, much of which has been proffered by *Plaintiffs*. Graco will address each "example" of the misrepresentations Plaintiffs assert Graco has made in the order they appear in Plaintiffs' brief. [DE 65 at 1424-27]

**I.     The Shoulder Belt Leaving the Guide Is Not a "Failure."**

Regarding Plaintiffs' assertion that there were numerous "test failures" when a shoulder belt exits the belt guide [*see* DE 65 at 1424; DE 65-1 at 1457], Plaintiffs misrepresent what constitutes a test failure. As Graco noted in its Supplemental Brief, there is no requirement under the U.S. FMVSS 213 standard that the shoulder belt remain within the belt guide throughout the test. [DE 62 at 1284-85] In fact, Graco provided the Court with a test report by the U.S. Department of Transportation ("USDOT") in which the shoulder belt came out of the shoulder belt guide, during a test run at the U.S. FMVSS 213 standard. [*Id.*; DE 62-4 at 1382] USDOT declared that test a pass. [*Id.* at 1356-62]

There is no test "failure" when the shoulder belt comes out of the belt guide in a test run to the U.S. standard applicable to the seat Plaintiffs purchased in

Michigan. Of the tests Plaintiffs cite in Exhibit 1 to their brief [DE 65-1], all the tests performed in Ohio (*see* Ex. A, attached hereto, which indicates the location of each test performed) were performed generally under the dynamic test parameters of the U.S. standard and thus are not considered test "failures" because the shoulder belt left the belt guide during the test.

## II.     Modifications Made to Graco's European Booster Seat.

To the extent any clarification is needed, Graco's discussion in its Supplemental Brief regarding testing performed in Europe [DE 62 at 1285-86] was included to explain the genesis of the change to the shoulder belt guide made on the Junior Plus® booster seat — which is sold exclusively in Europe. That change addressed the European-only requirement that a shoulder belt remain in the belt guide throughout testing performed under the European standard, known as "R-44." [DE 62 at 1285; DE 62-5, Mark LaPlante Dep. 73:22-74:3]

Specifically, Defendant cites a July, 2004 email exchange between Graco engineer Shiva Gangadharan and Bror Martin, a test engineer located in Finland, whom Graco used to test the Junior Baby to the R-44 standard. [DE 63] In that email, Mr. Gangadharan specifically references the use of P-10 dummy (a dummy then used exclusively in Europe representing a ten-year old child) in order to test a proposed modification to the Junior Baby's headrest design to make sure the new design will pass the R-44 standard. These tests were set up under "[c]onditions to

create worst-case crash runs" meaning the heavier P-10 dummy with slack in the belt system. [*Id.*, p. 5] From these tests in August, 2004, Mr. Martin, the Finnish test engineer, identified an issue with the shoulder belt coming out of the belt guide as a potential test failure under the R-44 standard. [*Id.*, p. 3]

Graco, in citing to this evidence in its Supplemental Brief, was explaining the reasons behind its effort to redesign the shoulder belt guide used in Europe, which was undertaken by engineers in both Pennsylvania (Mr. Gangadharan) and France (Derek Seville). [DE 66-11] These engineers then worked on a modified belt guide design to address the potential R-44 test failure by looking at ways to modify the then existing mold for the belt guide to be used in Europe.

### III. <u>Wonderland — in China — Proposed the Redesign.</u>

Ultimately, the efforts expended on the European booster seat were unsuccessful, which led to an overall modification of the headrest. The headrest modification — as proposed by Wonderland Nursery Goods Ltd., in China — contains the belt guide design Plaintiffs contend should have been incorporated into the TurboBooster® sold in the U.S.

Plaintiffs claim that Defendant made a false statement that this redesign was performed in China. [*See* DE 65 at 1425-26] Exhibit C-15 to Plaintiffs' Supplemental Brief, however, *on its face*, states that the "*Wonderland team* has developed some hard goods derivative ideas for the current TurboBooster." [DE

66-16 at 1 (*emphasis added*)] Mr. Mennon (f/k/a Gangadharan), who drafted the document, testified that the TurboBooster design being discussed was a "totally different concept and a different seat." [DE 66-8, Shiva Menon Gangadharan Dep. 161:3-4] He went on to clarify that "the belt positioning retainer and the head rest, that's a totally different design." [*Id.* at 161:5-161:7] The "Wonderland Team" consisted of engineers in working in China:

> Q. Okay. And Exhibit 32 under the product description, it talks about a few changes that are being suggested for the current turbobooster. Do you see that? First page, sir, under the product description it says Wonderland team, that's some folks over in China or Taiwan?
>
> A. That's right. The manufacturing facility is in China, and so the Wonderland team would be the engineers and the people doing the tooling and all that sort of stuff.

[Ex. B, LaPlante Dep. 51:21-52:5] As Plaintiffs and this Court are well aware, the Wonderland reference is to Wonderland Nursery Goods, Ltd., the manufacturer located in China who actually built the TurboBooster®. [DE 51 at 949; DE 51-4 at 982-983]

Plaintiffs also fail to acknowledge that the Engineering Change Notice and drawing for the part they claim should have been implemented on the subject TurboBooster® was first created in Europe by Marco Binotto and approved for marketing by Astrid Fockens (also located in Europe). [Ex. B, LaPlante Dep. 92:10-93:22] The actual drawing for that part was also created in Europe by

- 4 -

Mr. Binotto. [DE 66-18] Therefore, Plaintiffs' claim that Defendant misrepresented and supported a "falsity" in contending that the belt guide and headrest redesign originated in China and was further refined in Europe completely misrepresents the facts stated in the very exhibits Plaintiffs have submitted to this Court.

### IV. Graco Management Was Located in Georgia — Not Pennsylvania — When the Alleged Conduct Occurred.

Last, Plaintiffs claim that Graco misrepresented facts concerning the decision (or lack thereof) over the implementation of the European belt guide into TurboBooster® seats sold in the United States. [DE 65 at 1426] It is undisputed that the subject TurboBooster® was built by Wonderland in China on November 21, 2009. That TurboBooster did not have the shoulder belt guide used in Europe for the reasons explained in Graco's Supplemental Brief [DE 62 at 1284, 1287]. At that time, Graco's headquarters was located in Georgia, not Pennsylvania.

Plaintiffs, in their own "Summary of the TurboBooster's Design Decisions Made in Pennsylvania and Other Relevant Contacts with Pennsylvania," are emphatic that "Defendant's *Management* deliberately and knowingly reject[ed]" the recommendations made by Graco's non-managerial engineers to change the belt guide used on U.S. seats to that used on the European seats up to, and including, the time when the subject TurboBooster® was built. [DE 66-1 at 4 (emphasis added)] Plaintiffs go on to state that, "[B]y the date that the subject

TurboBooster was manufactured — 11/21/09 — Defendant was still equipping TurboBoosters for the U.S. Market with the old Revision B belt guide." [*Id.*] It necessarily follows that any decision to implement (or *deliberate* decision not to implement) a new belt guide design on TurboBoosters sold in the United States, as of November, 2009, was made by Graco's management in Georgia, not Pennsylvania. Accordingly, Defendant has not misrepresented the location of the decision makers (Georgia) who allegedly failed to use the alternative belt guide design on TurboBoosters® sold in the United States in November, 2009.

These factual points are made by Defendant to demonstrate that, contrary to Plaintiffs' representation, not "every single decision" [DE 66-1 at 1] concerning the design of the TurboBooster® occurred in Pennsylvania.

## ARGUMENT

Plaintiffs argue that Pennsylvania law applies because Michigan's relationship with this case is "completely fortuitous" and Michigan has no interest in applying its law to this case because doing so would benefit a non-Michigan corporation. There is no support in the record as to the former assertion, and no support in the law as to the latter.

### I. Michigan Was Not a "Fortuitous" Location for the Plaintiffs' Accident.

Contrary to Plaintiffs' brief, this lawsuit does not involve a "completely fortuitous" accident in Michigan. [DE 65 at 1447-48] As Michigan residents,

Plaintiffs and M.J. experienced this head-on collision in Michigan with another Michigan resident. There is nothing fortuitous about this crash occurring in Michigan. Indeed, Plaintiffs have cited no case, and Graco has found none, where a court held a motor vehicle accident occurring less than five miles from the plaintiffs' home to be "fortuitous."[1]

As several courts have uniformly held, "the concept of 'fortuitous injury' cannot be invoked in an effort to avoid application of the law of state in which the injury occurred when the injured (or deceased) intentionally traveled to the location of the accident." *See, e.g.*, *Calhoun v. Yamaha Motor Corp.*, 216 F.3d 338, 347 (3d Cir. 2000) (citing *Tonkon v. Denny's, Inc.*, 650 F. Supp. 119, 121 (E.D. Pa. 1986); *Blakesley v. Wolford*, 789 F.2d 236, 239 (3d Cir. 1986)). Because Plaintiffs intentionally drove in Michigan, which is also their home state, this case does not involve a random injury in a fortuitous location. Therefore, Michigan has the prominent relationship in the choice-of-law analysis, and is the presumptive law to

---

[1] The weakness in Plaintiffs' position is evident from their exclusive reliance on plane crash cases. *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991); *Reyno v. Piper Aircraft Co.*, 630 F.2d 149 (3d Cir. 1980); *In re Disaster Detroit Metro. Airport*, 750 F. Supp. 793, 800 (E.D. Mich. 1989). If this accident happened fortuitously with Plaintiffs driving across Ohio or Canada (Pls.' Br. 26), those cases may be availing. But Michigan was a non-fortuitous location for this accident and therefore "assumes much more importance." *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1072 (3d Cir. 1996).

be applied in this case. *Id.* (quoting *LeJeune v. Bliss-Salem, Inc.*, 85 F.3d 1069, 1072 (3d Cir. 1996)); *see also* Def.'s Suppl. Br. 25-28 (collecting cases).

## II. Michigan Has the Greatest Interest in Applying Its Law to This Case.

Plaintiffs' contention that Michigan "simply has no interest in applying its law" is wrong on two levels. [DE 65 at 1433, 1438-39] First, Plaintiffs mischaracterize *In re Disaster at Detroit Metropolitan Airport*, 750 F. Supp. 793 (E.D. Mich. 1989), a multidistrict action involving an airplane crash near Detroit. There, the court applied *Michigan's* "rational reason" test,[2] choosing California law to govern the Michigan plaintiffs' product liability claims against McDonnell Douglas, a California manufacturer. Under Michigan's "rational reason" test, the court decided that "Michigan simply has no interest in applying its law to protect a foreign state producer [McDonnell Douglas] that supplies products for a company [Northwest] doing business in that state [Michigan]." *Id.* at 801.

Unlike *In re Disaster*, however, this case involves Pennsylvania's choice-of-law rules and not Michigan's rational reason test. And unlike McDonnell Douglas in *In re Disaster*, Graco performed testing on the TurboBooster® in Michigan. [DE

---

[2] At that time, Michigan did not apply the *Restatement (Second) of Conflicts of Laws* and instead decided "whether there exists a 'rational reason to displace Michigan law in the case,' which focused upon (1) the particular interest that each state has in having its substantive law apply to the precise issue in question, and (2) whether applying *lex loci delicti* will advance the interests of certainty, predictability of results, and prevention of forum shopping." *In re Disaster*, 750 F. Supp. at 797 (citation and brackets omitted).

- 8 -

51-20 at 1129] and Plaintiffs purchased two TurboBooster® seats in Michigan, including the booster seat at issue. There is no question that Michigan has an interest — in fact, the most significant interest — in applying its own law to a manufacturer that sells products to Michigan residents, has run tests on the product's design in Michigan, and allegedly injures a Michigan resident non-fortuitously in Michigan.

Second, it is of no moment that, in Plaintiffs' view, Michigan law is "pro-business" and Pennsylvania law is "pro-consumer." [DE 65 at 1432-36, 1438-40, 1445, 1452] The *Restatement* does not ask which state's law imposes greater liability against a business: "'A rule which exempts the actor for liability from harmful conduct is entitled to the *same consideration* in the choice-of-law process as is a rule which imposes liability.'" *Montgomery v. Wyeth*, 580 F.3d 455, 462-63 (6th Cir. 2009) (emphasis added); *id.* at 462 (the "primary flaw in Montgomery's argument is that it focuses on the outcome" and the "choice-of-law analysis does not turn on whether a plaintiff has a viable claim in one state but not another" quoting *Restatement (Second) of the Law of Conflicts* § 145, cmt. c); *see also Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 907 (Ill. 2007) (same).

## **CONCLUSION**

For these reasons, Defendant Graco Children's Products, Inc. respectfully requests that this Court apply Michigan law to all of the issues not previously addressed in its Orders of May 29, 2015 [DE 59] and April 8, 2015 [DE 48].

Dated:  October 7, 2015                                     Respectfully submitted,

By: /s/ Joseph J. Krasovec

| | |
|---|---|
| SCHIFF HARDIN LLP | SCHIFF HARDIN LLP |
| Gregory L. Curtner (P12414) | Joseph J. Krasovec, III (6201456) |
| Jessica A. Sprovtsoff (P70218) | 233 South Wacker Drive |
| 350 S. Main Street | Suite 6600 |
| Suite 210 | Chicago, IL 60606 |
| Ann Arbor, MI 48104 | 312-258-5500 (Phone) |
| 734-222-1518 (Phone) | 312-258-5600 (Fax) |
| 734-222-1501 (Fax) | jkrasovec@schiffhardin.com (E-mail) |
| gcurtner@schiffhardin.com (E-mail) | |
| jsprovtsoff@schiffhardin.com (E-mail) | |

*Attorneys for Defendant Graco Children's Products, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on October 7, 2015, he caused these documents to be served on all counsel of record via the Court's ECF system.

/s/ Joseph J. Krasovec
Joseph J. Krasovec

10808-1496
CH2\16946322.7